

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

May 20, 2019

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

**Re:** *Open Society Justice Initiative v. Central Intelligence Agency, et. al*, No. 19 Civ. 00234 (PAE) (BCM); *Open Society Justice Initiative v. Department of Justice, et. al*, No. 19 Civ. 01329 (PAE) (BCM)

Dear Judge Engelmayer:

    We write on behalf of Plaintiff Open Society Justice Initiative ("OSJI" or "Plaintiff") in the above-referenced Freedom of Information Act ("FOIA") cases, which relate to OSJI's December 4, 2018 requests for records related to the killing of Jamal Khashoggi.  This letter brief is submitted in opposition to the May 13, 2019 Letter Motion of the U.S. Department of State (the "Department" or "Defendant") requesting the Court to approve State's proposed processing rate of only 300 pages per month.

**I.     Background**

    The requested records relate to a matter of extreme public importance and temporal urgency.  There are currently 10 bills pending in Congress related to Mr. Khashoggi's killing.[1] His death, the U.S. government's response, and the public discourse, including over a lack of accountability, remain front-page news, as recently as last week, when Mr. Khashoggi's fiancé testified before Congress and urged lawmakers to hold Saudi Arabia accountable for the killing, noting that "nothing has been done" thus far.[2]  Meanwhile, the CIA and foreign security services

---

[1] H. Res. 345, 116th Cong. (2019); S. Res. 179, 116th Cong. (2019); S. Res. 169, 116th Cong. (2019); H.R. 2037, 116th Cong. (2019); S. 612, 116th Cong. (2019); S. 544, 116th Cong. (2019); S. Res. 73, 116th Cong. (2019); S. 398, 116th Cong. (2019); S. 231, 116th Cong. (2019); H.R. 643, 116th Cong. (2019).

[2] *See, e.g.*, Editorial, *Congress Can Seek Justice for Jamal Khashoggi's Murder. It's Clear Trump Won't*, Wash. Post, May 18, 2019; Andrew Blake, *Senate Intel Panel Wants to See Unclassified Report on Khashoggi Death*, Wash. Times, May 16, 2019; Catie Edmondson, *'Nothing Has Been Done': Khashoggi's Fiancée Urges Action Against Saudi Arabia*, N.Y. Times, May 16, 2019; Andrew O'Reilly, *Khashoggi's Fiancee Attacks Trump for Muted Response to Journalist's Slaying*, Fox News, May 16, 2019.

Honorable Paul A. Engelmayer            2                         May 20, 2019

reportedly have warned Mr. Khashoggi's friends and colleagues that Saudi Arabia is potentially targeting them for continuing his pro-democracy work.[3]

The State Department has identified an initial set of just 700 potentially responsive records from the Everest and State Archiving System databases (collectively, the "Database Records"), which total 23,100 pages. Separately, the parties continue to negotiate over email searches, which will likely generate a considerable number of other potentially responsive records.[4]

While emphasizing the need to obtain responsive records in a timely manner, Plaintiff repeatedly has narrowed its request by limiting it to records created on or after October 1, 2018 in the possession of 13 State Department units, limiting email searches to the top five custodians in each of those units, proposing specific keyword searches, and excluding publicly available documents as well as their translations, press clippings, and emails sharing news reports without commentary. Nevertheless, the Department states that it "can still only commit to maintaining a processing rate of 300 pages per month." *See* Stein Decl. ¶ 29, Dkt. No. 29-1 (19 Civ. 01329). At that rate, however, just processing the 23,100 pages of Database Records would take the Department *over six years* – and it could be *over a decade* before email searches are fully processed.

The Department has indicated that there is likely "a fair amount of duplication" in these results. *See* May 10, 2019 Joint Status Report 1, Dkt. No. 41 (19 Civ. 00234). Plaintiff also believes, based on the number of documents and high page count, that there are likely some voluminous documents that are not of interest to Plaintiff that are driving up the page count. However, in the absence of more information from the Department, Plaintiff has proposed a rate of 7,500 pages per month in order to ensure that it has access at least to this initial batch of documents over the next four months (which would still be over 10 months from the date Plaintiff submitted this time-sensitive request). If the Department is able to reduce the page count substantially, a 7,500 page rate would simply mean these initial records could be processed in a month or two, rather than dragging it out over several years.

