USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8|6|19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OPEN SOCIETY JUSTICE INITIATIVE,

                              Plaintiff,

          -v-

CENTRAL INTELLIGENCE AGENCY, et al.,

                              Defendants.

---

19 Civ. 234 (PAE)
19 Civ. 1329 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This case concerns a series of Freedom of Information Act ("FOIA") requests by the

Open Society Justice Initiative ("OSJI") to a variety of federal agencies that seek information

regarding a subject of considerable public importance: the disappearance of Jamal Khashoggi, a

U.S. resident, Saudi national, and *Washington Post* columnist who was not seen alive again after

entering the Saudi consulate in Istanbul on October 2, 2018. *See* Dkt. 1[1] ("Compl.") ¶ 9. On

May 30, 2019, this Court ordered the U.S. Department of State (the "State Department") to

produce responsive documents at "a processing rate of 5,000 pages per month, beginning June

2019," finding that that volume "appropriately balances the urgency of this particular request

with the State Department's concerns regarding the burdens of making FOIA productions."

Dkt. 50. On June 5, 2019, the Court ordered the U.S. Department of Defense ("DOD") to

"process 2,500 pages of potentially responsive records and produce any responsive, non-exempt

portions by June 30, 2019, and thereafter process 5,000 pages of potentially responsive records

per month and produce any responsive, non-exempt portions by the end of each month." Dkt. 57

---

[1] These consolidated cases include 19 Civ. 234 and 19 Civ. 1329.  References to the docket in
this Opinion refer to the docket in lead case 19 Civ. 234 unless otherwise specified.

(superseding original Order at Dkt. 54).  Before the Court is the motion by the State Department

and DOD (together, the "Government") for reconsideration of these processing rates.  The

Government requests instead that the Court order processing rates of no more than 3,000 pages

per month per agency.  For the reasons that follow, the Court denies the motion.

## I.     Procedural History

On December 4, 2018, OSJI submitted the FOIA requests at issue.  *See* Compl. ¶ 25.  On

January 9, 2019, OSJI filed the Complaint.  Dkt. 1.  In its Complaint, OSJI alleged that it had

submitted FOIA requests to federal agencies including the State Department and DOD seeking

disclosure of "all records relating to the killing of U.S. resident Jamal Khashoggi, including but

not limited to the CIA's findings on and/or assessment of the circumstances under which he was

killed and/or the identities of those responsible." *Id.* ¶ 25.  OSJI alleged that it had requested

expedited processing of these requests, *id.* ¶ 26, but that, as of the filing of the Complaint, it had

not received any determination as to those requests, prompting it to file this action, *id.* ¶ 2.  On

March 18, 2019, defendants answered.  Dkt. 24.

On April 19, 2019, the Court held an initial conference.  *See* Dkt. 25.  Until that point,

plaintiffs had not received an update on the status of their FOIA requests.  *See* Pl. Mem. at 15.

On April 23, 2019, the Court issued a scheduling order that required, *inter alia*, that DOD and

the State Department "provide Plaintiff with a proposed processing schedule" by May 30, 2019.

Dkt. 30.

On May 13, 2019, the State Department filed a letter requesting a processing rate of 300

pages per month, 19 Civ. 1329 at Dkt. 30 ("State Ltr."), a supporting declaration from Eric F.

Stein, *id.* Dkt. 30-1 ("Stein Decl. I"), and attached exhibits.  On May 20, 2019, OSJI filed a letter

in opposition requesting a processing rate of 7,500 pages per month. Dkt. 44. On May 30, 2019, the Court ordered the State Department to process at a rate of 5,000 pages per month. Dkt. 50.

On June 3, 2019, the parties filed a joint status report. Dkt. 51. In it, DOD represented that "on June 13, 2019, DOD will provide Plaintiff with an estimated volume of potentially responsive records (in pages) and proposed production schedule for any non-exempt responsive records." *Id.* at 2. On June 4, 2019, at a status conference, DOD took the position that the setting of a date for a "proposed production schedule" complied with the Court's April 23, 2019 Order. Dkt. 59 ("June 4, 2019 Hrg. Tr.") at 10–13. DOD was not prepared with information at that conference regarding DOD's FOIA capabilities beyond that it "expressed some concern with the order with respect to [S]tate as to whether [DOD] would be able to comply with that amount . . . ." *Id.* at 16. Although the Court anticipated setting a processing schedule based on the parties' informed input, DOD was not able to provide any facts at all regarding its processing capabilities. *See id.* at 18 ("THE COURT: . . . If there is something concrete you want to say beyond the agencies are busy, I'm happy to hear it now."). During the June 4, 2019 conference, the Court, in recognition of the public importance and time-sensitivity of the Khashoggi FOIA request, ordered that each agency process 5,000 pages per month, save that the Court set DOD's production obligation during the ongoing month of June 2019 at 2,500 pages. *See id.* at 18–19.

