**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE, | |
|             Plaintiff, | |
|             v. | 19 Civ. 00234 (PAE) |
| CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE, | |
|             Defendants. | |
| OPEN SOCIETY JUSTICE INITIATIVE, | |
|             Plaintiff, | |
| | 19 Civ. 01329 (PAE) |
|             v. | |
| DEPARTMENT OF JUSTICE and DEPARTMENT OF STATE, | |
|             Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Counsel for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697/2528
peter.aronoff@usdoj.gov
natasha.teleanu@usdoj.gov

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys

# CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

    I.    Standards of Review ........................................................................................... 3

    II.    The Agencies' Searches Were Adequate ............................................................ 5

    III.  The Agencies Properly Withheld the Responsive Records and Information About Their Number and Nature Pursuant to FOIA Exemptions 1 and 3 ................................. 7

        A.    The Agencies Cannot Provide Information About the Volume or Nature of the Responsive Records on the Public Record Without Revealing Classified and Statutorily Protected Information ................................................................. 8

        B.    The Responsive Records and Information About Their Number and Nature Are Classified and Protected by Exemption 1 ........................................... 11

        C.    The Withheld Records and Information About Their Number and Nature Are Protected by the National Security Act and Exemption 3 ......................... 16

        D.    The Records Contain No Reasonably Segregable, Non-Exempt Information 18

    III.  Portions of the Withheld Records Are Also Protected by Exemptions 3, 5 and 6 . 18

        A.    Exemption 3 .................................................................................................... 19

        B.    Exemption 5 .................................................................................................... 19

        C.    Exemption 6 .................................................................................................... 20

CONCLUSION .................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU v. DOJ*,
  681 F.3d 61 (2d Cir. 2012)....................................................................... 4, 15, 16, 18
*Agrama v. Internal Revenue Serv.*,
  No. 17-5270, 2019 WL 2064505 (D.C. Cir. Apr. 19, 2019)............................ 6, 7, 9
*Am. Civil Liberties Union v. Nat'l Sec'y Agency*,
  925 F.3d 576 (2d Cir. 2019)..................................................................................... 11
*Am. Civil Liberties Union v. United States Dep't of*,
  *Def.*, 901 F.3d 125 (2d Cir. 2018)............................................................................. 4
*American Civil Liberties Union v. F.B.I.*,
  No. 11 Civ. 7562 (WHP), 2015 WL 1566775 (S.D.N.Y. Mar. 31, 2015) .......... 9, 17
*Amnesty Int'l USA v. CIA*,
  728 F. Supp. 2d 479 (S.D.N.Y. 2010)................................................................. 14, 18
*Assassination Archives And Research Ctr. v. C.I.A.*,
  177 F. Supp. 2d 1 (D.D.C. 2001) ............................................................................ 13
*Azmy v. U.S. Dep't of*,
  *Def.*, 562 F. Supp. 2d 590 (S.D.N.Y. 2008)............................................................ 12
*Baker v. CIA*,
  580 F.2d 664 (D.C. Cir. 1978) ................................................................................ 18
*Bassiouni v. CIA*,
  392 F.3d 244 (7th Cir. 2004) ................................................................................. 8, 9
*C.I.A. v. Sims*,
  471 U.S. 159 (1985)...................................................................................... passim
*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994).............................................................................. 3, 5, 6
*DiBacco v. U.S. Army*,
  795 F.3d 178 (D.C. Cir. 2015) ................................................................................ 16
*DOD v. FLRA*,
  510 U.S. 487 (1994) ................................................................................................ 19
*Elec. Privacy Info. Ctr. v. O.D.N.I.*,
  281 F. Supp. 3d 203 (D.D.C. 2017) ........................................................................ 13
*Elec. Privacy Info Ctr. v. NSA*,
  678 F.3d 926 (D.C. Cir. 2012) ................................................................................ 16
*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) ................................................................................ 16
*Freedom of the Press Found. v. United States Dep't of Justice*,
  241 F. Supp. 3d 986 (N.D. Cal. 2017) .................................................................... 12
*Grand Cent. P'ship, Inc. v. Cuomo*,
  166 F.3d 473 (2d Cir. 1999)............................................................................ 5, 7, 8
*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,

608 F.2d 1381, 1384 (D.C. Cir. 1979) .................................................................... 8

*Hopkins v. HUD*,
929 F.2d 81 (2d Cir. 1991)...................................................................................... 18

*Intellectual Prop. Watch v. U.S. Trade Representative*,
205 F. Supp. 2d 334 (S.D.N.Y. 2016)..................................................................... 14

*Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) ................................................................................. 5

*Jarvik v. C.I.A.*,
741 F. Supp. 2d 106 (D.D.C. 2010) .......................................................................... 6

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146 (1989) ................................................................................................. 1

*Judicial Watch, Inc. v. Export-Import Bank*,
108 F. Supp. 2d 19 (D.D.C. 2000) ........................................................................... 5

*Katsiaficas v. C.I.A.*,
No. 13-CV-11058-ADB, 2017 WL 2172437 (D. Mass. May 17, 2017) ................. 13

*Krikorian v. Dep't of State*,
984 F.2d 461 (D.C. Cir. 1993) ............................................................................... 14

