UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE,<br>　　　　　Plaintiff,<br>　　v.<br>CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br>　　　　　Defendants. | 19 Civ. 00234 (PAE) |
| OPEN SOCIETY JUSTICE INITIATIVE,<br>　　　　　Plaintiff,<br>　　v.<br>DEPARTMENT OF JUSTICE and DEPARTMENT OF STATE,<br>　　　　　Defendants. | 19 Civ. 01329 (PAE) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL RECONSIDERATION**

　　　　　　　　　　　　　　　　　　　　　　　　AUDREY STRAUSS
　　　　　　　　　　　　　　　　　　　　　　　　Acting United States Attorney
　　　　　　　　　　　　　　　　　　　　　　　　Southern District of New York
　　　　　　　　　　　　　　　　　　　　　　　　Counsel for Defendants
　　　　　　　　　　　　　　　　　　　　　　　　86 Chambers Street, 3rd Floor
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10007
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 637-2697/2528
　　　　　　　　　　　　　　　　　　　　　　　　peter.aronoff@usdoj.gov
　　　　　　　　　　　　　　　　　　　　　　　　natasha.teleanu@usdoj.gov

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1
ARGUMENT .................................................................................................................................. 2
    I.    Standard of Review ........................................................................................................ 2
    II.   The Order Erroneously Found an Official Acknowledgment That the CIA and/or ODNI Possessed a Tape of Khashoggi's Killing ............................................................ 3
        A.    The Strict and Precise Test for Official Acknowledgment ............................... 3
        B.    There Has Been No Official Acknowledgment That CIA or ODNI Ever Possessed a Tape of the Khashoggi Killing .................................................................. 6
    III.  Compliance with the Court's Order Would Reveal Undisclosed Information Related to Intelligence Sources and Methods and Harm National Security .................... 9
CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013) ................................................................................ 6, 7, 8

*ACLU v. DOD*,
  628 F.3d 612 (D.C. Cir. 2011) ........................................................................................ 3

*Henry v. Miller*,
  No. 11 Civ. 1273 (PAE)(SLC), 2020 WL 2132625 (S.D.N.Y. May 5, 2020) ............................ 2

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  43 F. Supp. 3d 369 (S.D.N.Y. 2014) ............................................................................... 2

*James Madison Project v. DOJ*,
  302 F. Supp. 3d 12 (D.D.C.), *reconsideration denied in part,*
  320 F. Supp. 3d 143 (D.D.C. 2018) ................................................................................ 6

*N.Y. Times v. CIA*,
  965 F.3d 109 (2d Cir. 2020) .................................................................................. passim

*N.Y. Times v. DOJ*,
  756 F.3d 100 ............................................................................................................... 3

*Osen LLC v. United States Cent. Command*,
  969 F.3d 102 (2d Cir. 2020) .................................................................................. 1, 3, 4

*Wilner v. NSA*,
  592 F.3d 60 (2d Cir. 2009) ........................................................................................... 4

*Wilson v. CIA*,
  586 F.3d 171 (2d Cir. 2009) .................................................................................. passim

**Statutes**

50 U.S.C. § 3024(i)(1) ......................................................................................................... 13

**Rules**

Federal Rules of Civil Procedure 59(e) ............................................................................ 4, 5

Defendants the Central Intelligence Agency ("CIA") and Office of Director of National Intelligence ("ODNI," and together with CIA, the "government" or the "agencies") respectfully submit this memorandum of law in support of their motion for partial reconsideration of the Court's December 8, 2020 Opinion and Order (the "Order"), ECF No. 176, pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e) and 60(b).

## PRELIMINARY STATEMENT

The government respectfully seeks reconsideration of that portion of the Order that directs CIA and ODNI to produce a Vaughn index of a supposed "tape of the killing of Jamal Khashoggi."[1] Order at 29. In concluding that various statements of the President, Vice President, and CIA Director officially acknowledged one or both of the agencies' possession of such a tape, the Court misapplied the "precise and strict" test for official acknowledgment, *Osen LLC v. United States Cent. Command*, 969 F.3d 102, 112 (2d Cir. 2020), and appears to have overlooked controlling authority that in order to constitute an official acknowledgment precluding a Glomar (or no number, no list) response, the public statements must "remove *all* doubt" about an agency's possession of responsive records, *N.Y. Times v. CIA*, 965 F.3d 109, 118 (2d Cir. 2020). The statements before the Court do not meet this strict test; at the very least, "lingering doubts" remain about whether the CIA or ODNI ever had possession of a tape of the Khashoggi killing. *Wilson v. CIA*, 586 F.3d 171, 195 (2d Cir. 2009).

