UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE,<br>            Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br>            Defendants. | 19 Civ. 00234 (PAE) |
| OPEN SOCIETY JUSTICE INITIATIVE,<br>            Plaintiff,<br><br>v.<br><br>DEPARTMENT OF JUSTICE and DEPARTMENT OF STATE,<br>            Defendants. | 19 Civ. 01329 (PAE) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION**

                                  AUDREY STRAUSS
                                  United States Attorney for the
                                  Southern District of New York
                                  Counsel for Defendants
                                  86 Chambers Street, 3rd Floor
                                  New York, New York 10007
                                  Telephone: (212) 637-2697/2528
                                  peter.aronoff@usdoj.gov
                                  natasha.teleanu@usdoj.gov

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
Assistant United States Attorneys

Defendants the Central Intelligence Agency ("CIA") and Office of the Director of National Intelligence ("ODNI," and together with CIA, the "government" or the "agencies") respectfully submit this reply memorandum of law in further support of their motion for partial reconsideration of the Court's December 8, 2020 Opinion and Order (the "Order"), ECF No. 176, pursuant to Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e) and 60(b).

## PRELIMINARY STATEMENT

In its opposition to the government's motion ("Pl.'s Br."), Plaintiff fails to rebut the government's showing that the Court misapplied the Second Circuit's precise and strict test for official acknowledgment and overlooked controlling authority requiring that public statements must "remove *all* doubt" that an agency possesses responsive records. *N.Y. Times v. CIA*, 965 F.3d 109, 118 (2d Cir. 2020). Plaintiff effectively concedes that the public statements at issue do not meet the specificity and matching requirements of the test, and instead relies on impermissible inferences drawn from the overall context of the statements to argue that there has been an official acknowledgment. Plaintiff also fails to rebut the government's factual showing, in supplemental classified declarations, that compliance with the Order will reveal undisclosed classified and statutorily protected information about intelligence sources and methods and harm national security. Unable to counter the government's showing, Plaintiff argues that the Court should simply disregard the supplemental declarations for technical reasons. Given the serious national security concerns at stake, the Court should decline that request.

For the reasons below and in the government's opening brief, as well as in the supplemental classified declarations, the government respectfully requests that the Court grant partial reconsideration of the Order.

# ARGUMENT

**I.     Plaintiff Fails to Show That the Public Statements on Which the Court Relied Constitute an Official Acknowledgment That the CIA and/or ODNI Possess a Tape of Khashoggi's Killing**

As explained in the government's opening brief, the statements cited by the Court do not meet the Second Circuit's strict and precise test for official acknowledgment because they do not specifically match the exempt fact: whether or not CIA or ODNI possess a tape of the Khashoggi killing. Rather than engage with the requirements of the official acknowledgment test, Plaintiff attempts to distinguish the statements and sources presented in *Wilson v. NSA*, *Osen LLC v. United States Central Command*, and *N.Y. Times v. CIA*. But application of the specificity and matching requirements to the public statements at issue here demonstrates that both Plaintiff and the Court have drawn inferences from the statements that fail to justify a finding of an official acknowledgment.

Unable to rebut the government's showing that the statements relied upon in the Order lack the specificity or matching required for an official acknowledgment, Plaintiff instead argues that general statements about the role of the CIA and the existence of a tape, taken together, amount to an "inescapable inference" that the CIA and/or ODNI must possess such a tape. Pl.'s Br. at 7-10. But Plaintiff's implicit concession that it must rely on an inferential bridge to justify an official acknowledgment cannot be reconciled with the Second Circuit's holding that the official public statements, "even packaged together," must "remove *all* doubt" about the existence of a particular record to find an official acknowledgment. *See N.Y. Times v. CIA*, 965 F.3d at 118.

