**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE,<br>  Plaintiff,<br><br>  v.<br><br>CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br>  Defendants. | 19 Civ. 234 (PAE) |
| OPEN SOCIETY JUSTICE INITIATIVE,<br>  Plaintiff,<br><br>  v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br>  Defendant. | 20 Civ. 6625 (PAE) |

## MEMORANDUM OF LAW IN SUPPORT OF THE CONSOLIDATED MOTIONS OF THE CENTRAL INTELLIGENCE AGENCY AND OFFICE OF DIRECTOR OF NATIONAL INTELLIGENCE FOR SUMMARY JUDGMENT

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Counsel for Defendants

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
SARAH S. NORMAND
Assistant United States Attorneys

# CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................ 3

    I.   Procedural History ........................................................................................ 3

        A.   The Original FOIA Request and the CIA Report (19 Civ. 234)...................... 3

        B.   The ODNI Documents and the Second FOIA Request (20 Civ. 6625)............. 4

        C.   The March 24, 2021 Conference ................................................................ 7

ARGUMENT ............................................................................................................... 9

    I.   Legal Standards............................................................................................ 9

        A.   Standards of Review .................................................................................. 9

        B.   FOIA Exemptions 1 and 3 .......................................................................... 10

        C.   The Strict Test for Official Disclosure ........................................................ 12

    II.   The Information Withheld from the 2020 NICM Remains Properly Classified,
Statutorily Protected, or Both ............................................................................ 12

        A.   The ODNI Properly Withheld Classified Information
Pursuant to Exemption 1 ............................................................................ 13

        B.   The ODNI Properly Withheld Information Relating to
Intelligence Sources and Methods and ODNI Personnel Pursuant to
Exemption 3 and the National Security Act ................................................ 16

        C.   ODNI Has Released All Reasonably Segregable
Non-Exempt Information............................................................................. 19

    III.   The CIA Report Is Exempt from Disclosure in Full
Under Exemptions 1 and 3.................................................................................. 19

        A.   The CIA Report Is Classified and Protected by
the National Security Act............................................................................ 20

        B.   The CIA Report Contains No Reasonably Segregable, Non-Exempt
Information .................................................................................................. 22

CONCLUSION............................................................................................................. 26

# AUTHORITIES

Page(s)

Cases

*ACLU v. DoD,*
435 F. Supp. 3d 539 (S.D.N.Y. 2020)..................................................................... 19, 25

*ACLU v. DoD,*
628 F.3d 612 (D.C. Cir. 2011) ..................................................................................... 12

*ACLU v. DoD,*
901 F.3d 125 (2d Cir. 2018)....................................................................... 9, 10, 13, 20

*ACLU v. DOJ,*
210 F. Supp. 3d 467 (S.D.N.Y. 2016) ................................................................... 19, 25

*ACLU v. DOJ,*
681 F.3d 61 (2d Cir. 2012) .................................................................................. passim

*ACLU v. NSA,*
925 F.3d 576 (2d Cir. 2019)........................................................................................ 15

*Afshar v. Dep't of State,*
702 F.2d 1125 (D.C. Cir. 1983) .................................................................................. 24

*Carney v. DOJ,*
19 F.3d 807 (2d Cir. 1994)............................................................................................ 9

*CIA v. Sims,*
471 U.S. 159 (1985).................................................................................... 9, 10, 11, 17

*OSJI v. CIA,*
No. 19 Civ. 234 (PAE), --- F. Supp. 3d ----,
2020 WL 7231954 (S.D.N.Y. Dec. 8, 2020) ...................................................... passim

*DiBacco v. U.S. Army,*
795 F.3d 178 (D.C. Cir. 2015) .................................................................................... 17

*Dillon v. DOJ,*
102 F. Supp. 3d 272 (D.D.C. 2015) ...................................................................... 19, 25

*Elec. Privacy Info Ctr. v. NSA,*
678 F.3d 926 (D.C. Cir. 2012) .................................................................................... 11

Executive Order 13526,
75 Fed. Reg. 707 (Dec. 29, 2009) ................................................................ 10, 11, 13, 20

*Fitzgibbon v. CIA,*
911 F.2d 755 (D.C. Cir. 1990) ............................................................................... 11, 24

*Frugone v. CIA,*
169 F.3d 772 (D.C. Cir. 1999) .................................................................................... 23

*Hayden v. NSA,*
608 F.2d 1381 (D.C. Cir. 1979) .................................................................................. 11

*Murphy v. Exec. Office for U.S. Attorneys,*
789 F.3d 204 (D.C. Cir. 2015) .................................................................................... 11

*N.Y. Times Co. v. DOJ,*
872 F. Supp. 2d 309 (S.D.N.Y. 2012).......................................................................... 9

*N.Y. Times v. CIA*,
    965 F.3d 109 (2d Cir. 2020)................................................................. 12, 16, 22
*N.Y. Times v. DOJ*,
    756 F.3d 100 (2d Cir. 2014)..................................................................... 12, 15
*N.Y. Times v. DOJ*,
    806 F.3d 682 (2d Cir. 2015)................................................................. 18, 19, 24
*N.Y. Times v. FBI*,
    297 F. Supp. 3d 435 (S.D.N.Y. 2017)............................................................. 24
*Osen LLC v. U.S. Cent. Command*,
    969 F.3d 102 (2d Cir. 2020)................................................................... passim
*Privacy Info. Ctr. v. DOJ*,
    296 F. Supp. 3d 109 (D.D.C. 2017)............................................................... 17
*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009)................................................................... passim
*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009)................................................................. passim
*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007).................................................................. 12

Statutes

5 U.S.C. § 552 ......................................................................................... 4
5 U.S.C. § 552(a)(8)(i)(I) ........................................................................... 15
5 U.S.C. § 552(b) ..................................................................................... 22
5 U.S.C. § 552(b)(1) ............................................................................... 4, 13
50 U.S.C. § 3024(i)(1) ........................................................................... 13, 20
50 U.S.C. § 3024(m)(1) ........................................................................ 20, 21, 22
50 U.S.C. § 3036(b) ................................................................................. 26
50 U.S.C. § 3501 ..................................................................................... 21
P.L. 116-92 ............................................................................................ 8
Pub. L. No. 116-92 § 1277(a) ......................................................................... 7

Rules

Fed. R. Civ. P. 56(a) ................................................................................ 12