## II.     Defendant's Proposed Processing Schedule Effectively Denies OSJI's Request

The FOIA Amendments of 1996, which enacted the expedited processing provision, "underlined Congress' recognition of the value in hastening release of certain information." *Edmonds v. FBI*, 417 F.3d 1319, 1324 (D.C. Cir. 2005); *see Brennan Ctr. for Justice v. U.S. Dep't of Justice*, 300 F. Supp. 3d 540, 547 (S.D.N.Y. 2018) ("To ensure *timely* review in cases where exceptional need or urgency is demonstrated, FOIA includes an additional 'requirement that agencies provide for expedited processing of requests.'") (emphasis added) (citation omitted). The Department has undertaken to process OSJI's request on an expedited basis. Def.'s Ltr. 2, Dkt. No. 29 (19 Civ. 01329); *see* Apr. 19 Status Conference Tr. 16:20. Its search

---

[3] Josh Meyer, *The CIA Sent Warnings to at Least 3 Khashoggi Associates About New Threats From Saudi Arabia* Time, May 9, 2018.

[4] The current status of those efforts is detailed in the parties' May 17, 2019 Joint Status Report, Dkt. No. 43 (19 Civ. 00234).

Honorable Paul A. Engelmayer   3   May 20, 2019

and production have been far from expeditious, however, even after the Court's admonishment. *See, e.g.*, Tr. 17:23–18:1.

Timely provision of records in an expedited request is critical. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, 416 F. Supp. 2d 30, 40 (D.D.C. 2006) ("[P]ublic awareness of the government's actions is 'a structural necessity in a real democracy.' Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is 'tantamount to denial' . . . . '[S]tale information is of little value.'") (citations omitted); Tr. 16:20–23 ("[I]t's quite clear to me why this is expedited. . . . This is a current, front-page controversy where *timeliness is everything*.") (emphasis added). As courts have recognized, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citation omitted). Thus, an agency is required to "make the records *promptly* available," 5 U.S.C. § 552(a)(3)(A) (emphasis added), which "typically would mean within days or a few weeks of a 'determination,' not months or years." *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 815 (S.D.N.Y. 2017) (citation omitted).

In contrast, the Department's proposed processing rate would likely result in productions continuing for years, indeed over a decade. This is "tantamount to denial" of Plaintiff's request. *See Elec. Privacy*, 416 F. Supp. 2d at 40 (citation omitted). Moreover, the Department's proposed 300 pages per month is its processing speed for *non-expedited* requests.[5] *See* Stein Decl. ¶ 18 ("*In all cases*, the Department strives to process at least 300 pages per month.") (emphasis added); *cf.* Tr. 16:24–17:2 (recognizing that "the outcome that says, we're treating it as we do some other *expedited* things" would be insufficient) (emphasis added); Def.'s Ltr. 2 (quoting 40 C.F.R. §§ 2.104(e)(1)–(3) for the proposition that "'[e]xpedited processing' is a process in which certain FOIA requests are 'taken out of order *and given expedited treatment*'") (emphasis added).

While this case involves a large volume and potentially classified information, "courts often find that one to two months is sufficient time for an agency to process broad FOIA requests that may involve classified or exempt material." *Brennan Ctr.*, 300 F. Supp. 3d at 550 (quoting *Elec. Privacy*, 416 F. Supp. 2d at 40). There are also numerous cases involving matters of significant public import in which courts have ordered several thousands of pages of potentially classified documents to be processed each month. For example, Judge Hellerstein ordered defendant agencies to process within one month 17,000 to 20,000 pages responsive to a FOIA request for records relating to the post-September 11, 2001 treatment of detainees held in U.S. custody

---

[5] None of the cases cited in Defendant's letter for the proposition that 300 pages is reasonable was an expedited request. Minute Order, *Ctr. for Reprod. Rights v. U.S. Dep't of State*, No. 18 Civ. 2217 (D.D.C. Apr. 3, 2019) (ordering State Department to process 300 pages per month for a *non-expedited request*); Minute Order, *Energy & Env't Legal Inst. v. U.S. Dep't of State*, No. 17 Civ. 340 (D.D.C. Aug. 22, 2017) (ordering State Department to process 300 pages a month for a *non-expedited request*); Minute Order, *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 17 Civ. 205 (D.D.C. June 30, 2017) (ordering State Department to process 300 pages per month for a *non-expedited request*); Order on Motion for Order, *Citizens United v. U.S. Dep't of State*, No. 16 Civ. 67 (D.D.C. Aug. 16, 2016), Dkt. No. 17 (ordering State Department to process 300 pages per month for a *non-expedited request*).