On June 13, 2019, the State Department and DOD filed the instant motion for reconsideration, Dkt. 61, a memorandum of law in support, Dkt. 62 ("Gov't Mem."), and declarations in support from Eric F. Stein, Dkt. 64 ("Stein Decl. II"), and Mark H. Herrington, Esq., Dkt. 63 ("Herrington Decl."). On June 27, 2019, OSJI filed a memorandum of law in opposition, Dkt. 72 ("Pl. Mem."), and the supporting declaration of Catherine Amirfar, Esq., Dkt. 73 ("Amirfar Decl."), with supporting exhibits. On July 3, 2019, the State Department and

DOD filed a reply memorandum of law, Dkt. 79 ("Gov't Reply"), with a supporting declaration from Eric F. Stein, Dkt. 80 ("Stein Decl. III").

## II.    Applicable Legal Standards

### A.    Motion for Reconsideration

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted); *see also* S.D.N.Y. Local Rule 6.3 (requiring the movant to "set[] forth concisely the matters or controlling decisions which counsel believe the court has overlooked"). Such a motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). Rather, reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

The Government argues that the less stringent Rule 16(b)(4) "good cause" standard should govern, because "search and processing schedules in FOIA actions fall within the broad range of matters typically governed by pretrial orders issued under Rule 16." Gov't Reply at 1. OSJI counters that the Orders at issue "provide equitable relief by directing the Government to

take affirmative action to comply with FOIA's expedited processing provisions," and so should

be governed under the standard on a motion for reconsideration.  Pl. Mem. at 9.

### B.    FOIA Requests

FOIA requires that executive agencies, upon proper request, produce records to the public

or provide justification why the requested materials are exempt from production.  *See* 5 U.S.C.

§ 552.  The statute requires that "[e]ach agency, upon any request for records . . . shall . . .

determine within 20 days . . . after the receipt of any such request whether to comply with such

request and shall immediately notify the person making such request of . . . such determination

and the reasons therefor . . . ."  *Id.* § 552(a)(6)(A)(i).  Recognizing the difficulties of strict

compliance with the 20-day requirement, courts have permitted the processing of FOIA requests

on a first-in, first-out basis.  *See, e.g.*, *Open Am. v. Watergate Special Prosecution Force*, 547

F.2d 605, 616 (D.C. Cir. 1976) ("The good faith effort and due diligence of the agency to comply

with all lawful demands under the Freedom of Information Act in as short a time as is possible

by assigning all requests on a first-in, first-out basis, except those where exceptional need or

urgency is shown, is compliance with the Act."); *Bloomberg L.P. v. FDA*, 500 F. Supp. 2d 371,

276 (S.D.N.Y. 2007) ("While a general showing of an agency processing FOIA requests on a

first-in, first-out basis, coupled with a multitrack processing system may be consistent with due

diligence in some instances, this determination should not be automatic, and fails if extraordinary

need is demonstrated.").

Congress has long recognized that "information is often useful only if it is timely" and

that, therefore "excessive delay by the agency in its response is often tantamount to denial."

H.R. Rep. No. 93-876, at 6271 (1974).  In 1996, Congress amended FOIA to provide for

"expedited processing" where there is a "compelling need," defined as either (1) involving "an

imminent threat to the life or physical safety of an individual" or (2) in the case of a request made by "a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E). This case falls under the second definition, both because OSJI is an organization primarily engaged in disseminating information, and because there is urgency to inform the public, to the extent that this information is not FOIA-exempt, of official findings regarding the Khashoggi disappearance. *See* Compl. ¶ 26; Gov't Mem. at 5 (acknowledging that the request qualifies for expedited processing). For expedited processing, "a determination of whether to provide expedited process shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request . . . ." 5 U.S.C. § 552(a)(6)(E)(ii). An agency must process any request to which expedited processing has been granted "as soon as practicable . . . ." *Id.* § 552(a)(5)(E)(iii).