*Larson v. Dep't of State*,
No. 1:02CV01937(PLF), 2005 WL 3276303 (D.D.C. Aug. 10, 2005) ................... 12

*Lawyers Comm. for Human Rights v. I.N.S.*,
721 F. Supp. 552 (S.D.N.Y. 1989) ......................................................................... 12

*Long v. Office of Pers. Mgmt.*,
692 F.3d 185 (2d Cir. 2012)...................................................................................... 5

*Maynard v. C.I.A.*,
986 F.2d 547 (1st Cir. 1993)..................................................................................... 6

*Multi Ag Media LLC v. Dep't of Agric.*,
515 F.3d 1224 (D.C. Cir. 2008) ............................................................................. 19

*Murphy v. Exec. Office for U.S. Attorneys*,
789 F.3d 204 (D.C. Cir. 2015) ............................................................................... 15

*New York Times Co. v. U.S. Dep't of Justice*,
756 F.3d 100 (2d Cir.)......................................................................................... 8, 9

*New York Times Co. v. U.S. Dep't of Justice*,
872 F. Supp. 2d 309 (S.D.N.Y. 2012)...................................................................... 3

*New York Times Co. v. United States Dep't of Justice*,
235 F. Supp. 3d 522 (S.D.N.Y. 2017)..................................................................... 11

*New York Times Co. v. United States Dep't of Justice*,
390 F. Supp. 3d 499 (S.D.N.Y. 2019)..................................................................... 17

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982) ................................................................................. 5

*Privacy Info. Center v. Dep't of Justice*,
296 F. .Supp. 3d 109 (D.D.C. 2017)....................................................................... 16

*Rubin v. C.I.A.*,
No. 01 Civ. 2274 (DLC), 2001 WL 1537706 (S.D.N.Y. Dec. 3, 2001) ................. 12

*Tigue v. DOJ*,
312 F.3d 70 (2d Cir. 2002)...................................................................................... 18

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ........................................................................................ 8

*Voinche v. F.B.I.*,
    46 F. Supp. 2d 26 (D.D.C. 1999) .................................................................................. 12

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) ...................................................................................... 4, 15

*Wilson v. C.I.A.*, No. CIV. A.,
    91-0087-LFO, 1993 WL 433589 (D.D.C. Oct. 14, 1993) ......................................... 13

**Statutes**

5 U.S.C. § 552 ..................................................................................................................... 1

5 U.S.C. § 552(a)(8)(i)(I) .................................................................................................. 15

5 U.S.C. § 552(b) .............................................................................................................. 16

5 U.S.C. § 552(b)(1) ..................................................................................................... 2, 10

5 U.S.C. § 552(b)(3) ........................................................................................................... 2

5 U.S.C. § 552(b)(5) ......................................................................................................... 18

5 U.S.C. § 552(b)(6) ......................................................................................................... 19

50 U.S.C. § 3024(i)(1) ..................................................................................... 2, 4, 15, 16

50 U.S.C. 3501 ................................................................................................................. 18

50 U.S.C. § 3507 .............................................................................................................. 17

Fed. R. Civ. P. 56(a) ......................................................................................................... 3

Defendants the Central Intelligence Agency ("CIA") and Office of Director of National Intelligence ("ODNI," and together with CIA, the "agencies") respectfully submit this memorandum of law in support of their motion for summary judgment in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989) (quotation marks omitted). In enacting FOIA's exemptions, Congress recognized "that public disclosure is not always in the public interest." *C.I.A. v. Sims,* 471 U.S. 159, 166–67 (1985). In particular, the government has a "compelling interest" in protecting both the secrecy of information concerning intelligence sources and methods, and the assurance of confidentiality that is "essential to the effective operation of our foreign intelligence service." *Id*. at 175.

Plaintiff's FOIA request to CIA and ODNI directly implicates classified and statutorily protected information concerning intelligence sources, and methods and activities, as well as foreign relations. The request seeks "all records relating to the killing of U.S. resident Jamal Khashoggi, including but not limited to the CIA's findings on and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." Complaint ¶ 25, Dkt. No. 1. Defendants CIA and ODNI searched their respective components likely to possess potentially responsive documents, and produced hundreds of pages of records. But given the nature of the request itself, which on its face seeks intelligence records and analysis, the remaining responsive records are classified and protected from disclosure by statute. Moreover, although the United States has acknowledged that the intelligence community has

assessed information concerning Mr. Khashoggi's killing, it has not disclosed the volume or type(s) of intelligence or the sources and methods implicated, and thus these details, including the number and nature of records responsive to the FOIA request submitted to the agencies, are classified and statutorily protected. The agencies therefore provided a "no number, no list" response to the FOIA request to the extent it seeks such protected records and information.

As explained more fully below and in the agencies' declarations, including classified declarations submitted for the Court's *ex parte* and *in camera* review, ODNI and CIA conducted reasonable searches for records, and logically and plausibly explained why the remaining records are exempt from disclosure in full pursuant to FOIA exemption 1, 5 U.S.C. § 552(b)(1), and exemption 3, *id.* § 552(b)(3), in conjunction with the National Security Act, 50 U.S.C. § 3024(i)(1), as amended. Portions of the responsive records are also protected by exemptions 3, 5 and 6, 5 U.S.C. § 552(b)(3), (5), (6), as explained in the classified declarations. The Court should therefore grant the agencies summary judgment.