The Court also appears to have concluded that, in light of the cited public statements, producing a Vaughn index regarding the purported tape would not harm national security or reveal undisclosed information about intelligence sources and methods. But that is not so. The

---

[1] The government does not seek reconsideration of the order to produce a Vaughn index of "the CIA's report on the killing." Order at 29.

1

government has prepared supplemental classified declarations providing additional detailed information as to why producing a Vaughn index confirming or denying whether or not CIA or ODNI has a tape of the killing would reveal undisclosed classified information about intelligence sources and methods, causing harm to national security, notwithstanding the public statements. Without confirming or denying whether CIA or ODNI has such a tape, the agencies respectfully seek leave to file these declarations to explain the harms to national security that could flow from compliance with this aspect of the Order.[2]

For these reasons, and the reasons set forth in the supplemental classified declarations lodged by the agencies, the government respectfully requests that the Court grant partial reconsideration of the Order.

## ARGUMENT

### I. Standard of Review

The government seeks partial reconsideration of the Court's Order pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e) and 60(b). The standard under these rules is the same: the movant must show an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henry v. Miller*, No. 11 Civ. 1273 (PAE)(SLC), 2020 WL 2132625, at *2 (S.D.N.Y. May 5, 2020) (quotation marks omitted); *accord In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014). The movant must demonstrate that the Court overlooked "controlling decisions or data." *Henry*, 2020 WL 2132625, at *2 (quotation marks omitted).

---

[2] Because the government is unable to make a public proffer of the contents of the supplemental classified declarations, and to enable the Court to make an informed decision on the government's request, the government has lodged the supplemental classified declarations with a Classified Information Security Officer with the United States Department of Justice's Litigation Security Group to the Court.

## II. The Order Erroneously Found an Official Acknowledgment That the CIA and/or ODNI Possessed a Tape of Khashoggi's Killing

The Order's finding of a purported official acknowledgment of the possession by either the CIA or ODNI of a "tape of the killing of Jamal Khashoggi," Order at 29, fails to apply the strict and precise standards for official acknowledgment set forth by the Second Circuit. The government respectfully submits that the Court appears to have overlooked controlling precedent, and that reconsideration is necessary to correct a clear error.

### A. The Strict and Precise Test for Official Acknowledgment

As the Order recognizes, the Second Circuit's *Wilson* test governs whether any official public statements prevent the government from asserting that the existence or nonexistence of specific records at either agency is exempt from disclosure. Order at 11-14. Under that test, information is officially acknowledged only when "it (1) is as specific as the information previously released, (2) matches the information previously disclosed, and (3) was made public through an official and documented disclosure." *Wilson*, 586 F.3d at 186 (internal alterations and quotation marks omitted).

**Matching and Specificity.** The Second Circuit has made clear that the matching and specificity requirements of *Wilson* are "precise and strict," and "even a substantial overlap between the requested information and previously disclosed information is not enough to establish waiver." *Osen*, 969 F.3d at 112 (internal quotation marks omitted). Thus, while the matching requirement does not require "absolute identity," *N.Y. Times v. DOJ*, 756 F.3d 100, 120 (2d Cir.), *opinion amended on denial of reh'g,* 758 F.3d 436 (2d Cir. 2014), *supplemented,* 762 F.3d 233 (2d Cir. 2014), a match cannot be found if there are "substantive differences between the content of the [publicly] released government documents [or information] and the withheld information," *Osen*, 969 F.3d at 110 (quoting *ACLU v. DOD*, 628 F.3d 612, 620–21

3

(D.C. Cir. 2011)). For example, in *Osen*, the test was not met because the withheld records—photographs of specific IED attacks—did not match photographs of other IED attacks that had been publicly disclosed. 969 F.3d at 111-14.