For example, Plaintiff equates "the role of the CIA" and its involvement in reviewing evidence relating to Khashoggi's murder with the CIA's possession of a tape of Khashoggi's

murder. *See* Pl.'s Br. at 7. But there is no necessary inference from the fact of CIA's assessment of what happened to Khashoggi that the agency must possess any particular piece of evidence, including a tape of the killing. An agency's acknowledgement of a general interest or involvement in the subject matter of a FOIA request does not constitute official acknowledgment that the agency possesses specific records relating to that subject matter, as the Second Circuit held in *Wilner v. NSA*, 592 F.3d 60 (2d Cir. 2009). There, the Court upheld the National Security Agency's Glomar response to a FOIA request for surveillance records concerning the plaintiff even though the surveillance program itself had been officially acknowledged. *See id.* at 70 (official acknowledgment that a surveillance program existed did not waive classification of "those aspects of the program that have not been the subject of such disclosures"). Likewise here, acknowledgment of CIA's general role does not acknowledge its possession of a tape or any other specific record.

  Similarly, in arguing that the President disclosed the existence of a tape, *see* Pl.'s Br. at 6, Plaintiff ignores that the President's statement did not contain any reference to the CIA or ODNI. As the Second Circuit recently reaffirmed, this is a key consideration in evaluating whether a public statement by the President serves to officially acknowledge that a particular agency possesses records responsive to a FOIA request. *See N.Y. Times v. CIA*, 965 F.3d at 118 (holding that President's statements about alleged covert CIA program did not officially acknowledge the existence of CIA records in part because the President did not mention the CIA). Most recently, the D.C. Circuit—addressing the same statement by the President that was at issue in *N.Y. Times v. CIA*—emphasized the need for sufficient specificity in finding an official acknowledgment. *See Leopold v. CIA*, __ F.3d __, 2021 WL 446152 (D.C. Cir. Feb. 9, 2021). In *Leopold*, the D.C. Circuit held that the President's statement was not an official acknowledgment because "[e]ven

3

if the President's tweet revealed *some* program, it did not reveal the existence of [CIA] records about that alleged program." *Id.* at *4. Concluding that the tweet at issue left "too much doubt," the D.C. Circuit reiterated that "[t]o establish official acknowledgment our precedents require certainty, not assumptions." *Id.* at *5 ("The tweet never mentions the [CIA] at all, let alone its intelligence interest in, or capabilities to gather intelligence about, payments to Syrian rebels.").

Plaintiff misplaces reliance on cases rejecting Glomar responses where the agencies had acknowledged an interest in the subject matter of the FOIA request. *See* Pl.'s Br. at 9 (citing *ACLU v. DOD*, 322 F. Supp. 3d 464, 478 (S.D.N.Y. 2018) (rejecting CIA's Glomar response to request for CIA records about Yemen raid because CIA had acknowledged interest in intelligence relating to Yemen and White House Press Secretary had officially acknowledged that CIA director was present during White House meeting at which raid was authorized), and *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013) (rejecting CIA's Glomar response to request for CIA records regarding drone strikes where CIA had acknowledged an intelligence interest in such strikes and the government had withdrawn Glomar response and sought remand to assert no number, no list response instead). "In the *Glomar* context, the 'specific information' at issue is not the contents of a particular record, but rather 'the existence *vel non*' of any records responsive to the FOIA request." *ACLU v. CIA*, 710 F.3d at 427; *see also ACLU v. DOD*, 322 F. Supp. 3d at 481 n.11 ("In the *Glomar* context, the operative question is not whether the records requested ultimately match the official acknowledgment. Instead, the question is whether the official acknowledgment 'matches' the facts (*i.e.*, the existence or not of records) that would be revealed were the agency to respond to the FOIA request with anything other than a *Glomar* response (such as with a no number, no list response).").

4

In contrast here, the CIA and ODNI did not assert Glomar responses to the FOIA request, but rather acknowledged that they have responsive records and withheld the number and details about those records, including whether or not they possess a tape of the killing. Nothing in this Court's decision in *ACLU v. DOD* or the D.C. Circuit's decision in *ACLU v. CIA* suggests that general statements about the CIA or ODNI's intelligence interest in a particular matter can serve as an official acknowledgement that either agency possesses a specific record. Thus, while public statements about a topic might in some cases lead to an "inescapable inference" that an "agency possesses at least some documents related to" that topic, thereby undermining a Glomar response, *ACLU v. DOD*, 322 F. Supp. 3d at 475, public statements related to an intelligence interest *generally* do not undermine the ability to assert a no number, no list response or to decline to acknowledge whether or not they possess a particular record.