Defendants the Central Intelligence Agency ("CIA") and the Office of Director of National Intelligence ("ODNI," and together with CIA, the "agencies") respectfully submit this memorandum of law in support of their consolidated motions for summary judgment in these actions brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1]

## PRELIMINARY STATEMENT

The motions in these cases concern two classified documents related to the October 2018 killing of Jamal Khashoggi. In No. 20 Civ. 6625, the ODNI has withheld limited portions of a memorandum prepared in February 2020 (the "2020 NICM") by the National Intelligence Council, a component of ODNI. In No. 19 Civ. 234, the CIA has withheld in full a classified assessment prepared by the CIA in November 2018 (the "CIA Report"). The ODNI and CIA have proffered detailed declarations, including classified declarations submitted for the Court's *ex parte*, *in camera* review, in support of these withholdings. Those declarations logically and plausibly establish that all of the information withheld from the 2020 NICM and CIA Report is currently and properly classified or protected from disclosure by the National Security Act, and thus exempt from disclosure under FOIA exemptions 1, 3 or both. 5 U.S.C. § 552(b)(1), (3).

In particular, the agencies' declarations establish that the withheld information remains exempt from disclosure notwithstanding the February 2021 declassification and public release by the Director of National Intelligence ("DNI") of an assessment of the Saudi Government's role in the killing of Mr. Khashoggi (the "2021 Assessment"). The 2021 Assessment was created with the understanding that it would be declassified by the DNI and released to the public.

---

[1] Pursuant to the Court's April 28, 2021 Order, the agencies are filing a single, consolidated brief in support of the CIA's motion for summary judgment in 19 Civ. 234, and the ODNI's motion for summary judgment in 20 Civ. 6625.

Accordingly, it was deliberately crafted to avoid disclosing specific information about intelligence sources and methods. Although it provides an assessment of the Saudi government's role in the killing, and a high-level and declassified description of the factual basis for its conclusions, the 2021 Assessment does not reveal the specific intelligence on which the conclusions are based, much less the particular sources or methods by which that intelligence was acquired.

By contrast, the ODNI's limited withholdings from the 2020 NICM consist of particular pieces of intelligence, the sources and methods of collecting that intelligence, an identified gap in intelligence, and other statutorily protected information—all of which was intentionally excluded from the 2021 Assessment that was made public. Likewise, the high-level conclusions and factual information disclosed in the 2021 Assessment (or the redacted NICM) are not as specific as, and do not "match," the information in the CIA Report under the strict test for official disclosure set forth in *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009). The CIA Report discusses specific intelligence available to the CIA in November 2018, weeks after the killing, and the sources and methods from which that intelligence was derived. As described in detail in its classified declaration, the CIA has determined that release of any portion of the CIA Report would reveal undisclosed information relating to intelligence sources and methods that remains currently and properly classified and exempt from disclosure by statute.

The CIA's and ODNI's declarations are amply detailed, logical and plausible, and entitled to substantial deference. Accordingly, the Court should grant summary judgment dismissing the claims against the CIA and ODNI in these cases.

# BACKGROUND

## I.     Procedural History

### A.  The Original FOIA Request and the CIA Report (19 Civ. 234)

On December 4, 2018, plaintiff sent substantively identical FOIA requests to seven federal agencies, including CIA and ODNI. *See* Complaint ¶ 25 in No. 19 Civ. 234, Dkt. No. 1. The request sought "all records relating to the killing of U.S. resident Jamal Khashoggi, including but not limited to the CIA's findings on and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." *Id*. Both agencies conducted searches and produced hundreds of pages of records to plaintiff, including correspondence to and from each agency's press office. *See* No. 19 Civ. 234, Dkt. Nos. 112 ¶¶ 9-11 & 113 ¶¶ 16-20. Although the agencies acknowledged that they possessed additional responsive records, they otherwise asserted a "no number, no list" response to the FOIA request, because the volume and specific nature of those records would reveal exempt information pertaining to intelligence sources and methods that is both classified and protected from disclosure by statute. *See* Dkt. Nos. 112 ¶ 11 & 113 ¶¶ 22-24.

The parties cross-moved for summary judgment regarding the agencies' no number, no list responses. *See* Dkt. Nos. 111, 123. In an opinion and order issued on December 8, 2020, the Court upheld the no number, no list responses "in the main" under exemptions 1 and 3. Dkt. No. 176, *reported at OSJI v. CIA*, No. 19 Civ. 234 (PAE), --- F. Supp. 3d ----, 2020 WL 7231954 at *8 (S.D.N.Y. Dec. 8, 2020) ("*OSJI I*").

However, the Court held that certain statements by former President Trump and former CIA Director Haspel had officially acknowledged that the CIA or ODNI possessed a "CIA report" on the killing, and directed the agencies to produce a Vaughn index regarding such a

report.[2] *Id.* at *10-11. The CIA subsequently acknowledged that it had identified a CIA report from November 2018 containing an assessment relating to the killing of Jamal Khashoggi. Dkt. No. 194. In accordance with the Court's direction, the CIA produced a Vaughn index to plaintiff reflecting the CIA's determination that the CIA Report is exempt from disclosure in full under FOIA exemptions 1 and 3.[3] The ODNI advised plaintiff that it had not located a copy of the CIA Report among the materials identified in response to the FOIA request. *Id.*

### B. The ODNI Documents and the Second FOIA Request (20 Civ. 6625)

#### 1. The 2020 NICM

In the National Defense Authorization Act for Fiscal Year 2020 (the "2020 NDAA"), Congress directed the DNI to issue a report to the intelligence and foreign affairs committees of the House and Senate regarding the "advance knowledge and role" of any official of Saudi Arabia "over the directing, ordering, or tampering of evidence in the killing" of Khashoggi, and identifying all foreign individuals the DNI has high confidence were involved in the death of Khashoggi or impeded the impartial investigation of the killing of Khashoggi. Pub. L. No. 116-92 § 1277(a). The report was to be public, but could include a classified annex, and the statute explicitly noted the importance of protecting intelligence sources and methods. *Id.* § 1277(b). In addition, the 2020 NDAA required an unclassified report from the DNI identifying "those who carried out, participated in, ordered, or were otherwise complicit in or responsible for

---

[2] The Court also found that statements by the former President and other officials had officially acknowledged that the CIA or ODNI possessed a putative tape of the killing. The government moved for reconsideration of this aspect of the decision, and on March 9, 2021, the Court granted reconsideration in part and held that agencies need not produce a Vaughn index regarding whether or not they possess a tape of the killing. Dkt. No. 202.