Honorable Paul A. Engelmayer                    4                          May 20, 2019

abroad. *ACLU v. U.S. Dep't of Defense*, 339 F. Supp. 2d 501, 503, 505 (S.D.N.Y. 2004).[6] In *Leopold v. U.S. Dep't of State*, the State Department was ordered to process 55,000 pages of emails from former Secretary of State Clinton within 8 months (an average of approximately 7,000 pages per month). Order, *Leopold v. U.S. Dep't of State*, No. 15-cv-00123 (D.D.C. May 27, 2015), Dkt. No. 17. The court in *Leopold* specifically ordered that the Department report on the status of its efforts to bring on additional volunteers, Minute Order, *Leopold v. U.S. Dep't of State*, No. 15-cv-00123 (D.D.C. Sept. 11, 2015), and the Department completed review and production in nine months, Def.'s Status Report, *Leopold v. U.S. Dep't of State*, No. 15-cv-00123 (D.D.C. Mar. 1, 2016), Dkt. No. 58. *See also Judicial Watch, Inc., v. Dep't of Energy*, 191 F. Supp. 2d 138, 140–41 (D.D.C. 2002) (ordering agencies to process over 6,000 pages of material within 60 days); Order, *Schulte v. Dept. of Health & Human Servs.*, No. 14-887 (JDB) (D.D.C. June 5, 2015), Dkt. No. 28 (ordering HHS to process at least 3,000 pages per month); *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 05-845 (GK), 2005 U.S. Dist. LEXIS 40318, at *4–5, (D.D.C. Nov. 16, 2005) (noting that the FBI's processing of plaintiff's expedited request was "unnecessarily slow and inefficient," and ordering the agency to process 1500 pages every 15 calendar days until processing is complete); *Nat. Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) (ordering the "vast majority" of the processing of 7,500 pages to be completed within 32 days).[7]

The State Department effectively argues that its general inability to process requests in a timely manner should excuse it from processing this request on an expedited basis. To be sure, the Department's capabilities for processing requests are anemic. In FY2016, it took the Department over a year on average to process "simple" requests – more than *23 times* the average processing speed of the Department of Defense,[8] which received almost double the number of requests.[9] These are problems of the Department's own making, however. The Department describes, for example, its practice, unique among federal agencies, of relying on sporadic work by part time retirees to process FOIA requests. Stein Decl. ¶ 20. The Department's failure to make meaningful progress in its internal capacity to respond to FOIA requests cannot justify a continued abdication of the government's obligations in this case, as the Court already has recognized. *See* Tr. 14:24–15:15.

---

[6] The court later ordered the Defense Department to process a minimum of 10,000 pages a month. Order, *ACLU v. U.S. Dep't of Defense*, No. 04 Civ. 4151 (S.D.N.Y. Nov. 1, 2004), Dkt. No. 35.

[7] Defendant cites several cases in its letter in which courts ordered 300 or 500 pages per month, but those were for *non-expedited requests* or where the parties agreed on the processing rate. *See supra* note 7; *see also Color of Change v. U.S. Dep't of Homeland Sec.*, 325 F. Supp. 3d 447, 451 (S.D.N.Y. 2018) (noting prior scheduling order of an agreed-upon rate of 500 pages per month); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 186–87 (D.D.C. 2018) (ordering the Department of Homeland Security to process documents at a rate of 500 pages per month for a *non-expedited request*). These are simply inapposite.

[8] U.S. Dep't of Justice, *Summary of Agency Chief FOIA Officer Reports for 2018 and Assessment of Agency Progress in FOIA Administration with OIP Guidance for Further Improvement* 35 (June 2018), https://www.justice.gov/OIP/Reports/2018Summary%26Assessment/download#2018. This problem has evidently persisted for years. *See* Office of Inspector General, U.S. Dep't of State, *Evaluation of the Department of State's FOIA Processes for Requests Involving the Office of the Secretary* 6–8, 10 (Jan. 2016), https://www.stateoig.gov/system/files/esp-16-01.pdf (noting insufficient permanent personnel for processing requests and far longer processing time as compared to other agencies).

[9] *See* Agency FOIA Data, U.S. Dep't of Justice, https://www.foia.gov/data.html.

Honorable Paul A. Engelmayer                  5                  May 20, 2019

      In short, the Department's proposed 300 page per month processing schedule contravenes the text and purpose of the FOIA statute and the direction of this Court that the Department "need[s] to treat this particular request with extreme urgency" such that "the presses . . . roll[] with great dispatch, given the extreme public importance and temporal urgency of the Khashoggi controversy." Tr. 17:16–17, 19:2–4. For these reasons, Plaintiff respectfully asks the Court to order the Department to process 7,500 pages per month.

                                                  Respectfully submitted,

                                                  */s/ David J. Sandler*

                                                 Catherine Amirfar
         (camirfar@debevoise.com)
David J. Sandler
  (dsandler@debevoise.com)
Ashika Singh
  (asingh@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000

Amrit Singh
  (amrit.singh@opensocietyfoundations.org)
James A. Goldston
OPEN SOCIETY JUSTICE INITIATIVE
224 West 57th Street
New York, New York 10019
Tel.: (212) 548-0600

cc:     Peter Aronoff, Assistant U.S. Attorney
        Natasha Teleano, Assistant U.S. Attorney