Notwithstanding the statutory deadlines for responding to FOIA requests, as to the timetable for production, FOIA "does not assign any particular time frame to release of the records sought." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012).

### III.   Analysis

#### A.   State Department

The State Department argues that it is not "practicable," within the meaning of the FOIA statute, for it to process 5,000 pages per month. Gov't Mem. at 9. Although it made the same contention in its initial submissions, *see* State Ltr., the State Department represents that its experience to date complying with the 5,000-page-per-month processing rate ordered by the Court, and the resulting impact on its overall FOIA operations, fortify the conclusion that a 5,000-page-per-month review rate is not practicable. It argues that the State Department's

challenges meeting this Order during the first month it was in effect constitute new facts, or alternatively good cause under Rule 16, so as to justify reconsideration.

The State Department has indeed presented additional relevant data in support of its request for a reduced pace of review. And the Court is prepared to assume *arguendo* that the importance of the issues at hand and the need to assure that the allocation of resources to this FOIA request are reasonable in light of the State Department's limited resources and competing priorities justify reconsideration. Nonetheless, the Court, on *de novo* reconsideration, does not find good cause to revise its considered Order that the State Department process 5,000 pages per month responsive to OSJI's FOIA request.

Salient here, Mr. Stein's first declaration, submitted in support of the State Department's original letter seeking a processing rate of 300 pages per month, outlined substantially the same challenges, in the nature of finite departmental resources, that his second declaration now sets out in more detail. Mr. Stein's initial submission described the State Department's overburdened FOIA resources, Stein Decl. I ¶ 14, and the sharp increase in FOIA requests and FOIA litigation during recent years, *id.* ¶¶ 14–19. Mr. Stein represented that the State Department has largely tasked, as FOIA reviewers, retired Foreign Service Officers who work on a part-time basis. He represented that the State Department therefore could process only approximately 300 pages per month in this matter. *Id.* ¶¶ 19–20. Mr. Stein represented that the State Department, at any given time, has between 60 and 73 reviewers processing records for release, and that it can process between 18,000 and 21,900 pages in total per month. *Id.* ¶ 20. Mr. Stein further represented that the State Department is seeking to fill six vacant positions that would perform FOIA litigation review, and, recognizing the limitations of its model for FOIA review, intends to train and hire more full-time employees to handle FOIA requests. *See id.* ¶¶ 21, 20 n.5. Mr.

Stein's first declaration further represented that the State Department had identified at least 63,000 pages potentially responsive to the instant request, *id.* ¶ 28, and that the 7,500-page per-month processing rate requested by OSJI would require more than 30% of the State Department's available FOIA reviewers, *id.* ¶ 20, drawing resources from other FOIA requests, *id.* ¶ 28. In contrast, Mr. Stein urged, a 300-page per month pace would not give rise to such acute conflicts. *Id.* ¶¶ 29–30.

To be sure, Mr. Stein's second declaration reflects impressive responsiveness on the part of the State Department to the Court's production Order, in that the State Department has significantly fortified the review process anticipated in Mr. Stein's first declaration, largely by, as projected in his first declaration, drawing resources from other FOIA projects. Mr. Stein represents that the State Department, in response to the Court's order, created a "unique project team" to address this FOIA request, "reassigning five full-time employees from their normal roles processing non-litigation FOIA requests." Stein Decl. II ¶¶ 8–9. These five employees, Mr. Stein states, represent 10% of currently-available full-time employees who process non-litigation FOIA requests. *Id.* ¶ 9. This appears to be a substantial expansion of the number of personnel whom Mr. Stein in his first declaration anticipated could be assigned to this request.

At the same time, Mr. Stein represents, the State Department has now identified more than 288,000 pages potentially responsive to OSJI's FOIA request that will ultimately need to be processed. *Id.* ¶ 14. This is a more than four-fold increase in the department's previous estimate of responsive records. If that number holds—*i.e.*, if the universe of responsive records is not pruned in the parties' continuing negotiations as to the materials OSJI seeks—Mr. Stein represents that the 5,000-page-per-month processing rate would therefore "[d]ivert[] more than 10% of the full-time employee resources for more than four years" and "will substantially

impede[] the [State] Department's ability to process the approximately 98% of FOIA requests that are not in litigation, including over 170 expedited requests." *Id.* ¶ 18.