## BACKGROUND

On December 4, 2018, plaintiff sent substantively identical FOIA requests to seven federal agencies, including CIA and ODNI. *See* Complaint ¶ 25, Dkt. No. 1[1]; *see also* Consolidated Complaint ¶ 26, Dkt. No. 1 in ECF No. 19 Civ. 1329. As relevant to this motion, CIA and ODNI completed their searches for potentially responsive records by May 10, 2019, and completed all processing for responsiveness and exemptions by August 5, 2019, with interim productions of any fully processed records on June 28 and July 12. *See* Dkt. Nos. 30 (April 23 scheduling order setting May 10 deadline to complete searches); 43 (May 17 status letter noting

---

[1] Unless indicated otherwise, citations in the form "Dkt. No." refer to the docket entries in the main action, ECF No. 19 Civ. 234, and not the consolidated action, ECF No. 19 Civ. 1329.

2

parties' agreement on August 5 end date for processing); 49 (May 24 status letter noting

agencies' agreement to two interim productions of any fully processed records); 99 (September

24 status letter noting agencies' completion of all processing by August 5).

CIA released a total of 216 records in whole or in part and ODNI released 96 pages in

part, which generally reflect awareness of media reporting, as well as incoming requests from the

media. Unclassified Declaration of Antoinette B. Shiner, Information Review Officer for the

Litigation Information Review Office, CIA ("Public Shiner Decl.") ¶¶ 10-11; Unclassified

Declaration of Patricia Gaviria, Director, Information Management Division, ODNI ("Public

Gaviria Decl.") ¶ 20.[2] Each agency's final response stated that the remaining responsive

record(s)[3]—hereinafter referred to as the "responsive records"—were withheld in full pursuant to

FOIA exemptions 1 and 3, and portions are also subject to exemptions 5 and 6. Dkt. No. 99.[4] The

parties have referred to this portion of each agency's response as a "no number, no list" response.

## ARGUMENT

I.     **Standards of Review**

FOIA disputes are generally resolved by summary judgment. *See, e.g.*, *Carney v. U.S.*

*Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).[5] Summary judgment is warranted if a movant

---

[2] Plaintiff does not challenge any of the redactions in either agency's production.

[3] For ease of reading, the remainder of this brief refers to the record or records that were withheld in full by CIA and ODNI as "records." This should not be read to indicate that one, or more than one, record was withheld; instead, each agency's position is that the number of withheld records is itself an exempt fact.

[4] Upon further consideration, in addition to asserting exemption 3 under the National Security Act to withhold the responsive records in full, the agencies now assert exemption 3 based on the CIA Act and 50 U.S.C. § 3024(m) over portions of the responsive records.

[5] The agencies have not submitted a Local Rule 56.1 statement, which the parties have agreed is not necessary here. *See* Dkt. No. 99. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, an agency meets its burden through declarations showing a thorough search and providing "reasonably detailed explanations" for any asserted exemptions. *Carney*, 19 F.3d at 812 (footnote omitted). Where the agency cannot make these showings on the public record without revealing exempt information, it may submit declarations *ex parte*, for the Court's *in camera* review. *ACLU v. DOJ*, 681 F.3d 61, 66 (2d Cir. 2012). The agency's declaration is "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (quotation marks omitted);. *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

An agency's explanation for the application of exemptions is sufficient if it appears logical and plausible. *See Am. Civil Liberties Union v. United States Dep't of Def.*, 901 F.3d 125, 133 (2d Cir. 2018) (as amended Aug. 22, 2018). In the area of national security, however, the government's declarations are entitled to "*substantial weight*." *ACLU v. DOJ*, 681 F.3d at 69 (emphasis in original). This deference extends both to the intelligence agencies' determinations as to whether disclosure of particular information would reveal protected intelligence sources and methods protected by the National Security Act, 50 U.S.C. § 3024(i)(1), as amended, *see Sims*, 471 U.S. at 179, and to their predictive judgments regarding the potential harms that could reasonably be expected to flow from public disclosure, *see ACLU v. DoD*, 901 F.3d 125, 134 (2d Cir. 2018); *ACLU v. DOJ*, 681 F.3d at 70; *Wilner*, 592 F.3d at 76. The principle that agency declarations are entitled to substantial deference is based on a judicial recognition that "it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence gathering process." *Sims*, 471 U.S. at 179; *see also Wilner*, 592 F.3d at 76 ("[r]ecognizing the relative competencies of the

executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" about likely harm to national security from release of information).

Here, the agencies' declarations, including both the public declarations and the classified declarations submitted for the Court's review *ex parte* and *in camera*, demonstrate that the agencies conducted reasonable searches for responsive records. The agencies have logically and plausibly established that the withheld responsive records, and details about them, are exempt from disclosure, especially in light of the substantial deference owed to the agencies' declarations. The agencies are therefore entitled to summary judgment.

## II.   The Agencies' Searches Were Adequate

An agency does not have a heavy burden in defending the searches it performed; the agency need only show "'that its search was adequate.'" *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 190 (2d Cir. 2012) (quoting *Carney*, 19 F.3d at 812). A search is judged by the efforts the agencies undertook, not by its results: each agency must demonstrate that its search was "reasonably calculated to discover the requested documents," not that the search "actually uncovered every document extant." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999). The search "need not be perfect, but rather need only be reasonable," *id.*, because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quotation and citation marks omitted).