The rigorous matching and specificity requirements apply equally where the classified fact is whether or not a particular government agency possesses records responsive to a FOIA request. In *N.Y. Times v. CIA*, the Court considered statements by the President that the plaintiffs argued had officially disclosed the existence of an alleged covert CIA program. The Court found the statements did not constitute an official disclosure that would preclude the CIA from issuing a Glomar response to the FOIA request, in part because the President's statements did not refer specifically to the CIA. 965 F.3d at 118. The Court held that

> [e]ven assuming *arguendo* that President Trump's statements revealed the general existence of the alleged covert program, a *Glomar* response is still appropriate if none of the relevant statements officially acknowledged the existence or nonexistence of specific records [requested in the FOIA request].

965 F.3d at 116–17. In other words, even if the President's statements had acknowledged the existence of a covert program, without any explicit reference to the CIA, the statements did not reveal whether or not the CIA possessed records about such a program. *See also Wilner v. NSA*, 592 F.3d 60, 70 (2d Cir. 2009) (holding that official acknowledgment of existence of surveillance program did not waive classification for "those aspects of the program that have not been subject to such disclosures," including whether or not the NSA possessed records regarding surveillance of plaintiff under the program).

**Removal of All Doubt.** An official acknowledgment does not occur when public statements give rise to a potential inference that an agency possesses responsive records, even if the inference is a reasonable or even a likely one. Rather, to constitute an official acknowledgment, the public statements must "remove *all* doubt" that the agency possesses

4

responsive records. *N.Y. Times v. CIA*, 965 F.3d at 118 (emphasis in original); *Wilson*, 586 F.3d at 195 (existence of "lingering doubts" precludes finding of official acknowledgment). The Second Circuit's cases vividly illustrate the point.

In *Wilson*, the question was whether the CIA could prohibit the plaintiff from publishing information revealing that she purportedly had been an agency employee before a specific date. As evidence, she pointed to a letter—on CIA letterhead, signed by an official from the agency's personnel department and later made public in the Congressional record—that purported to identify the plaintiff's dates of employment. 586 F.3d at 195. The Court acknowledged the obvious: the letter "appear[ed] more reliable as evidence of [plaintiff's] prior CIA affiliation than the sort of 'public speculation' generally dismissed in the case law." *Id*. Indeed, the CIA official had submitted a public declaration acknowledging that she had signed the letter and that when she did so she was the Chief of Retirement and Insurance Services at the agency. *Id*. at 197 (Katzmann, J., concurring in the judgment). The Court nonetheless held that the plaintiff's dates of employment remained properly classified. The CIA's refusal to confirm or deny the authenticity of the letter or its contents "necessarily preserve[d] some increment of doubt regarding the reliability of the publicly available information." *Id*. at 195. In the Court's view, "lingering doubts" remained both as to "the accuracy of the facts stated" in the letter itself, and also as to "whether there is anything left to hide on the subject." *Id*.

The Second Circuit recently reaffirmed this principle in *N.Y. Times v. CIA*. In holding that public statements by the President and a Department of Defense official did not officially acknowledge the existence of CIA records concerning the alleged covert program, the Court noted that the statements, "even packaged together, do not remove *all* doubt" that the program existed. 965 F.3d at 118. The Court expressly rejected the plaintiffs' invitation "to draw

5

inferences" from the statements about the likely existence of the program. *Id*. The Court also found it "significant" that the statements did not mention the CIA specifically, which preserved "'lingering doubts' as to the CIA's interest in the alleged program." *Id*.[3]

Under controlling Second Circuit law, therefore, official public statements that give rise to an inference that records exist—even if that inference is reasonable, or even likely—cannot constitute an official acknowledgment that would preclude an agency from refusing to confirm or deny the existence of records responsive to a FOIA request. If there is any "increment of doubt" that the inference from the public information is correct, *Wilson*, 586 F.3d at 195, no official acknowledgment has occurred.

### B. There Has Been No Official Acknowledgment That CIA or ODNI Ever Possessed a Tape of the Khashoggi Killing

None of the public statements cited in the Order is as specific as, or matches, a statement that either CIA or ODNI ever possessed a tape of the Khashoggi killing. Instead, the Court's official acknowledgment finding is premised on inferences drawn from the statements, contrary to controlling Second Circuit law.