## II. Plaintiff Fails to Rebut the Agencies' Factual Showing That Compliance With the Order Would Reveal Undisclosed Information Concerning Intelligence Sources and Methods and Harm National Security

The government's supplemental classified declarations demonstrate that compliance with the Court's Order to submit a Vaughn index regarding the purported tape would reveal undisclosed information relating to intelligence sources and methods that, if disclosed, could harm national security. These supplemental declarations are entitled to substantial deference from the Court. *See ACLU v. DoD*, 901 F.3d 125, 134 (2d Cir. 2018); *ACLU v. DOJ*, 681 F.3d 61, 69-70 (2d Cir. 2012); *Wilner*, 592 F.3d at 76; *see also CIA v. Sims*, 471 U.S. 159, 179 (1985). Plaintiff's arguments that no harm to national security exists, or that the Court should disregard any such harm, are unavailing.

Plaintiff's procedural argument that reconsideration is unwarranted because the government had the opportunity to submit the information in the supplemental classified

5

declarations earlier, *see* Pl.'s Br. at 10-11, is unpersuasive. Where "[i]ssues of national security are involved, . . . technical rules of judicial convenience should not prevent the Government from making full and proper arguments to support its position." *ACLU v. DOD*, 2017 WL 11563198, at *1 (S.D.N.Y. Nov. 13, 2017) (granting government's request, in its motion for reconsideration, to make supplemental classified submission in further support of exemption 1 and 3 withholdings). Indeed, the Court has already indicated that it intends to consider the supplemental declarations in ruling on the government's motion. *See* ECF No. 182. Moreover, because the agencies asserted a no number, no list response, which was the focus of the parties' cross-motions for summary judgment, the agencies' previous submissions did not detail the particular harms to national security posed by disclosure of whether or not the CIA or ODNI possess any particular piece of alleged information. Thus, contrary to Plaintiff's assertion, the submission of supplemental declarations does not amount to "another bite at the apple," *see* Pl.'s Br. at 11, particularly where the government has argued—and continues to argue—that there has not been an official acknowledgment that the CIA and/or ODNI possesses a tape of Khashoggi's killing.

      Similarly misplaced is Plaintiff's bald assertion that the supplemental classified declarations, which Plaintiff has not reviewed, "can add nothing" to the Court's assessment of harm to national security. *See* Pl.'s Br. at 2. This argument is belied by the declarations themselves, which logically and plausibly explain the agencies' expert judgment that disclosure of whether or not the CIA or ODNI possesses a tape of the killing could reasonably be expected to harm national security. *See Wilner*, 592 F.3d at 76 ("[r]ecognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" about likely harm to

national security from release of information). It also relies on the circular premise that the government has officially acknowledged the CIA and/or ODNI's possession of a tape of the Khashoggi killing. But as discussed above and in the government's opening brief, there has been no such acknowledgment.

Lastly, Plaintiff's assertion that a "significant amount of detail . . . has already been publicly released about the tape by other sources," such as Turkey and the United Nations, Pl.'s Br. at 11-12, has no bearing on whether the national security of the United States would be harmed if the agencies are required to confirm or deny whether either agency has such a tape. Whether a tape of the killing exists is a separate and distinct question from whether the CIA or ODNI possesses a tape. And it is well settled that statements by foreign officials or international agencies cannot constitute an official acknowledgment by the United States, let alone a specific agency of the United States. *See Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (only persons "authorized to speak" for the agency can make an official acknowledgment; even "widespread public discussion" of a classified matter is insufficient).

## CONCLUSION

For the foregoing reasons, and the reasons stated in the agencies' opening brief as well as the supplemental classified declarations, the agencies' motion for partial reconsideration should be granted.

Dated: February 16, 2021
      New York, New York

                        Respectfully submitted,

                        AUDREY STRAUSS
                        United States Attorney
                        Southern District of New York

By:   */s/ Natasha W. Teleanu*
        PETER ARONOFF
        NATASHA W. TELEANU
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        Telephone: (212) 637-2697/2528
        Facsimile: (212) 637-2717
        E-mail: peter.aronoff@usdoj.gov
                  natasha.teleanu@usdoj.gov