[3] Although the Vaughn index produced to plaintiff also asserted exemption 5 as a basis for withholding the CIA Report, the government has determined not to assert exemption 5 as to that document.

the death of Khashoggi … consistent with protecting intelligence sources and methods." *Id.*

§ 5714.

In February 2020, the National Intelligence Council prepared a memorandum, the 2020

NICM, in compliance with the 2020 NDAA, that was sent to Congressional leaders and the

chairmen and ranking members of the intelligence and foreign affairs committees. Third Public

Declaration of Gregory Koch ("Third Koch Decl.") ¶¶ 4, 9 & n.2; *see* Koch Decl., Exh. A

(redacted 2020 NICM). The ODNI determined at that time that the 2020 NICM contained

classified and statutorily protected information and therefore could not be released publicly. *See*

*id.* ¶¶ 8-9.

On July 20, 2020, plaintiff sent a FOIA request to the ODNI, seeking "[r]eports

(including annexes) related to the killing of Jamal Khashoggi provided in 2020 by ODNI to

Congress pursuant to sections 1277 and 5714 of the National Defense Authorization Act for

Fiscal Year 2020 (P.L. 116-92) and the Intelligence Authorization Act." Third Koch Decl. ¶ 5. In

response to the FOIA request, the ODNI produced 26 responsive pages in whole or in part, but

withheld the 2020 NICM in full. *Id.* The parties cross-moved for summary judgment regarding

the ODNI's withholding of the 2020 NICM. No. 20 Civ. 6625, Dkt. Nos. 16-18, 26-28, 31-32.

**2. The 2021 Assessment**

Consistent with a commitment made in her confirmation hearing, in February 2021, the

DNI declassified and publicly released a report entitled "Assessing the Saudi Government's Role

in the Killing of Jamal Khashoggi." Third Koch Decl., Exh. B (2021 Assessment); *see*

https://www.dni.gov/files/ODNI/documents/assessments/Assessment-Saudi-Gov-Role-in-JK-

Death-20210226v2.pdf; Transcript of Hearing Before the Select Committee on Intelligence of

the United States Senate (January 19, 2021), 59:20-60:5, *available at*

https://www.intelligence.senate.gov/sites/default/files/hearings/t-ahaines-011921.pdf. The 2021

Assessment states, "We assess that Saudi Arabia's Crown Prince Muhammad bin Salman approved an operation in Istanbul, Turkey to capture or kill Saudi journalist Jamal Khashoggi." Third Koch Decl., Exh. B at 2 (executive summary). The 2021 Assessment also states, "We have high confidence that the following individuals participated in, ordered, or were otherwise complicit in or responsible for the death of Jamal Khashoggi on behalf of Muhammad bin Salman," followed by a list of eighteen individuals. *Id*. at 3. The 2021 Assessment provides a general, high-level description of the bases for its conclusions, while still protecting highly sensitive intelligence sources and methods. Third Koch Decl. ¶ 10. In particular, the text of the 2021 Assessment was crafted to intentionally avoid any mention of specific intelligence sources and methods, and to avoid the inclusion of any material that would remain classified following the DNI's declassification, consistent with Section 5714 of the 2020 NDAA's directive to provide an unclassified report that "protect[s] sources and methods." *Id.*

The 2021 Assessment is not simply a redacted version of the 2020 NICM. The documents were drafted at different times and for different audiences. The 2020 NICM is a classified document that was written specifically and solely as an intelligence product for congressional consumers of intelligence with access via the appropriate clearances or by virtue of their offices—it was not intended for public disclosure. *Id.* ¶¶ 8-9. By contrast, the 2021 Assessment was prepared with an eventual declassification and public release in mind and drafted accordingly. *Id.* ¶ 10. The drafters carefully selected information to be declassified and publicly released, while still protecting sensitive intelligence sources and methods. *Id*. The 2021 Assessment was designed to inform Congress and the public about the Intelligence Community's ("IC's") conclusions on the Khashoggi killing in a way that deliberately avoided revealing the underlying sources and methods of the information on which those conclusions were based, or

any other material that would remain classified following the DNI's declassification. *Id.* ¶¶ 10-11. Intelligence Community elements were extensively consulted during the drafting and prior to its declassification by the DNI. *Id.* ¶¶ 6, 10.

Following the public release of the 2021 Assessment, the ODNI promptly conducted a supplemental review of the 2020 NICM to determine whether it contained any information that had been declassified and released in the 2021 Assessment or was otherwise no longer exempt from disclosure under FOIA. *Id.* ¶ 7. As a result of this review, the ODNI voluntarily released to plaintiff a redacted version of the 2020 NICM that disclosed substantial portions of the document, but continued to withhold limited information that remains classified or statutorily protected because it would reveal intelligence sources and methods, or that would reveal statutorily protected information about ODNI personnel. *Id.* This information was intentionally excluded from the 2021 Assessment and remains properly classified and/or statutorily protected. *Id.*[4]

The CIA also reviewed the CIA Report in light of the declassification and public release of the 2021 Assessment and release of the redacted 2020 NICM to plaintiff. Supplemental Declaration of Vanna Blaine ("Suppl. Blaine Decl.") ¶ 14. In consultation with ODNI and the National Security Council, the CIA determined that the CIA Report remains classified and statutorily protected in full. *Id*. ¶¶ 5, 15-16.

### C. The March 24, 2021 Conference

At a conference on March 24, 2021, the Court entered a briefing schedule for renewed cross-motions for summary judgment in case No. 19 Civ. 234 with regard to the CIA's

---

[4] Following the release of the redacted 2020 NICM, ODNI withdrew its motion in No. 20 Civ. 6625, and the parties requested that the Court deny without prejudice ODNI's and plaintiff's pending cross-motions for summary judgment in light of that release. *See* Dkt. No. 50.

withholding in full of the CIA Report and in case No. 20 Civ. 6625 with regard to the ODNI's remaining withholdings from the 2020 NICM, and for plaintiff's anticipated motion for reconsideration of the Court's December 8, 2020 order upholding the CIA and ODNI's no number, no list responses to the FOIA request in case No. 19 Civ. 234. *See* Dkt. Nos. 204, 212 (19 Civ. 234), Dkt. Nos. 50, 54 (20 Civ. 6625); *see also* Dkt. Nos. 210 (19 Civ. 234) & 52 (20 Civ. 6625) (consolidating motions).