The Court was aware when it originally ordered a 5,000-page-per-month processing rate that this directive would require the State Department either to divert resources from other FOIA requests or to mobilize additional resources. The Court's Order—which fell between the parties' competing proposals, albeit imposing a numeric target closer to the 7,500-page monthly target urged by OSJI than to the 300-page monthly target urged by the State Department—reflected a thoughtful attempt to balance the competing interests at hand, as FOIA case law requires. "It is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner" and government concerns, including agency capabilities and the heightened clearance process for issues of national security. *ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (citations omitted); *see also Halpern v. FBI*, 181 F.3d 279, 284 (2d Cir. 1999) (FOIA statute reflects a "preference for the fullest possible agency disclosure of such information consistent with a responsible balancing of competing concerns . . . ."). "Congress enacted FOIA to illuminate government activities. The law was intended to provide a means of accountability, to allow Americans to know what their government is doing." *ACLU*, 339 F. Supp. 2d at 504 (citing *Halpern*, 181 F.3d at 284).

As the Court has recognized at every conference in this case, the instant FOIA request concerns a matter of exceptional public importance and obvious and unusual time-sensitivity. As OSJI has repeatedly emphasized, Khashoggi's disappearance was front-page news in December 2018, when OSJI lodged its FOIA requests with the State Department and other federal agencies. In the months since, Khashoggi's disappearance, and the facts or allegations regarding his killing

in Saudi custody, have continued to be a matter of intense interest among the public, legislators, other policymakers, and journalists. *See, e.g.*, *Jamal Khashoggi and Azori Gwanda Remain Atop Latest "10 Most Urgent" List of Press Freedom Cases from One Free Press Coalition*, Forbes (Aug. 1, 2019), https://www.forbes.com/sites/forbespr/2019/08/01/jamal-khashoggi-and-azory-gwanda-remain-atop-latest-10-most-urgent-list-of-press-freedom-cases-from-one-free-press-coalition/#7eb919041fd2; Colby Itkowitz & Karoun Demirjian, *Senators Introduce Bipartisan Measure to Punish Saudis for Khashoggi Murder*, Wash. Post (July 31, 2019), https://www.washingtonpost.com/politics/senators-introduce-bipartisan-measure-to-punish-saudis-for-khashoggi-murder/2019/07/31/9bb5dbdc-b3b1-11e9-951e-de024209545d_story.html?noredirect=on&utm_term=.31b9a7985b69; *US Silence on Khashoggi 'Not an Option' Says UN Rapporteur*, B.B.C. News (10 July , 2019), https://www.bbc.com/news/world-middle-east-48932600.  Recently, a United Nations report found the Khashoggi killing likely to have been a crime committed in violation of international law.  Referencing this very FOIA request, the report urged a prompt investigation and called for the U.S. Government to "produce as much information as possible to those seeking to hold the perpetrators accountable."  Rep. of the Special Rapporteur on Extrajudicial, Summary or Arbitrary Executions: Investigation into the Unlawful Death of Mr. Jamal Khashoggi, ¶ 407, U.N. Doc. A/HRC/41/CRP.1, annex (June 19, 2019).

     As the record in this case reflects, these request-specific interests have driven the Court's judgment that a heightened commitment of resources is warranted for this particular FOIA request.  The Court has found that there is paramount public importance and urgency to OSJI's request for records bearing on the information known to the federal agencies regarding Khashoggi's disappearance.  The Court reiterates that assessment here.

The outcome struck by the Court attempted to balance the paramount interest in visibility—in public access to non-exempt records bearing on this consequential topic of urgent public concern—against the State Department's resource constraints and competing priorities. The Court is respectful of these limitations. The Court does not minimize that compliance with this request will draw more heavily on the State Department's FOIA resources than most other requests. The Court carefully considered these factors originally. It has carefully reconsidered them anew in response to the motion for reconsideration and the data contained therein.

Important to the Court's assessments at all times has been the anticipated duration of the State Department's review. Given the 63,000 pages of responsive material estimated at the time the Court ordered the State Department to process 5,000 pages per month, the Department's review would have taken more than a year to complete. The State Department now estimates that there are, in fact, 288,000 pages responsive to OSJI's request. On the pace ordered by the Court, review of this amount of material would take just under five years to review. This fact strongly commends against reducing the review pace ordered by the Court. In contrast, on the pace that the State Department now urges—in which it would review up to 3,000 pages per month, a greater volume than the earlier 300 pages per month it had initially proposed—review would take 96 months, or eight years.