To describe a reasonable search, a declaration should explain "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003) (citation

and internal quotation marks omitted). The declaration need not "set forth with meticulous documentation the details of an epic search." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). Search declarations may be made by the individuals supervising each agency's search, rather than by each individual who participated. *Carney*, 19 F.3d at 814.

Where an agency's declaration demonstrates that it has conducted a reasonable search, "the FOIA requester can rebut the agency's affidavit only by showing that the agency's search was not made in good faith," *Maynard v. C.I.A.*, 986 F.2d 547, 560 (1st Cir. 1993); *see also Carney*, 19 F.3d at 812, or by showing "tangible evidence," such as the existence of additional records, that undermine the claimed adequacy of the search, *Carney*, 19 F.3d at 812. "[P]urely speculative claims about the existence and discoverability of other documents" are insufficient to overcome the good faith presumption. *Carney*, 19 F.3d at 813.

Both agencies conducted adequate searches here. It is not possible to provide a complete factual presentation on the public record, because describing the search methodology would risk disclosing exempt information. Public Gaviria Decl. ¶ 20; Public Shiner Decl. ¶ 11; *see Jarvik v. C.I.A.*, 741 F. Supp. 2d 106, 121 (D.D.C. 2010) (in a no number, no list case, upholding CIA's declining to provide information about its search where agency maintained that providing information "would reveal the extent to which the CIA collected or did not collect information and/or prepared or did not prepare analysis on the events that are the subject of the Plaintiff's FOIA request, which in turn would reveal sensitive intelligence capabilities and interests"); *see also Agrama v. Internal Revenue Serv.*, No. 17-5270, 2019 WL 2064505, at *2 (D.C. Cir. Apr. 19, 2019) (upholding district court's reliance on *ex parte* description of search in exemption 7(A) case). Additional factual information is therefore provided in the classified *ex parte* declarations.

As explained in CIA's public declaration, CIA personnel with expertise in searching agency records "consulted with Agency officials knowledgeable about the subject matter of the requests in order to ascertain the potential universe of responsive records and to identify all of the specific offices and individuals who would be likely to possess those documents if they were to exist." Public Shiner Decl. ¶ 9. Based on those discussions, agency personnel "tailored their searches for responsive material to account for the ways in which the Agency's records systems are configured, in order to most accurately identify and retrieve potentially responsive material." *Id*. The agency "ran a list of terms identified by subject matter experts through each of the records systems identified as likely to contain responsive material should it exist." *Id*. Ms. Shiner avers that "[s]earches were conducted in all locations in which it is reasonably likely that responsive records would reside, and used search terms and methods reasonably calculated to locate those documents." *Id*. Additional detail is provided in CIA's classified declaration.

As explained in ODNI's public declaration, agency personnel with records expertise "identified the components that would likely possess potentially responsive documents, if they were to exist, and asked each of those component to have everyone in that component who would likely have responsive documents to search all places likely to contain responsive documents." Public Gaviria Decl. ¶ 20. Additional detail is provided in ODNI's classified declaration.

Both CIA and ODNI have demonstrated that their respective searches were "reasonably calculated to discover the requested documents." *Grand Cent. P'ship*, 166 F.3d at 489.

## III.   The Agencies Properly Withheld the Responsive Records and Information About Their Number and Nature Pursuant to FOIA Exemptions 1 and 3

The responsive records, and information about their number and nature, are classified and statutorily protected and thus exempt from public disclosure under FOIA exemptions 1 and 3.

### A. The Agencies Cannot Provide Information About the Volume or Nature of the Responsive Records on the Public Record Without Revealing Classified and Statutorily Protected Information

Both CIA and ODNI have properly issued a "no number, no list" response for the responsive records. That is, the agencies acknowledge the existence of one or more additional records responsive to the request, but cannot describe them on the public record—including by providing details such as the volume of records, their dates, titles or subject matter—without revealing exempt information.

To meet its burden to show that a FOIA exemption applies, an agency must provide a reasonably specific, non-conclusory explanation for why the claimed exemption encompasses the withheld information. *See Grand Cent. P'ship, Inc.*, 166 F.3d at 478. But an agency is not required to publicly reveal exempt information in order to meet this burden. As the Supreme Court has recognized, "[i]t is conceivable that the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency." *Sims*, 471 U.S. at 179. Thus, "[a]n agency may withhold information on the number of responsive documents and a description of their contents if those facts are protected from disclosure by a FOIA exemption." *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 122 (2d Cir.), *opinion amended on denial of reh'g,* 758 F.3d 436 (2d Cir. 2014), *supplemented,* 762 F.3d 233 (2d Cir. 2014); *see also Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979) ("When the itemization and justification are themselves sensitive, however, to place them on public record could damage security in precisely the way that [an exemption] is intended to prevent."); *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) (observing that agency's submissions "would not have to contain factual descriptions that if made public would compromise the secret nature of the information.").