As the Order acknowledges, Order at 20, the President's November 18, 2018 statement that "we have the tape" does not refer to either the CIA or ODNI. This statement standing alone

---

[3] In the Order, the Court cites cases suggesting that an official acknowledgment might be found where the statements give rise to an "inescapable inference" that responsive records exist. Order at 9 (citing *James Madison Project v. DOJ*, 302 F. Supp. 3d 12, 22 (D.D.C.), *reconsideration denied in part,* 320 F. Supp. 3d 143 (D.D.C. 2018), and *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013)). Even assuming, for the sake of argument, that allowing such inferences would not run afoul of the Second Circuit's admonition in *N.Y. Times v. CIA* not to "draw inferences" from public statements, an "inescapable inference" would have to be a *necessary* inference. In other words, only an inference that leaves no "lingering doubt[]" about its correctness could justify a finding of official acknowledgment. *See Wilson*, 586 F.3d at 195.

6

therefore cannot officially acknowledge that either the CIA or ODNI ever had possession of a tape of the Khashoggi killing.[4] *See N.Y. Times v. CIA*, 965 F.3d at 118; *Wilson*, 586 F.3d at 195; *James Madison Project*, 320 F. Supp. 3d at 152 (presidential acknowledgment of records in possession of one agency does not operate to acknowledge possession by other agencies) (citing *ACLU v. CIA*, 710 F.3d at 429 n.7). Despite the lack of any reference to the CIA or ODNI, the Court accepted plaintiff's argument that it was "realistic to infer," based on other statements, that the President's statement that "we have the tape" acknowledged possession by the CIA and/or ODNI. Order at 19. This was erroneous. The statements cited by the Court do not justify the inferences drawn by the Court, and even if they did, that would not be sufficient to justify a finding of an official acknowledgment.

The Court cites the President's November 20, 2018 statement that "[o]ur intelligence agencies continue to assess all information."[5] The Court appears to have concluded that this remark demonstrates that the CIA and/or ODNI had reviewed the tape. *See* Order at 19 ("President Trump's statement literally admitted that U.S. 'intelligence agencies' had reviewed the tape . . . ."). But the President's November 20 statement does not mention a tape—it refers generally to "all information." A general reference to "all information" is not as specific as, and does not match, any particular piece of information. And even if a tape of the killing were among the "information" being "assess[ed]," that does not mean that any particularly intelligence agency, let alone CIA or ODNI specifically, ever came into possession of the tape. Notably, the President's November 18 interview, which included the "we have the tape" remark, does not

---

[4] As noted above, nothing in this brief should be read as confirming whether either agency in fact possesses or does not possess such a tape.

[5] https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-standing-saudi-arabia/.

mention any agency, or even the "intelligence agencies." Thus, it is not the case that any statement by the President "literally admitted that U.S. 'intelligence agencies' had reviewed the tape."

The Court also cites an October 23, 2018 television interview of the Vice President, in which he said that "the Director of the CIA is there, in Turkey now, reviewing the evidence."[6] Order at 18-20. The Court reasons that this statement "realistically acknowledged at least the historical possession of it by the CIA at the time of its investigation." Order at 19; *see also id.* (agreeing with plaintiff's argument that "Vice President Pence's statement situates the tape (as central evidence of the killing) as having been reviewed specifically by the CIA, making it realistic to infer that the CIA is a particular entity within the Government that possessed the tape"). But no portion of the interview mentions a tape, let alone that the CIA ever obtained possession of it. Like the President's general reference to "all information," the Vice President's general reference to "the evidence" is not as specific as, and does not match, the purported tape.

Moreover, the statement that the CIA Director traveled to Turkey to *review* evidence is not equivalent to saying that the CIA *came into possession* of evidence. The fact that the CIA Director traveled to Turkey to review the evidence suggests that whatever evidence she reviewed was not then already in the CIA's possession. And the Vice President did not say that the CIA Director brought (or planned to bring) any of the evidence she reviewed back to the United States. The Vice President's statement therefore does not make it "realistic to infer" that the CIA ever came into possession of a tape. Order at 19. But even if such an inference were realistic, that would not "remove *all* doubt." *N.Y. Times v CIA*, 965 F.3d at 118. The Vice President's

---

[6] https://www.whitehouse.gov/briefings-statements/interview-vice-president-pence-robert-costa-washington-posts-space-summit-transformers-space/.