During the March 24 conference, the Court requested and received a commitment that government counsel would consult closely with the agencies to ensure that their withholdings are legally sustainable in light of the DNI's declassification and public release of the 2021 Assessment.[5] The government confirms that two Assistant United States Attorneys for the Southern District of New York, including a Deputy Chief of the Office's Civil Division, and a senior career official at the Federal Programs Branch of the Civil Division of the Department of Justice, have closely reviewed the 2020 NICM and CIA Report, as well as the classified declarations prepared by the agencies, and have extensively discussed the withholdings and applicable exemptions with the agencies. The undersigned counsel represent that, after substantial consultations with the ODNI and CIA, the agencies' withholdings from the 2020 NICM and CIA Report are fully sustainable and appropriate under the law, for the reasons explained in detail in the agencies' public and classified declarations and discussed below.

---

[5] The Court stated in relevant part, "[P]art of the process leading up to that first brief ought to be a close examination by your client, in consultation with you, as their courtroom lawyer, as to whether that is really sustainable. Because I expect I am going to be hearing from Open Society that it is not credible that something in the CIA report isn't—hasn't been overtaken by that very significant event. . . . I would like your commitment that that is something that you are going to roll up your sleeves with your client." Tr. 14:20-15:4. Government counsel committed to that process. Tr. 15:5-8.

**ARGUMENT**

**I.    Legal Standards**

**A.  Standards of Review**

FOIA disputes are generally resolved through motions for summary judgment. *See, e.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994).[6] Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, an agency meets its burden through declarations providing "reasonably detailed explanations" for any asserted exemptions. *Carney*, 19 F.3d at 812 (footnote omitted). Where the agency cannot make these showings on the public record without revealing exempt information, it may submit declarations *ex parte*, for the Court's *in camera* review. *ACLU v. DOJ*, 681 F.3d 61, 66 (2d Cir. 2012). Agency declarations are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (quotation marks omitted); *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009).

An agency's explanation for the application of exemptions is sufficient if it appears logical and plausible. *See ACLU v. DoD*, 901 F.3d 125, 133 (2d Cir. 2018) (as amended Aug. 22, 2018). In the area of national security, however, the agencies' declarations are entitled to "*substantial weight.*" *ACLU v. DOJ*, 681 F.3d at 69 (emphasis in original). This deference extends both to the intelligence agencies' determinations as to whether disclosure of particular information would reveal intelligence sources and methods protected by the National Security Act, 50 U.S.C. § 3024(i)(1), as amended, *see CIA v. Sims*, 471 U.S. 159, 179 (1985), and to their

---

[6] "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *N.Y. Times Co. v. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted). Accordingly, the agencies have not submitted 56.1 statements, nor did they submit such statements in connection with their prior motions in these cases.

9

predictive judgments regarding the potential harms that could reasonably be expected to flow from public disclosure, *see ACLU v. DoD*, 901 F.3d at 134; *ACLU v. DOJ*, 681 F.3d at 70; *Wilner*, 592 F.3d at 76. The principle that agency declarations are entitled to substantial deference is based on a judicial recognition that "it is the responsibility of the Director of Central Intelligence, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence gathering process." *Sims*, 471 U.S. at 179[7]; *see also Wilner*, 592 F.3d at 76 ("[r]ecognizing the relative competencies of the executive and judiciary, we believe that it is bad law and bad policy to second-guess the predictive judgments made by the government's intelligence agencies" about likely harm to national security from release of information).

## B. FOIA Exemptions 1 and 3

FOIA's exemption 1 permits the government to withhold records that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and [] in fact [are] properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current standards and procedures for classification are given by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13526").

Section 1.1 of the Executive Order lists four requirements for the classification of national security information: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [] under the control of the United States Government;" (3) the information must pertain to one or more of eight

---

[7] *Sims* involved a predecessor provision of the National Security Act that vested the responsibility to protect sources and methods from unauthorized disclosure in the CIA Director. 471 U.S. at 169. That statutory responsibility is now vested in the DNI, 50 U.S.C. § 3024(i)(1), and is also exercised by the CIA upon delegation from the DNI, *see* Suppl. Blaine Decl. ¶ 17.

protected categories of information listed in section 1.4 of the Executive Order, one of which is "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id*. § 1.4(c); and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13526 § 1.1(a)(1)-(4).

Exemption 3 "permits an agency to withhold records that are 'specifically exempted from disclosure by statute.'" *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)). Unlike most other FOIA exemptions, the applicability of exemption 3 does not depend on the "detailed factual contents of specific documents." *Wilner*, 592 F.3d at 72 (quotation marks omitted). Instead, the only questions are whether the government has identified a relevant withholding statute and whether the withheld material falls within the statute's coverage. *Id.*; *accord Sims*, 471 U.S. at 167; *ACLU v. DOJ*, 681 F.3d at 72-73. No showing of harm is necessary to withhold information under exemption 3 because in enacting the National Security Act, Congress determined that unauthorized disclosure of information relating to intelligence sources and methods would be harmful. *See Sims*, 471 U.S. at 170-73; *Elec. Privacy Info Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *Fitzgibbon v. CIA*, 911 F.2d 755, 764 (D.C. Cir. 1990); *Hayden v. NSA*, 608 F.2d 1381, 1390 (D.C. Cir. 1979).[8]

---

[8] The addition to FOIA in 2016 of the so-called "foreseeable harm" requirement, *see* 5 U.S.C. § 552(a)(8)(i)(I), does not alter the standard for withholding under exemption 3, because the amendment carved out exemption 3. *See id*. § 552(a)(8)(B) ("Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)."); *accord id*. § 552(a)(8)(A)(i) (an agency shall withhold information only if either (I) the foreseeable harm standard is met, or if (II) "disclosure is prohibited by law").

**C. The Strict Test for Official Disclosure**

The Second Circuit applies a "strict test" in assessing claims of official disclosure of

classified information. *Wilson*, 586 F.3d at 186. Under that test,

> [c]lassified information that a party seeks to obtain . . . is deemed to have been officially disclosed only if it (1) "[is] as specific as the information previously released," (2) "match[es] the information previously disclosed," and (3) was "made public through an official and documented disclosure."

*Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)). The Second Circuit recently

reiterated that the matching and specificity requirements of *Wilson* are "precise and strict," and

"even a substantial overlap between the requested information and previously disclosed

information is not enough to establish waiver." *Osen LLC v. U.S. Cent. Command*, 969 F.3d 102,

112 (2d Cir. 2020) (internal quotation marks omitted); *see also N.Y. Times v. CIA*, 965 F.3d 109,

116 (2d Cir. 2020). While the matching requirement does not require "absolute identity," *N.Y.*

*Times v. DOJ*, 756 F.3d 100, 120 (2d Cir. 2014), *opinion amended on denial of reh'g,* 758 F.3d

436 (2d Cir. 2014), *supplemented,* 762 F.3d 233 (2d Cir. 2014), a match cannot be found if there

are "substantive differences between the content of the released government documents and the

withheld information," *Osen*, 969 F.3d at 110 (quoting *ACLU v. DoD*, 628 F.3d 612, 620–21

(D.C. Cir. 2011)).

**II. The Information Withheld from the 2020 NICM Remains Properly Classified, Statutorily Protected, or Both**

In general, the withholdings from the 2020 NICM fall into the following categories:

(i) classification markings that would reveal particular intelligence sources and methods or

otherwise tend to disclose information relating to intelligence sources and methods; (ii) the

attribution footer at the bottom of the first page, indicating which agencies were consulted on the

2020 NICM, which would tend to reveal that the document contains information derived from

particular intelligence sources and methods; (iii) the classification block at the bottom of the first

page, which includes the employee ID number of the classifier, the sections from each of the relevant IC agencies' security classification guides, and the date on which the information may be declassified (which is denoted by reference to the type of intelligence used); (iv) specific undisclosed intelligence derived from particular sources and methods; and (v) intelligence gaps in a given area. Third Koch Decl. ¶ 20. In its public and classified declarations, the ODNI logically and plausibly explains why these categories of information remain currently and properly classified and therefore exempt from disclosure under exemption 1, protected from disclosure by the National Security Act and exemption 3, or both. The ODNI's expert judgments are entitled to substantial deference, *see ACLU v. DoD*, 901 F.3d at 134; *ACLU v. DOJ*, 681 F.3d at 70-71; *Wilner*, 592 F.3d at 76, and should be sustained.

### A. The ODNI Properly Withheld Classified Information Pursuant to Exemption 1

ODNI's declarant, Gregory M. Koch, possesses original classification authority, and has determined that the information withheld from the 2020 NICM pursuant to exemption 1 is currently and properly classified. *See* Third Koch Decl. ¶¶ 1, 13, 15. Mr. Koch avers that the requirements of Executive Order 13526 are met: the information withheld under exemption 1 was classified by an original classification authority; is owned by, or is under the control of, the United States government; pertains to intelligence sources and methods; and public release of this information could reasonably be expected to result in exceptionally grave damage to the national security. *Id.* ¶¶ 13-15, 23-24. The classified information withheld from the 2020 NICM would reveal particular and undisclosed information pertaining to intelligence sources and methods that was not disclosed in the 2021 Assessment or otherwise, and remains currently and properly classified. *Id.* ¶¶ 23-24.

After the DNI's declassification of certain information relating to the Khashoggi killing in the 2021 Assessment, ODNI conducted a supplemental review of the 2020 NICM and released

a redacted version that disclosed all information that is no longer classified or statutorily protected. *Id.* ¶ 7. For example, both the redacted 2020 NICM and 2021 Assessment reflect the IC's assessment that the Crown Prince approved or authorized the operation that led to Mr. Khashoggi's killing. 2020 NICM at 1 (Third Koch Decl., Exh. A); 2021 Assessment (Third Koch Decl., Exh. B) at 2, 3. Both documents also contain high-level discussion of factual information—such as the involvement of a close adviser, Saud al-Qahtani—that supported the IC's assessment. 2020 NICM at 1; 2021 Assessment at 3. This information was released in the redacted 2020 NICM. However, as noted above, the 2021 Assessment was intentionally crafted to avoid revealing the underlying sources and methods of the information on which those conclusions were based. Third Koch Decl. ¶¶ 6-7, 10-11. By contrast, the portions of the 2020 NICM withheld under exemption 1 contain undisclosed intelligence and related sources and methods, and the redactions protect information that was intentionally not included in the 2021 Assessment and remains classified. *Id.* ¶ 24. This includes specific (i) undisclosed intelligence derived from particular sources and methods; (ii) intelligence gaps in a given area; (iii) classification markings that would reveal particular intelligence sources and methods; (iv) and information about which agencies were consulted on the 2020 NICM and references to particular IC agencies' security classification guides, which would tend to reveal that the document contains information derived from particular intelligence sources and methods. *Id.* ¶ 20.

Disclosure of the information withheld in the 2020 NICM under exemption 1 could reasonably be expected to result in exceptionally grave damage to the national security. *Id.* ¶ 23. The redactions invoking exemption 1 concern particular and undisclosed information pertaining to intelligence sources and methods that form the basis for conclusions in the 2020 NICM, including particular pieces of intelligence and particular sources and methods of collection used

to obtain those pieces of intelligence. *Id.* Revealing the details protected by those redactions could disclose both the extent of, and gaps in, the IC's collection capabilities. *Id.* Such information could be used by foreign powers or adversaries to either take countermeasures against the IC's collection efforts, or exploit intelligence gaps. *Id.* Revealing the information withheld from the 2020 NICM under exemption 1 could also reasonably be expected to disclose the targets and capabilities of IC activities, and inform adversaries or targets of the degree to which the IC is aware of their operations or activities. *Id.* When adversaries or targets learn they are the targets of intelligence activities or collection, they can and do take steps to circumvent those activities or collection, frustrating the ability of the IC to maintain its activities or collection regarding those targets. *Id.* The classified ODNI declaration provides additional information and detail concerning both the nature of the withheld information and the harms that could reasonably be expected to flow from disclosure of the redacted portions of the 2020 NICM.