To be sure, the Court is hopeful that as the State Department gains familiarity with the responsive materials, the parties' good-faith negotiations will prune out categories of records in which OSJI has limited interest and materially reduce the production timetable. *See* Pl. Mem. at 6–8 (listing 29 categories of documents the parties have already agreed to exclude). But the term "practicable" must be read in the context of FOIA's aims to provide timely information on government activities to the public. A 5,000-page per-month processing rate, which still

contemplates a protracted period of review and production, appropriately balances agency constraints against that aim.

In sum, the information presently before the Court, including the new facts contained in the State Department's submissions in support of reconsideration, reinforces the judgment that a 5,000-page-per-month review pace is merited. The Court finds this processing rate "practicable" within the meaning of FOIA. The Court therefore denies the motion for reconsideration as to the State Department.

### B.      Department of Defense

DOD's argument for reconsideration is based partially on the Court's ordering of a 5,000-page-per-month processing rate at the June 4, 2019 conference "without notice or an opportunity to submit a factual record." Gov't Mem. at 9. As noted earlier, DOD came to that conference unprepared to offer any facts beyond its status as a busy agency with competing demands on its resources. DOD has now presented relevant data. The Court finds, however, that even reviewed *de novo* with the benefit of additional facts now supplied by DOD, DOD has not shown good cause or "manifest injustice" sufficient to merit modification of the 5,000-page-per-month processing rate.

Like the State Department, DOD's position, articulated in Mr. Herrington's declaration, turns on DOD's limited FOIA processing capabilities. He notes the remarkable fact that the Office of Information Counsel ("OIC"), the DOD department that oversees FOIA requests, *see* Herrington Decl. ¶ 5, "does not possess eDiscovery software," *id.* ¶ 7. As a result, unexpedited by electronic review, the documents responsive to each FOIA request to DOD are subject to "line-by-line review by OIC staff for responsiveness." *Id.* ¶ 9. Further, he represents, OIC currently consists of only 11 full-time attorneys, 14 analysts, 1 paralegal, and 3 administrative

assistants.  *Id.* ¶ 5.  DOD is involved in discovery in 19 complex civil law suits of national import, and 40 other FOIA litigations involving matters of public concern, which call upon OIC's resources.  *Id.* ¶ 6.  Since this Court's processing rate Order, Herrington represents, an average of 25% of OIC's analysts have been working on this request on any given day.  *Id.* ¶ 20. As of Mr. Herrington's declaration, DOD had identified 22,637 pages of potentially responsive records.  DOD therefore projects that it will take several more months to complete its work on this FOIA request.  *Id.* ¶ 21.

The Court is sensitive to the many important FOIA requests that DOD receives and that DOD's seemingly antiquated review capacities strain the ability of its personnel to attend manually to these requests.  Nonetheless, DOD's decision to thus far deny itself the technologic capacity to speed its review cannot dictate the Court's assessment of the review pace that is "practicable" under FOIA.  As the Court observed at the most recent conference in this case, the inquiry must focus on a reasonable agency's technological capability.  Dkt. 82 (transcript of July 8, 2019 hearing) at 10–11.  Weighing DOD's duties to effect prompt disclosure under FOIA against its legitimate administrative constraints, the Court finds that a 5,000-page-per-month processing rate remains "practicable" for FOIA purposes, even if meeting this demand calls upon DOD to augment, temporarily or permanently, its review resources, human and/or technological.

The Court notes, finally, that both the State Department and DOD imply that the Court's initial determination that a 5,000-page-per-month processing rate was merited was premised in part on the fact that OSJI's FOIA request was made in December 2018, but that the two agencies did not report to plaintiffs on the requests until April 2019.  *See* Gov't Mem. at 2 (noting Court's observation at June 4, 2019 conference that it took "four months before anyone was paying any attention to the request at either agency").  For avoidance of doubt, in setting the 5,000-page-

per-month processing rate, the Court was not punishing either agency for sluggish compliance. The Court was recognizing that the lack of any document production by either agency during the first half-year after OSJI lodged its request reinforced the need for a meaningful production schedule, consistent with the schedules the Court has set.  That assessment remains apt.

## CONCLUSION

For the reasons reviewed above, the Court denies the motions by the State Department and DOD for reconsideration of the monthly processing rates set by the Court.  The Clerk of Court is respectfully directed to deny the motion pending at Dkt. 61.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: August 6, 2019
    New York, New York

14