8

For example, in *Bassiouni v. CIA*, 392 F.3d 244 (7th Cir. 2004), the requester sought all CIA records that mentioned him. 392 F.3d at 245. The agency responded that it had one or more records, but could provide no details about the record or records. *Id*. As the Seventh Circuit explained in upholding this "no number, no list" response,

> [T]he agency maintains that providing a list of the documents that mention [plaintiff], and claiming document-by-document exemptions for those whose contents are classified, would reveal details about intelligence-gathering methods. … It is easy to appreciate the basis of this concern. A list of documents could show clusters of dates that reveal when the agency acquired the information. Knowing which documents entered the files, and when, could permit an astute inference *how* the information came to the CIA's attention—and, in the intelligence business, "how" often means "from whom."

*Id*. Likewise, in *American Civil Liberties Union v. F.B.I.*, No. 11 Civ. 7562 (WHP), 2015 WL 1566775, at *1-3 (S.D.N.Y. Mar. 31, 2015), Judge Pauley upheld a FOIA response that acknowledged the existence of one or more orders of the Foreign Intelligence Surveillance Court related to an NSA program, but withheld the records and any further detail about their number or nature. The court held that "disclosure of responsive records or any further information about them (i.e., their nature or number) would reveal classified intelligence activities, sources or methods" because "such disclosure could enable America's adversaries to develop means to degrade and evade" NSA's efforts under the program, or "take other countermeasures that would undermine the intelligence community's mission." *Id*. at *3.

Similarly here, CIA and ODNI are unable to describe the responsive records without revealing information that is classified and statutorily protected from disclosure, and thus exempt under exemptions 1 and 3. The FOIA request seeks all CIA and ODNI "records relating to the killing of U.S. resident Jamal Khashoggi," including any "CIA[] findings on and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." Complaint ¶ 25. Plaintiff's complaint identifies certain statements by President Trump

9

concerning Mr. Khashoggi's killing. *Id.* ¶ 12. But although the President has acknowledged that

"our intelligence agencies continue to assess all information," *see*

https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-standing-

saudi-arabia/, concerning the killing, neither the President nor the agencies have released any

details about the intelligence gathered, including the nature and extent of any such intelligence.

They have not disclosed the volume or type(s) of intelligence in their possession, which agencies

or components were involved (other than that CIA played an unspecified analytical role), or the

intelligence sources and methods implicated in the records. Public Gaviria Decl. ¶ 23. All of

these details remain classified and protected from disclosure. *Id.*; *see also* Shiner Public Decl.

¶ 11.

For that reason, the agencies are not able to provide a *Vaughn* index of the responsive

records. Such an index would identify not only the volume of intelligence that CIA and ODNI

possess, but also specific information (such as dates, titles, senders, recipients, and subject

matters) that would reveal the nature and sources and methods of that intelligence, as well as

how the agencies went about evaluating it. Public Shiner Decl. ¶ 11 ("Even seemingly innocuous

information like the volume or date of origin of any responsive information could reveal

classified intelligence sources and methods."); *see also* Public Gaviria Decl. ¶ 30 (revealing

details about responsive records, including their volume or nature, "could reasonably be expected

to cause irreparable harm and impair the DNI and the IC's ability to carry out its core functions

by revealing the subjects and areas of interest, and the depth of the IC's knowledge therein").

Public disclosure of these details could reasonably be expected to reveal classified intelligence

sources and methods, including by revealing intelligence interests, thus damaging national

security. Public Shiner Decl. ¶¶ 11, 14; Public Gaviria Decl. ¶¶ 29, 30; *see infra* at pp. 11-17.

The agencies therefore cannot reveal details about the volume or nature of the responsive records on the public record without revealing information that is exempt from disclosure under exemptions 1 and 3. Public Shiner Decl. ¶ 11, 14; Public Gaviria Decl. ¶¶ 27, 30.[6]

**B.   The Responsive Records and Information About Their Number and Nature Are Classified and Protected by Exemption 1**

FOIA's exemption 1 permits the government to withhold records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] in fact [are] properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current standards and procedures for classification are given by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526").

Section 1.1 of the Executive Order lists four requirements for the classification of national security information: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [] under the control of the United States Government;" (3) the information must pertain to one or more of eight protected categories of information listed in section 1.4 of the Executive Order; and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1)-(4). The agencies' public and classified declarations establish that each of these requirements is satisfied with regard to the responsive records and information about their number and nature.

---

[6] The Second Circuit has observed that withholding the volume and details of requested records is justified "in unusual circumstances, and only by a particularly persuasive affidavit." *New York Times Co.*, 756 F.3d at 122 (quotation marks omitted). Because it is not possible to fully explain the agencies' position on the public record, the agencies have each submitted a classified declaration explaining why details such as the number and nature of responsive records are classified and statutorily protected.

Both agency declarants, Ms. Shiner and Ms. Gaviria, possess original classification authority, and each has determined that the responsive records, as well as details regarding the volume and nature of those records, are currently and properly classified. Public Shiner Decl. ¶ 14; Public Gaviria Decl. ¶ 27. Each declarant also avers that the responsive records are owned by or are under the control of the United States government. Public Shiner Decl. ¶ 14; Public Gaviria Decl. ¶ 27. Ms. Shiner and Ms. Gaviria also explain that release of the responsive records—or information about their volume or nature—could reasonably be expected to result in damage to the national security in several ways. *See, e.g.*, Public Shiner Decl. ¶ 14; Public Gaviria Decl. ¶ 27.