8

statement that Director Haspel was "reviewing the evidence" in Turkey leaves ample doubt as to whether the evidence included a tape of the killing and, if so, whether the CIA ever came into possession of it.

Finally, the Court cites Director Haspel's testimony "that the CIA had spent significant time assessing 'what happened to Mr. Jamal Khashoggi' and briefing and developing 'written products' on that issue." Order at 20. Again, however, the Director's general references to "assessing 'what happened'" and "briefing and developing 'written products'" do not mention a tape of the killing or the CIA's possession of a tape. It is entirely possible that the CIA could assess what happened and prepare written products on that issue without ever coming into possession of a tape.

For these reasons, the statements cited by the Court, individually and collectively, do not "effectively admit the intelligence agencies' possession, at least at some point, of the tape," even if such a tape "logically would have been a central piece of evidence in any . . . investigation" of the killing. Order at 20. The Court's conclusion that "[t]he above official disclosures acknowledg[e] the possession of the tape . . . by multiple intelligence agencies, including specifically the CIA," is based on inferences drawn from the statements rather than the statements themselves. Whether or not those inferences are reasonable, the statements, "even packaged together, do not remove *all* doubt" as to whether or not the CIA or ODNI ever possessed a tape of the killing. *N.Y. Times v. CIA*, 965 F.3d at 118. They therefore cannot support a finding of official acknowledgment.

### III. Compliance with the Court's Order Would Reveal Undisclosed Information Related to Intelligence Sources and Methods and Harm National Security

The Court appears to have concluded that in light of the public statements cited in the Order, production of a Vaughn index acknowledging whether or not the CIA or ODNI possesses

9

a tape of the Khashoggi killing would not cause harm to national security or reveal undisclosed intelligence sources and methods protected by the National Security Act, as amended, 50 U.S.C. § 3024(i)(1). *See* Order at 20, 26. However, as explained in the proffered supplemental classified declarations, that is not the case. Compliance with this aspect of the Order—and thus requiring CIA and ODNI to confirm or deny whether or not either has such a tape—would reveal undisclosed information relating to intelligence sources and methods that, if disclosed, could cause specific and identifiable harms to national security. Because the agencies asserted a no number, no list response, they did not describe in their previous classified declarations the particular harms to national security that would be caused by producing a public Vaughn index with respect to whether or not they have any particular piece of alleged information. The supplemental classified declarations that the government has lodged and seeks leave to file address the particular harms that would be caused by compliance with the Court's Order related to a single purported record.

It is not possible to describe on the public record the specific harms the government believes would result from such disclosure. However, the government believes the information contained in the proffered supplemental classified declarations is material and important for the Court's understanding and resolution of this motion.

The government therefore respectfully requests that the Court grant leave to file the supplemental classified declarations in support of this motion. *See* Local Civ. R. 6.3. Consideration of supplemental declarations on a motion for reconsideration is particularly appropriate where, as here, the government asserts that compliance with a court order could cause harm to national security. *See, e.g.*, *ACLU v. DOD*, 15 Civ. 9317, Dkt. No. 82 (S.D.N.Y.) (granting CIA leave to make supplemental classified submission in support of Exemption 1 and 3

withholdings "in the interest of justice," despite finding that CIA had not satisfied the standards for reconsideration, and noting that "[i]ssues of national security are involved, and technical rules of judicial convenience should not prevent the Government from making full and proper arguments to support its position").

## CONCLUSION

For the foregoing reasons, and the reasons stated in the proffered supplemental classified declarations, the agencies' motion for partial reconsideration should be granted.

Dated: January 5, 2021
      New York, New York

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York

By:   */s/ Peter Aronoff*
PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697/2528
Facsimile: (212) 637-2717
E-mail: peter.aronoff@usdoj.gov
       natasha.teleanu@usdoj.gov