This information is properly protected by exemption 1. *See, e.g.*, *ACLU v. NSA*, 925 F.3d 576, 600-01 (2d Cir. 2019) (sustaining withholding of surveillance program documents concerning intelligence sources and methods properly classified and withheld to prevent disclosure of core intelligence activities); *N.Y. Times v. DOJ*, 756 F.3d 100 at 113-14, 119 (same for entire factual section of OLC memorandum addressing a potential lethal operation against Anwar al-Aulaqi). Indeed, this Court upheld the bulk of the CIA's and ODNI's no number, no list response under exemption 1 because the government had shown that disclosure "would give advantage to foreign intelligence services and other groups by giving them insight into what the United States' intelligence capabilities and interests are, or are not, which could enable adversaries to circumvent U.S. intelligence activities, and generally enhance its intelligence or

counterintelligence activities at the expense of the U.S. national security." *OSJI*, 2020 WL 7231954, at *8 (quoting government brief). The same harms would flow from disclosure of the classified information withheld from the 2020 NICM under exemption 1.

The ODNI also confirms that the redacted portions of the 2020 NICM withheld under exemption 1 remain properly classified notwithstanding any official disclosures regarding the Khashoggi killing, including the 2021 Assessment. Third Koch Decl. ¶ 24. The redacted portions of the 2020 NICM contain undisclosed information related to intelligence sources and methods that was not declassified or released in the 2021 Assessment (or otherwise officially disclosed). *Id.* ¶¶ 23- 24. For example, while the 2021 Assessment and redacted 2020 NICM contain similar conclusions about the IC's assessment of the Crown Prince's approval of the operation that led to the killing, the 2020 NICM includes some additional information—withheld here—that would shed light on the intelligence sources and methods that form the basis for the IC's conclusions. *See id.* ¶ 12. This difference is intentional: as explained above, the 2021 Assessment, which was created for public release, was carefully crafted to avoid disclosing specific information relating to intelligence sources and methods, whereas the 2020 NICM was created as a classified document and intended to be shared only with congressional leaders and select committee members of each house of Congress who have classified access via the appropriate clearances or by virtue of their office. *Id.* ¶¶ 9 & n.2, 10-12. For these reasons, the withheld portions of the 2020 NICM are more "specific" than, and do not "match," the 2021 Assessment. *Id.* ¶ 24; *see Osen*, 969 F.3d at 110-12; *N.Y. Times v. CIA*, 965 F.3d at 116-17; *Wilson*, 586 F.3d at 186.

**B. The ODNI Properly Withheld Information Relating to Intelligence Sources and Methods and ODNI Personnel Pursuant to Exemption 3 and the National Security Act**

ODNI has also withheld two types of information from the 2020 NICM pursuant to FOIA's exemption 3 because the information is protected from disclosure by the National

Security Act. The first type of information withheld under exemption 3, most of which is also subject to exemption 1 because it is classified, relates to intelligence sources and methods protected by Section 102A(i)(1) of the National Security Act, 50 U.S.C. § 3024(i)(1). The second is unclassified information relating to ODNI personnel protected by Section 102A(m)(1) of the National Security Act, 50 U.S.C. § 3024(m)(1).

Section 102A(i)(1) of the National Security Act of 1947, as amended, protects intelligence sources and methods from unauthorized disclosure. 50 U.S.C. § 3024(i)(1) (formerly codified at 50 U.S.C. § 403-1(i)(1)).[9] The National Security Act is an exempting statute within the meaning of exemption 3. *See, e.g.*, *ACLU v. DOJ*, 681 F.3d at 73 (citing cases); *Sims*, 471 U.S. at 167-68 (citing predecessor statute).

Here, the ODNI properly withheld the classified information in the 2020 NICM, as well as limited unclassified information, under Section 102A(i)(1) of the National Security Act and exemption 3. All of the classified information withheld under exemption 1 is also protected under exemption 3 because it would reveal information that relates to intelligence sources and methods protected by Section 102A(i)(1). Third Koch Decl. ¶¶ 15, 21; *see ACLU v. DOJ*, 681 F.3d at 73-74. The ODNI also properly withheld limited unclassified information from the 2020 NICM pursuant to exemption 3 that would disclose information relating to intelligence sources and methods. Third Koch Decl. ¶¶ 20-22. This information includes certain portion markings used at the beginning of paragraphs, as well as the declassification date, which is denoted by

---

[9] Specifically, the Act provides that the DNI "shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). Courts have recognized that the CIA Director and other members of the IC may exercise this authority pursuant to delegation and guidance from the DNI. *See DiBacco v. U.S. Army*, 795 F.3d 178, 197-99 (D.C. Cir. 2015); *see also Elec. Privacy Info. Ctr. v. DOJ*, 296 F. Supp. 3d 109, 121 (D.D.C. 2017) ("The DNI has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the 'Intelligence Community.'").

reference to the type of intelligence used. *Id.* ¶¶ 20-22. Mr. Koch's classified declaration provides additional information regarding why this information relates to intelligence sources and methods and therefore falls within the scope of Section 102A(i)(1). *See id.* ¶ 22.

Section 102A(m)(1) of the National Security Act, as amended, provides the DNI with authority to protect the "the organization, functions, names, official titles, salaries, or numbers of personnel employed" by ODNI. *See* 50 U.S.C. § 3024(m)(1) (providing the DNI the same authorities with regard to ODNI personnel that the CIA Director has with regard to CIA personnel under the CIA Act of 1949); Third Koch Decl. ¶ 19.[10] Just like the CIA Act to which it refers, Section 102A(m)(1) qualifies as a withholding statute under exemption 3. *Cf. N.Y. Times v. DOJ*, 806 F.3d 682, 684 n.1 (2d Cir. 2015) (recognizing that the analogous provision of the CIA Act is a withholding statute).

ODNI properly withheld the employee ID number of the ODNI classifier from the 2020 NICM under Section 102A(m)(1). Third Koch Decl. ¶¶ 19-21. This information relates to the name and function of ODNI personnel, *id.* ¶ 21, and therefore falls within the scope of Section 102A(m)(1) and is exempt from disclosure under exemption 3.

---

[10] The statute provides:

> In addition to the authorities under subsection (f)(3), the Director of National Intelligence may exercise with respect to the personnel of the Office of the Director of National Intelligence any authority of the Director of the Central Intelligence Agency with respect to the personnel of the Central Intelligence Agency under the Central Intelligence Agency Act of 1949 [50 U.S.C. § 3501 *et seq.*], and other applicable provisions of law, as of December 17, 2004, to the same extent, and subject to the same conditions and limitations, that the Director of the Central Intelligence Agency may exercise such authority with respect to personnel of the Central Intelligence Agency.