First, disclosure of the responsive records and information would disclose particular intelligence. Public Shiner Decl. ¶ 16; *see also* Public Gaviria Decl. ¶ 29 (the withheld information pertains to properly classified intelligence information). Release of the responsive records and information would not only reveal the intelligence itself, but also could reasonably be expected to reveal the CIA's sources and methods, as well as the apportionment of agency resources; the existence or nonexistence of relationships with foreign entities, and collection capacity, or lack thereof. *See* Public Shiner Decl. ¶ 16; *see* Public Gaviria Decl. ¶ 29; *see also* Public Shiner Decl. ¶ 17 (to gather much of its intelligence, CIA relies upon clandestine means, and such information is not otherwise obtainable). Likewise, Ms. Gaviria avers that release of the responsive records could "would reveal intelligence activities and intelligence sources and methods such as collection capacity, or lack thereof, and the existence or non-existence of relationships with foreign entities." Public Gaviria Decl. ¶ 29. Disclosure of intelligence information, as well as sources and methods, can "permit foreign intelligence services and other groups to disrupt CIA activities and/or exploit perceived weaknesses, thereby compromising

12

intelligence operations and impairing the national security of the United States." Public Shiner Decl. ¶ 16; *accord* Public Gaviria Decl. ¶ 29.

Because of the importance of sources and methods to intelligence gathering, this information is properly protected by exemption 1, and courts have not hesitated to uphold assertions of exemption 1 to protect intelligence and the sources and methods for gathering such intelligence. *See, e.g.*, *Am. Civil Liberties Union v. Nat'l Sec'y Agency*, 925 F.3d 576, 600-01 (2d Cir. 2019) (intelligence program documents concerning intelligence sources and methods properly classified and withheld to prevent disclosure of core intelligence activities); *New York Times Co. v. United States Dep't of Justice*, 235 F. Supp. 3d 522, 537 (S.D.N.Y. 2017) (upholding withholding of descriptions of particular intelligence methods and tradecraft still in operational use by CIA), *aff'd in part, rev'd in part on other grounds, and remanded,* 939 F.3d 479 (2d Cir. 2019)[7]; *Azmy v. U.S. Dep't of Def.*, 562 F. Supp. 2d 590, 600 (S.D.N.Y. 2008) (approving withholding under exemption 1 of a wide variety of information related to intelligence methods); *Voinche v. F.B.I.*, 46 F. Supp. 2d 26, 29 (D.D.C. 1999) (approving application of exemption 1 to protect intelligence method); *Lawyers Comm. for Human Rights v. I.N.S.*, 721 F. Supp. 552, 564 (S.D.N.Y. 1989) (information relating to intelligence sources and methods properly withheld where it could reveal the "scope, focus, and levels of" investigations).

Second, the responsive records and information about their number and nature would reveal the nature and depth of the CIA's and the ODNI's intelligence interest in the Khashoggi killing and related matters. Courts have recognized that exemption 1 protects the nature and depth of United States intelligence interests. *See, e.g.*, *Larson v. Dep't of State*, No.

---

[7] The Second Circuit's recent decision in this matter did not address classification and exemption 1.

1:02CV01937(PLF), 2005 WL 3276303, at *11 (D.D.C. Aug. 10, 2005) (upholding assertion of exemption 1 where CIA asserted that withheld information could, among other things, "reveal or highlight areas of particular intelligence interest"), *aff'd*, 565 F.3d 857 (D.C. Cir. 2009); *Freedom of the Press Found. v. United States Dep't of Justice*, 241 F. Supp. 3d 986, 999 (N.D. Cal. 2017) (upholding exemption 1 where FBI stated the withheld pages "contain information gathered by the FBI on a specific type of individual or organization of national security interest"); *cf. Rubin v. C.I.A.*, No. 01 Civ. 2274 (DLC), 2001 WL 1537706, at *3 (S.D.N.Y. Dec. 3, 2001) (upholding a Glomar response tied to exemptions 1 and 3 where revealing whether records exist could show "the types of people who may be of foreign intelligence interest to the Agency").

Intelligence interests are synonymous with intelligence sources and methods, and disclosing the particular subjects and areas of interest by the agencies, as well as the depth of that interest, could reasonably be expected to cause irreparable harm to the agencies. Public Shiner Decl. ¶ 17; Public Gaviria Decl. ¶ 30. Courts have recognized that the government may properly protect under exemption 1 the extent of the government's intelligence interests. *See, e.g.*, *Assassination Archives And Research Ctr. v. C.I.A.*, 177 F. Supp. 2d 1, 6 (D.D.C. 2001) (amended Oct. 25, 2001) (upholding CIA's determination that it could not reveal the number of biographies contained in a compendium of biographical information on specific Cuban nationals, since "revealing the number of biographies in the compendium would reveal the extent of the agency's intelligence"), *aff'd*, 334 F.3d 55 (D.C. Cir. 2003); *Elec. Privacy Info. Ctr. v. O.D.N.I.*, 281 F. Supp. 3d 203, 215 (D.D.C. 2017) (upholding agency's withholding of a page count for a responsive document, while noting that courts defer to executive assertions that revealing the "volume of" sensitive information could harm national security, and providing examples);

14

*Katsiaficas v. C.I.A.*, No. 13-CV-11058-ADB, 2017 WL 2172437, at *6 (D. Mass. May 17, 2017) (upholding exemption 1 where, according to CIA declaration, withheld information would "'reveal the depth and breadth of the CIA's specific intelligence capabilities, authorities, interests, and resources'" (quoting declaration)); *Wilson v. C.I.A.*, No. CIV. A. 91-0087-LFO, 1993 WL 433589, at *2 (D.D.C. Oct. 14, 1993) (upholding assertion of exemption 1 over a specific document where release would reveal "the extent of the CIA's knowledge about" a specific individual).