50 U.S.C. § 3024(m)(1).

### C. ODNI Has Released All Reasonably Segregable Non-Exempt Information

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b).

The ODNI has reviewed the 2020 NICM, line-by-line, and confirms that no non-exempt information may be segregated and released, beyond the substantial portions of the document that have been disclosed, without jeopardizing classified material and/or statutorily protected information. Third Koch Decl. ¶ 26. As logically and plausibly explained in the unclassified and classified ODNI declarations, "releasing any additional information in the redacted 2020 NICM would reveal classified and/or statutorily-protected information that is not disclosed in the 2021 Assessment, and remains exempt from disclosure under FOIA Exemptions 1 and/or 3." *Id.* That is sufficient to meet the agency's burden. *See ACLU v. DoD*, 435 F. Supp. 3d 539, 564-65 (S.D.N.Y. 2020) (crediting agency declaration that particular withheld passage contained no reasonably segregable non-exempt information, and noting that justification for withholding was logical and plausible); *ACLU v. DOJ*, 210 F. Supp. 3d 467, 485 (S.D.N.Y. 2016); *Dillon v. DOJ*, 102 F. Supp. 3d 272, 298 (D.D.C. 2015).

### III. The CIA Report Is Exempt from Disclosure in Full Under Exemptions 1 and 3

Although the CIA Report addresses the same subject matter as the 2021 Assessment and redacted 2020 NICM, it is a materially different document. It reflects the intelligence available (and not available) to the CIA as of November 2018, just weeks after Mr. Khashoggi's killing, and it discusses specific intelligence and the particular sources and methods from which it was derived. Suppl. Blaine Decl. ¶¶ 9-11, 15. Release of any portion of the CIA Report would reveal undisclosed information relating intelligence sources and methods, risking exceptionally grave damage to national security. *Id*. ¶¶ 9, 15-16. The CIA has provided detailed declarations that

logically and plausibly explain why the CIA Report is classified and protected by Section 102A(i)(1) of the National Security Act in its entirety, and therefore exempt from disclosure under exemptions 1 and 3. The CIA's expert judgments are entitled to substantial deference, *see ACLU v. DoD*, 901 F.3d at 134; *ACLU v. DOJ*, 681 F.3d at 70-71; *Wilner*, 592 F.3d at 76, and should be upheld.

### A. The CIA Report Is Classified and Protected by the National Security Act

The CIA's declarant, Vanna Blaine, who possesses original classification authority at the Top Secret level, avers that the CIA Report meets the requirements for classification pursuant to Executive Order 13526. *See* Suppl. Blaine Decl. ¶¶ 3, 6-9. The Report is owned by, and is under the control of, the United States government. *Id.* ¶ 8. The information was, and remains, properly classified at the Top Secret level. *Id*. The withheld information falls within one of the categories listed in Executive Order 13526 § 1.4—specifically, 1.4(c), "intelligence activities (including covert action), intelligence sources or methods." *Id.* ¶ 9. And revealing "the intelligence information in the CIA Report reasonably could be expected to cause exceptionally grave damage to the national security." *Id*. Ms. Blaine describes several such harms.

First, release of the CIA Report would "reveal details regarding the nature, volume, and timing of the intelligence information available to the CIA as of November 2018, less than two months after Mr. Khashoggi was killed." *Id.* ¶ 10. Disclosure would "reveal information about the extent of the CIA's clandestine intelligence capabilities, how quickly the Agency was able to mobilize those capabilities to collect or corroborate information, and potential gaps in the CIA's information and collection capabilities." *Id*. If "there is information in the [2021] Assessment that is absent from the CIA Report, for example, it could suggest that the Agency lacked certain capabilities in 2018 that it now possesses." *Id.* Or if "the information in the [2021] Assessment and CIA Report overlaps, it could suggest that the CIA maintained certain collection capabilities

as far back as 2018." *Id.* Disclosure of these categories of information "would enable our adversaries to enhance their intelligence activities against the United States and take countermeasures against us, thereby causing exceptionally grave harm to U.S. national security." *Id*.

Second, release of the CIA Report "would not only reveal specific intelligence information available to the CIA as of the time of the Report, but also the intelligence sources and methods used to collect that information and potential gaps" in U.S. collection capacity. *Id.* ¶ 11. Ms. Blaine explains how disclosure of intelligence sources can lead to disruption of intelligence activities, the loss of sources, and damage to national security. For example, when a source is an individual, exposure of the person's status as a source could lead to harassment, imprisonment, or death. *Id*. ¶ 12. "The loss of such a source and the critical intelligence that the source provides reasonably could be expected to cause exceptionally grave harm to U.S. national security." *Id*. Second, where a source is a foreign government or entity, disclosure of information without authorization "would constitute a serious breach of trust that would almost certainly impair a relationship important to U.S. national security." *Id*. ¶ 13. Such unauthorized disclosure could also damage the U.S. government's reputation and its ability to ensure confidentiality of sensitive information to other governments. *Id*. Damage to such relationships "reasonably could be expected to cause exceptionally grave harm to U.S. national security" as well. *Id*. Ms. Blaine's classified declaration provides additional information about the grave harms that could reasonably be expected to flow from disclosure of the CIA Report.

For these reasons, the CIA Report is properly classified and subject to exemption 1. Moreover, because the information it contains would reveal intelligence sources and methods

protected by Section 102A(i)(1) of the National Security Act, it is also subject to exemption 3. *Id.* ¶¶ 16-18.