Disclosure of intelligence interests would also reveal details of the intelligence community's collection efforts, or lack thereof, and as a result, the intelligence community's efforts may be "thwarted or made more difficult, reducing its effectiveness, requiring a diversion of resources, and resulting in a loss of valuable intelligence." Public Gaviria Decl. ¶ 30; *see also* Public Shiner Decl. ¶ 17 (including the targets of CIA's collection efforts). In addition, disclosure could reveal relationships with foreign entities and "permit foreign intelligence services and other groups to disrupt [intelligence community] activities and/or exploit perceived weaknesses, thereby comprising intelligence operations and impairing the national security of the United States." Public Shiner Decl. ¶ 16; Public Gaviria Decl. ¶ 29; *see also* Public Gaviria ¶ 30 (disclosure could "benefit a foreign intelligence service or terrorist organization by enabling it to redirect its resources to circumvent IC intelligence activities, and generally enhance its intelligence or counterintelligence activities at the expense of the U.S. national security").

Third, the responsive records and information about their number and nature would reveal information pertaining to "foreign relations or foreign activities of the United States." Public Shiner Decl. ¶ 14; Gaviria Decl. ¶ 27. The agencies are not able to describe the specific harms to national security that could reasonably be expected to flow from disclosure of the

information in this category; however, this detail is provided in the classified declarations. The withheld information pertaining to foreign relations and foreign activities of the United States is squarely protected by exemption 1. *See, e.g.*, *Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993) (upholding withholding under exemption 1 discussions between United States and foreign diplomatic officials "about foreign governments that was communicated to our government by the foreign governments on a confidential basis, that would reveal United States intelligence sources and methods and that contains frank internal discussions of foreign relations matters" because its release could "jeopardize reciprocal confidentiality" (quotation marks omitted)); *Intellectual Prop. Watch v. U.S. Trade Representative*, 205 F. Supp. 2d 334, 353-57 (S.D.N.Y. 2016); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 509 (S.D.N.Y. 2010).

The classified declarations provide additional information concerning the harms that could reasonably be expected to flow from disclosure of the responsive records and information about their number and nature. The agencies' public and classified declarations—which are entitled to substantial weight, *ACLU v. DOJ*, 681 F.3d at 69—logically and plausibly establish that the responsive records and information about their number and nature are properly classified. They are therefore exempt from disclosure under exemption 1.

### C.  The Withheld Records and Information About Their Number and Nature Are Protected by the National Security Act and Exemption 3

Exemption 3 "permits an agency to withhold records that are 'specifically exempted from disclosure by statute.'" *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)). Unlike most other FOIA exemptions, the applicability of exemption 3 does not depend on the "detailed factual contents of specific documents." *Wilner*, 592 F.3d at 72 (quotation marks omitted). Instead, the only questions are whether the

16

government has identified a relevant statute, and whether the withheld material falls within the statute's coverage. *Id.*; *accord Sims*, 471 U.S. at 167.[8]

The National Security Act of 1947, as amended, protects intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 3024(i)(1) (formerly codified at 50 U.S.C. § 403-1(i)(1)).[9] The National Security Act is an exempting statute within the meaning of exemption 3. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d at 73 (citing cases); *Sims*, 471 U.S. at 167-68 (citing predecessor statute). Unlike classified information withheld under exemption 1, the government need not make any showing that disclosure would be harmful in order to protect intelligence sources and methods from disclosure under Exemption 3 and the National Security Act. *See Elec. Privacy Info Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *Fitzgibbon v. CIA*, 911 F.2d 755, 764 (D.C. Cir. 1990); *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).

As described above, and in the classified declarations, disclosure of the responsive records and information about their number and nature would reveal information relating to intelligence sources and methods. Public Shiner Decl. ¶ 20; Public Gaviria Decl. ¶ 33; *see ACLU v. DOJ*, 681 F.3d at 73. Thus, exemption 3 provides an additional basis for their withholding.

---

[8] The addition in 2016 of the so-called "foreseeable harm" standard, *see* 5 U.S.C. § 552(a)(8)(i)(I), does not alter the standard for withholding under exemption 3, because the amendment carved out exemption 3. *See id.* § 552(a)(8)(B) ("Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)."); *accord id.* § 552(a)(8)(A)(i) (an agency shall withhold information only if either (I) the foreseeable harm standard is met, or if (II) "disclosure is prohibited by law").

[9] Specifically, the Act provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Courts have recognized that the CIA Director and other members of the Intelligence Community may exercise this authority pursuant to delegation and guidance from the DNI. *See DiBacco v. U.S. Army*, 795 F.3d 178, 197-99 (D.C. Cir. 2015); *see also Elec. Privacy Info. Center v. Dep't of Justice*, 296 F. .Supp. 3d 109, 121 (D.D.C. 2017) ("The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the 'Intelligence Community.'").