**B.  The CIA Report Contains No Reasonably Segregable, Non-Exempt Information**

Ms. Blaine avers that she has reviewed the CIA Report, line-by-line, and determined that "no non-exempt portions of the Report can reasonably be segregated or released without jeopardizing information that is classified and statutorily protected." Suppl. Blaine Decl. ¶ 19. Ms. Blaine's classified declaration provides additional information regarding why it is not possible to segregate and release any non-exempt information from the CIA Report, including a detailed comparison of the contents of the CIA Report with those of the 2021 Assessment. *Id.* ¶¶ 14-15, 19. Although the CIA Report "addresses the same subject matter" as the ODNI documents, "the CIA Report contains a different level of specificity, including discussion of specific intelligence sources and methods, and other differences," and the ODNI disclosures do not satisfy the "strict and precise" specificity and matching requirements of the *Wilson* test. Suppl. Blaine Decl. ¶ 15; *see Osen*, 969 F.3d at 112; *N.Y. Times v. CIA*, 965 F.3d at 116; *Wilson*, 586 F.3d at 186.[11]

Preliminarily, the CIA does not contend that the ODNI's public release of the 2021 Assessment, and its subsequent release to plaintiff of the redacted 2020 NICM, do not meet the "official" prong of the *Wilson* test. While the CIA does not concede that all ODNI statements

---

[11] The CIA cannot describe the precise scope of or topics addressed in the CIA Report on the public record without revealing exempt information, Suppl. Blaine Decl. ¶ 15 n.2, and respectfully refers the Court to Ms. Blaine's classified declaration for a detailed comparison of the CIA Report and the 2021 Assessment.

would necessarily be binding on the CIA for purposes of the *Wilson* test,[12] this case presents a unique circumstance: the DNI has declassified certain information in the 2021 Assessment. That decision is binding on all IC components, including the CIA, with respect to the specific information that has been declassified.

Rather, as Ms. Blaine logically and plausibly explains in her classified and unclassified declarations, the information released in the 2021 Assessment and redacted 2020 NICM is not as specific as, and does not "match," the information withheld in the CIA Report within the meaning of the *Wilson* test. Suppl. Blaine Decl. ¶¶ 14-15. First, unlike the 2021 Assessment and redacted 2020 NICM, the CIA Report discusses specific intelligence information, and the sources and methods from which that information was derived. Suppl. Blaine Decl. ¶ 15. As the Second Circuit recently reiterated,

> prior disclosure of 'general descriptions' does not waive Exemption 1 for withheld documents that are more 'specific and particular' and that 'would reveal far more … than the previously released records. Thus, specificity concerns the quality or kind of information about a particular topic that has been produced to the public.

*Osen*, 969 F.3d at 110, *quoted in OSJI I*, 2020 WL 7231954, at *12.

Second, unlike the 2021 Assessment and redacted 2020 NICM, disclosure of the CIA Report would provide a snapshot of what the CIA knew in November 2018, just weeks after Mr. Khashoggi's killing. Suppl. Blaine Decl. ¶ 10 (disclosure would reveal "nature, volume, and

---

[12] The general rule is that "the law will not infer official disclosure of information classified by the CIA from … release of information by another agency, or even by Congress." *Wilson*, 586 F.3d at 186-87; *see also Frugone v. CIA*, 169 F.3d 772, 774-75 (D.C. Cir. 1999). Although the CIA Director is required by statute to "report to the Director of National Intelligence regarding the activities of the Central Intelligence Agency," 50 U.S.C. § 3036(b), CIA and ODNI are separate agencies with different authorities, and a rule by which ODNI statements are categorically binding on the CIA for purposes of the official disclosure analysis would be problematic. For example, ODNI often possesses information from multiple IC components on a given topic, and thus a public statement reflecting that ODNI had information on that topic would not reveal whether or not the CIA possessed the information.

timing of the intelligence information available to the CIA as of November 2018, less than two months after Mr. Khashoggi was killed"). This temporal difference is significant. Disclosure of the CIA Report, unlike the 2021 Assessment and redacted 2020 NICM, would reveal "how quickly the Agency was able to mobilize [its clandestine intelligence] capabilities to collect or corroborate information, and potential gaps in the CIA's information and collection capabilities." *Id*.

The Second Circuit has instructed that such "'differences in context' between previously disclosed records and requested records are relevant in determining whether the government has waived exemption under FOIA." *ACLU v. DoD*, 435 F. Supp. 3d at 556 (quoting *New York Times v. DOJ*, 806 F.3d at 686–87). The context in which information arises can itself disclose exempt information. *N.Y. Times v. FBI*, 297 F. Supp. 3d 435, 450 (S.D.N.Y. 2017). Thus, even where an agency has officially acknowledged a fact relating to a specific time (for example, the presence of a CIA station in a specific place), the same fact at a different time may remain protected. *Fitzgibbon*, 911 F.2d at 765-66; *accord Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983). Here, revealing precisely what the CIA knew and did not know in November 2018, weeks after the killing, is materially different from revealing what the IC has assessed years later. Thus, even if there were some overlap between the information in the CIA report and the 2021 Assessment and redacted 2020 NICM, that information would not meet the matching requirement of *Wilson*.

Nor are there any other official disclosures that would preclude the CIA from withholding the Report. This Court previously found that certain statements by former President Trump and former Director Haspel officially acknowledged the *existence* of the Report, but the Court expressly rejected plaintiff's argument that "the President's casual locution in [an]

interview [] clearly acknowledge[d] the conclusion in the CIA's written analysis." *OSJI I*, 2020 WL 7231954, at *12; *see also id.* (noting that "prior disclosure of 'general descriptions' does not waive Exemption 1 for withheld documents" (quoting *Osen*, 969 F.3d at 110)).

The CIA has logically and plausibly explained that the CIA Report contains no reasonably segregable non-exempt information, and therefore has met its burden under FOIA. *See ACLU v. DoD*, 435 F. Supp. 3d at 564-65; *ACLU v. DOJ*, 210 F. Supp. 3d at 485; *Dillon*, 102 F. Supp. 3d at 298.

**CONCLUSION**

For the foregoing reasons, and the reasons stated in the agencies' public and classified declarations, the agencies' motions for summary judgment should be granted and the claims against the CIA and ODNI in these actions should be dismissed.

Dated: May 10, 2021
      New York, New York

                                   Respectfully submitted,

                                   AUDREY STRAUSS
                                   United States Attorney
                                   Southern District of New York

By:    */s/ Peter Aronoff*
                                   PETER ARONOFF
                                   NATASHA W. TELEANU
                                   SARAH S. NORMAND
                                   Assistant United States Attorneys
                                   86 Chambers Street, Third Floor
                                   New York, New York 10007
                                   Telephone: (212) 637-2697/2528/2709
                                   Facsimile: (212) 637-2717
                                   E-mail: peter.aronoff@usdoj.gov
                                              natasha.teleanu@usdoj.gov
                                              sarah.normand@usdoj.gov