### D.  The Records Contain No Reasonably Segregable, Non-Exempt Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Here, however, even basic information about the responsive records—including their "volume and nature"—is itself exempt. Public Shiner Decl. ¶ 14; Public Gaviria Decl. ¶ 27. The records therefore do not contain any reasonably segregable, non-exempt information. Public Shiner Decl. ¶ 23; Public Gaviria Decl. ¶ 37; *see, e.g.*, *Am. Civil Liberties Union v. F.B.I.*, 2015 WL 1566775, at *4 (rejecting segregability challenge to no number, no list assertion, and noting that "[a]ny additional disclosure or further information regarding the responsive documents is neither feasible nor warranted"); *New York Times Co. v. United States Dep't of Justice*, 390 F. Supp. 3d 499, 518-19 (S.D.N.Y. 2019) (for request seeking DOJ law enforcement records, approving determination that no information was reasonably segregable where government asserted that "high-level information such as who communicated with who, or the date and recipient of external communications could suggest what the government did or did not know and when," and "the number of communications between specific people could suggest the government's investigative interests or focuses").

### III.    Portions of the Withheld Records Are Also Protected by Exemptions 3, 5 and 6

Although the Court need not reach any additional exemptions if it upholds the agencies' assertions of exemption 1 and exemption 3 in conjunction with the National Security Act, at least portions of the responsive records are also protected by exemptions 3 (in conjunction with the CIA Act and Section 102A(m)(1) of the National Security Act), 5 and 6. With regard to these exemptions, the agencies are unable to provide much detail on the public record, *see* Public

Shiner Decl. ¶ 21; Public Gaviria Decl. ¶¶ 34-35, but the assertions are explained in further detail in the classified declarations.

### A.  Exemption 3

The CIA Act provides that the agency "shall be exempted from . . . the provisions of any [] law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507 (formerly codified at 50 U.S.C. § 403g). Similarly, section 3024(m) of the National Security Act provides that "the [DNI] may exercise with respect to the personnel of the [ODNI] any authority of the Director of the Central Intelligence Agency with respect to the personnel of the [CIA] under the [CIA] Act of 1949 [50 U.S.C. 3501 et seq.], and other applicable provisions of law, as of December 17, 2004, to the same extent, and subject to the same conditions and limitations, that the Director of the Central Intelligence Agency may exercise such authority with respect to personnel of the [CIA]." Both the CIA Act and the National Security Act have been recognized as exempting statutes. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d at 73; *Baker v. CIA*, 580 F.2d 664, 667 (D.C. Cir. 1978); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 501 (S.D.N.Y. 2010).

For reasons that are explained in the classified declarations, portions of the withheld records would reveal information covered by the CIA Act and the National Security Act. Public Shiner Decl. ¶ 21; Public Gaviria Decl. ¶ 34. Accordingly, that information is exempt from disclosure under exemption 3.

### B.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This provision incorporates into FOIA "all the normal civil discovery privileges."

*Hopkins v. HUD*, 929 F.2d 81, 84 (2d Cir. 1991). Thus, if a document (or portion of a document) could not be obtained under ordinary discovery rules in litigation against an agency, it is exempt from FOIA release as well. *See Tigue v. DOJ*, 312 F.3d 70, 76 (2d Cir. 2002).

Because the agencies cannot provide additional detail about the responsive records, *see, e.g.*, Public Shiner Decl. ¶ 23, Public Gaviria Decl. ¶ 24, it is not possible to identify on the public record the specific privilege or privileges that apply to the withheld records without risking disclosure of exempt information. Additional detail is instead provided in the agencies' classified declarations. Public Shiner Decl. ¶ 21; Public Gaviria Decl. ¶¶ 24, 35. That information establishes that the information at issue is privileged and exempt from disclosure under exemption 5.

### C.  Exemption 6

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To be protected, the individual's privacy interest in the information's nondisclosure need only be more than de minimis. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). If a protected privacy interest is found, the court must then consider whether the "public interest in disclosure outweighs the individual privacy concerns." *Id.* at 1230 (internal quotation marks omitted). But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to public understanding *of the operations or activities of the government*." *DOD v. FLRA*, 510 U.S. 487, 495 (1994) (emphasis in original).

Because the agencies cannot provide additional detail about the responsive records, *see, e.g.*, Public Shiner Decl. ¶ 23, Public Gaviria Decl. ¶ 24, it is not possible in this public brief to discuss the specific privacy or public interests at issue without risking disclosure of exempt information. Additional detail is instead provided in the agencies' classified declarations. Public Shiner Decl. ¶ 21; Public Gaviria Decl. ¶¶ 24, 35. That information establishes that the information at issue is protected by exemption 6 because its disclosure would constitute a clearly unwarranted invasion of personal privacy.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the agencies' public and classified declarations, the agencies' motion for summary judgment should be granted.

Dated: December 9, 2019
New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

By:    */s/ Peter Aronoff*
PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697/2528
Facsimile: (212) 637-2717
E-mail: peter.aronoff@usdoj.gov
natasha.teleanu@usdoj.gov