# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE,<br><br>    Plaintiff,<br><br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br><br>    Defendants. | No. 1:19-cv-00234 |
| OPEN SOCIETY JUSTICE INITIATIVE,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,<br><br>    Defendants. | No. 1:20-cv-6625 |

### DECLARATION OF GREGORY M. KOCH,
### CHIEF, INFORMATION MANAGEMENT OFFICE,
### OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE

I, Gregory M. Koch, declare as follows:

**I.     INTRODUCTION**

1.     I am the Chief of the Information Management Office ("IMO"), under the Chief Operating Officer for the Office of the Director of National Intelligence ("ODNI"). I have held this position since October 9, 2020. Before that, from December 20, 2019 to October 8, 2020, I was the Deputy Director and Acting Director of IMO (previously known as the Information

1

Management Division). Under a written delegation of authority by the Director of National Intelligence ("DNI") pursuant to Executive Order ("E.O.") 13526, *Classified National Security Information*, I hold original classification authority at the "TOP SECRET" level. *See* Exec. Order No. 13526 § 1.3(c), 75 Fed. Reg. 707, 708 (Dec. 29, 2009).

2. I understand this declaration is being filed in support of the ODNI's renewed motion for summary judgment in case number 20-cv-6625 regarding a redacted National Intelligence Council Memorandum ("NICM") dated 07 February 2020 (described below and attached to this declaration as Exhibit A), as well as a motion for summary judgment by the Central Intelligence Agency ("CIA") in case number 19-cv-234 regarding a November 2018 CIA report. Additionally, I respectfully refer the Court to my classified declaration, filed concurrently herewith, which contains specifics regarding the information contained in the 2020 NICM including the information withheld pursuant to Freedom of Information Act ("FOIA") Exemptions 1 and/or 3, and further explains the justifications for the redactions in that document. This declaration supplements and addresses factual developments since the prior declarations filed by the ODNI in these cases, all of which are incorporated herein by reference.[1]

## II. BACKGROUND

3. In December 2019, the President signed the National Defense Authorization Act for Fiscal Year 2020 ("NDAA"). *See* Pub. Law No. 116-92 (Dec. 20, 2019). Section 1277 of the NDAA provides:

> [T]he Director of National Intelligence shall submit to the appropriate congressional committees a report consisting of: (1) a determination and presentation of evidence with respect to the advance knowledge and role of any

---

[1] Specifically, my 12 February 2020 unclassified declaration in case number 19-cv-234, my 9 November 2020 unclassified declaration in case number 20-cv-6625, Patricia Gaviria's 9 December 2019 unclassified declaration in case number 19-cv-234, and those accompanying classified declarations.

2

current or former official of the Government of Saudi Arabia or any current or former senior Saudi political figure over the directing, ordering, or tampering of evidence in the killing of Washington Post columnist Jamal Khashoggi; and (2) a list of foreign persons that the Director of National Intelligence has high confidence: (A) were responsible for, or complicit in, ordering, controlling, or otherwise directing an act or acts contributing to or causing the death of Jamal Khashoggi; (B) knowingly and materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, an activity described in subparagraph (A); or (C) impeded the impartial investigation of the killing of Jamal Khashoggi, including through the tampering of evidence relating to the investigation.

*Id.* § 1277(a). The NDAA further provides that the report "shall be submitted in unclassified form, but may include a classified annex," and that the "name of each foreign person listed in the report . . . shall be included in the unclassified portion of the report unless the Director of National Intelligence determines that such disclosure would undermine United States intelligence sources and methods or threaten the national security interests of the United States." *Id.* § 1277(b). Finally, Section 5714 of the NDAA states that "the Director of National Intelligence shall submit to Congress a report on the death of Jamal Khashoggi, consistent with protecting sources and methods. Such report shall include identification of those who carried out, participated in, ordered, or were otherwise complicit in or responsible for the death of Jamal Khashoggi," and the report "shall be submitted in unclassified form." *Id.* § 5714.

4. On 20 February 2020, in compliance with the NDAA, the ODNI transmitted to Congress "a classified annex . . . with additional information" concerning the death of Khashoggi. That classified annex is referred to as the NICM, which is dated 7 February 2020. When submitting the 2020 NICM to Congress, the ODNI informed Congress that, "[c]onsistent with the protection of sources and methods, the Office of the Director of National Intelligence cannot provide additional information pursuant to sections 1277 and 5714 of the FY20 NDAA at the unclassified level."

5. By email dated 20 July 2020, Plaintiff, the Open Society Justice Initiative ("OSJI"), sent a Freedom of Information Act ("FOIA") request to the ODNI seeking the following records: "Reports (including annexes) related to the killing of Jamal Khashoggi provided in 2020 by ODNI to Congress pursuant to sections 1277 and 5714 of the National Defense Authorization Act for Fiscal Year 2020 (P.L. 116-92) and the Intelligence Authorization Act." As noted in my 9 November 2020 unclassified declaration in case number 20-cv-6625, the ODNI previously produced to the Plaintiff, on 8 October 2020, 26 responsive pages in whole or in part. At that time, the ODNI withheld in full the separate two-page 2020 NICM.

6. On 26 February 2021, the ODNI publicly released a separate assessment, dated 25 February 2021, regarding Khashoggi's killing entitled, "Assessing the Saudi Government's Role in the Killing of Jamal Khashoggi" ("2021 Assessment"). The DNI declassified the 2021 Assessment prior to its public release. A copy of the 2021 Assessment is attached to this declaration as Exhibit B. Relevant Intelligence Community ("IC") elements were extensively consulted about and provided substantive input into the drafting of the 2021 Assessment, prior to its declassification by the DNI.

7. Promptly after the public release of the 2021 Assessment, the ODNI conducted a supplemental review of the 2020 NICM to determine if it contained any information that had been declassified and released in the 2021 Assessment, or was otherwise no longer exempt from disclosure under FOIA. Based on that review, on 19 March 2021, the ODNI voluntarily produced to the Plaintiff (via e-mail from the Department of Justice to Plaintiff's counsel) a version of the 2020 NICM with limited redactions. The ODNI has since lifted one of those redactions, as explained in footnote 3 below. The remaining redactions in the 2020 NICM, made pursuant to FOIA Exemptions 1 and/or 3, remain necessary to protect classified and statutorily protected

4

information that would disclose intelligence sources and methods and/or ODNI personnel. Such information was intentionally excluded from the 2021 Assessment and remains properly classified and/or statutorily protected.

### III. THE 2020 NICM

8. As noted above, the ODNI prepared the 2020 NICM for the sole purpose of complying with a statutory mandate contained within the NDAA. As the document notes, the 2020 NICM is the (then-)classified annex of the ODNI's response to Section 1277 of the NDAA, as expressly permitted by Section 1277(b)(1). Sections 1277 and 5714 acknowledge the DNI's responsibility to protect intelligence sources and methods. Section 5714 of the NDAA expressly provides the report required by the statute shall be submitted "consistent with protecting sources and methods." Section 1277 contains a similar caveat, requiring a list of foreign persons described in the preceding section "unless the [DNI] determines that such disclosure would undermine United States intelligence sources and methods or threaten the national security interests of the United States." When ODNI prepared the 2020 NICM, it determined that the names could not be disclosed without undermining intelligence sources or methods, which is why those names were listed only in a classified annex.

9. The final 2020 NICM was originally provided to the appropriate members of Congress[2] on 20 February 2020, as is evidenced by the cover letters produced to the Plaintiff in October 2020.[3] The 2020 NICM was written specifically and solely as an intelligence product for

---

[2] Those members of Congress included the Speaker of the House, House Minority Leader, Senate Majority and Minority Leaders, Chair and Vice Chair of the Senate Select Committee on Intelligence, the Chair and Ranking Member of the House Permanent Select Committee on Intelligence, the Chair and Ranking Member of the Senate Committee on Foreign Relations, and the Chair and Ranking Member of the House Committee on Foreign Affairs.
[3] I respectfully refer the Court to my unclassified declaration of 9 November 2020 in case number 20-cv-06625 for further information on this production to Plaintiff. Then-DNI Ratcliffe's letter concluded at the time that, "[c]onsistent with the protection of sources and methods, the Office of the Director of National Intelligence cannot provide

5

congressional consumers of intelligence with access via the appropriate clearances or by virtue of their office. It was not intended for public disclosure. It was not until the ODNI declassified and released the 2021 Assessment that the 2020 NICM could be released to the public with certain redactions. Until the DNI exercised her authority to declassify certain information pursuant to section 3.1 of E.O. 13526, the 2020 NICM remained properly classified and protected by the National Security Act, as amended 50 U.S.C. §§ 3001-3234.

### IV.  THE 2021 ASSESSMENT

10. The 2021 Assessment was released on 26 February 2021. In contrast to the 2020 NICM, the 2021 Assessment was prepared with an eventual declassification and public release in mind and drafted accordingly, carefully selecting information to be declassified and publicly released, while still protecting highly sensitive intelligence sources and methods. In particular, the text of the 2021 Assessment was crafted to intentionally avoid any mention of intelligence sources and methods, and to avoid the inclusion of any material that would remain classified following the DNI's declassification. As noted, IC elements were extensively consulted during the drafting and prior to its declassification by the DNI, in accordance with Section 3.1(c) of E.O. 13526.

11. The 2021 Assessment stated the IC's conclusion that Saudi Crown Prince Muhammad bin Salman approved an operation in Istanbul to kill Khashoggi. *See* Ex. B. at 2 (executive summary). It also noted the IC's assessment that Muhammad bin Salman had "absolute control of the Kingdom's security and intelligence organizations," thus making it "highly unlikely that Saudi officials would have carried out" the operation without the approval of the Crown Prince. *Id.* at 3. It provided a high-level summary of certain factual material that supported the

---

additional information pursuant to sections 1277 and 5714 of the FY20 NDAA at the unclassified level. Nonetheless, we are transmitting under separate cover a classified annex that supplements this letter with additional information."

conclusions. *Id.* at 3. Finally, it conveyed the IC's high confidence that 18 particular individuals were involved in the operation, and identified those individuals by name. *Id.* at 3-4. The 2021 Assessment conveyed these conclusions to the public in a way that deliberately avoided revealing the underlying sources and methods of the information on which those conclusions were based.

12. In my experience, it is not unusual for a new DNI to review the withholdings of a predecessor and make an updated determination as to what information must be protected, and what information may be declassified and released. In this instance, it was determined that certain conclusions and assessments of the IC regarding the killing of Khashoggi could now be released to the public, while still protecting intelligence sources and methods. Following that decision and the declassification and release of the 2021 Assessment, the ODNI promptly and voluntarily reprocessed the 2020 NICM and provided it to the Plaintiff with limited redactions. Despite containing similar content, the 2020 NICM and the 2021 Assessment are not identical, and the NICM contains information relating to intelligence sources and methods, as well as ODNI personnel, that is not contained in the 2021 Assessment. The redacted information in the 2020 NICM remains classified and/or exempt from disclosure by statute, and accordingly must be protected.

## V.   APPLICABLE FOIA EXEMPTIONS
### A.   FOIA EXEMPTION 1

13. Exemption 1 provides that FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). For the reasons stated below, I have determined that the information withheld pursuant to Exemption 1 is currently and properly classified.

14. Section 1.1(a) of E.O. 13526 provides that information may be originally classified only if all of the following conditions are met: (1) an original classification authority is classifying the information; (2) the information is owned by, produced by or for, or is under the control of the U.S. Government; (3) the information falls within one or more of the categories of information listed in section 1.4 of E.O. 13526, including intelligence activities, sources or methods; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in some level of damage to the national security, and the original classification authority is able to identify or describe the damage.

15. The 2020 NICM was classified by an original classification authority, and I have determined that the information withheld from the 2020 NICM remains classified. The information is owned by and, or is under the control of, the U.S. Government. All of the information withheld from the 2020 NICM under Exemption 1 pertains to intelligence sources and methods. I have determined that its disclosure could reasonably be expected to cause damage to the national security.

      **B.**    **FOIA EXEMPTION 3**

16. FOIA Exemption 3 protects information that is specifically exempted from disclosure by statute. A statute qualifies as an exempting statute under Exemption 3 if it "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The information withheld from the 2020 NICM is protected by one of two withholding statutes: Section 102A(i)(1) or Section 102A(m)(1) of the National Security Act.

17. Section 102A(i)(1) of the National Security Act provides that "the [DNI] shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). This provision is a withholding statute under FOIA Exemption 3. The National Security Act applies in this case to preclude disclosure of all of the information withheld from the 2020 NICM except for "classified by" information, which is protected by Section 102A(m)(1) of the National Security Act as set forth below.

18. Although I understand the ODNI need not show disclosure would be harmful in order to protect intelligence sources and methods under FOIA Exemption 3 and Section 102A(i)(1) of the National Security Act, I note that the release of the information withheld under FOIA Exemptions 1 and 3 is reasonably likely to significantly impair the ODNI and IC's ability to carry out core missions of gathering, analyzing, and integrating intelligence, as set forth below.

19. Additionally, Section 102A(m)(1) of the National Security Act provides the DNI with authority to protect from disclosure "the organization, functions, names, official titles, salaries, or numbers of personnel employed by" the ODNI. 50 U.S.C. § 3024(m)(1) (incorporating 50 U.S.C. § 3507).[4] Section 102A(m)(1) of the National Security Act qualifies as a withholding statute under FOIA Exemption 3. I have determined that Section 102A(m)(1) applies here to protect the "classified by" information withheld from the 2020 NICM, because that information would relates to the name and function of ODNI personnel.

## VI.   REDACTIONS IN THE 2020 NICM

---

[4] Specifically, Section 102A(m)(1) states that "the [DNI] may exercise with respect to the personnel of the [ODNI] any authority of the Director of the Central Intelligence Agency with respect to the personnel of the [CIA] under the [CIA] Act of 1949 [50 U.S.C. 3501 *et seq.*], and other applicable provisions of law, as of December 17, 2004, to the same extent, and subject to the same conditions and limitations, that the Director of the Central Intelligence Agency may exercise such authority with respect to personnel of the [CIA]." 50 U.S.C. § 3024(m)(1). In turn, Section 6 of the CIA Act protects "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507.

20. In general, the withholdings from the 2020 NICM pursuant to Exemptions 1 and/or 3 fall into the following categories: (i) classification markings that would reveal particular intelligence sources and methods or otherwise tend to disclose information relating to intelligence sources and methods; (ii) the attribution footer at the bottom of the first page, indicating which agencies were consulted on the 2020 NICM, which would tend to reveal that the document contains information derived from particular intelligence sources and methods; (iii) the classification block at the bottom of the first page, which includes the employee ID number of the classifier, the sections from each of the relevant IC agencies' security classification guides, and the date on which the information may be declassified (which is denoted by reference to the type of intelligence used); (iv) specific undisclosed intelligence derived from particular sources and methods; and (v) intelligence gaps in a given area.

21. Most of the redactions in the 2020 NICM invoke both Exemptions 1 and 3, and concern classified information pertaining to intelligence sources and methods. As reflected on the redacted document attached hereto as Exhibit A, a few redactions made in the 2020 NICM invoke only FOIA Exemption 3. The redactions invoking only Exemption 3 consist of (i) certain portion markings and (ii) the "declassify by" date, which are withheld pursuant to Section 102A(i)(1) of the National Security Act, 50 U.S.C. § 3024(i)(1), because they relate to intelligence sources and methods, and (iii) the "classified by" identifier, which is withheld pursuant to Section 102A(m)(1) of the National Security Act, 50 U.S.C. § 3024(m), because it relates to the name and function of ODNI personnel.

22. Portion marks are used at the beginning of paragraphs to denote the classification level of a given paragraph and distinguish different classification levels within a document. They must comply with Section 1.6 of Executive Order 13526, Classified National Security Information,

and the IC Marking System Register and Manual. Classification portion markings often convey information about the manner in which the underlying information was obtained. Portion marks themselves may be either classified or unclassified. As explained in my classified declaration filed herewith, releasing the redacted portion marks in the 2020 NICM would disclose information that would tend to reveal information relating to intelligence sources or methods. I respectfully refer the Court to my accompanying classified declaration for a more detailed discussion of the portion marks redacted from the 2020 NICM pursuant to Exemption 1 and/or 3.[5] The "declassify by" information also reveals information relating to intelligence sources and methods because, as noted above, it is denoted by reference to the type of intelligence used. The "classified by" information relates to ODNI personnel because, as noted above, it consists of the employee ID number of the ODNI classifier.

23.    I have determined that disclosure of the information withheld from the 2020 NICM pursuant to FOIA Exemption 1 (as well as Exemption 3) could reasonably be expected to result in exceptionally grave damage to the national security, in several ways. This information would reveal particular and undisclosed information pertaining to intelligence sources and methods that form the basis for conclusions in the 2020 NICM, including particular pieces of intelligence and particular sources and methods of collection used to obtain those pieces of intelligence. Revealing the details protected by those redactions could disclose the extent of, and gaps in, the IC's collection capabilities. Such information could be used by foreign powers or adversaries to either take countermeasures against the IC's collection efforts, or exploit intelligence gaps. Revealing

---

[5] In the redacted 2020 NICM originally provided to the Plaintiff on 19 March 2021, the portion marking "U/FOUO" within the "Scope Note" on page one was redacted pursuant to FOIA Exemption 3. Upon further review, I have determined that redacting this particular portion mark is not necessary to protect intelligence sources and methods or other statutorily protected information. I have therefore replaced that particular redaction with a strike-through. A revised version of the redacted 2020 NICM reflecting this change is attached to this declaration as Exhibit A.

11

the information withheld from the 2020 NICM under Exemptions 1 and 3 could also reasonably be expected to disclose the targets and capabilities of IC activities, and inform adversaries or targets of the degree to which the IC is aware or not aware of their operations or activities. When adversaries or targets learn they are the targets of intelligence activities or collection, they can and do take steps to circumvent those activities or collection, frustrating the ability of the IC to maintain its activities or collection regarding those targets.

24. The redacted portions of the 2020 NICM remain properly classified and/or statutorily protected from disclosure notwithstanding any other official disclosures regarding the Khashoggi killing, including, in particular, the 2021 Assessment. As noted above and as described further in my accompanying classified declaration, the 2021 Assessment was deliberately drafted in such a way as to avoid revealing intelligence sources and methods or other statutorily protected information. The redactions in the 2020 NICM thus protect information that was intentionally not included in the 2021 Assessment. None of the information that remains redacted in the 2020 NICM was declassified and released by the DNI in connection with the release of the 2021 Assessment. The information released in the 2021 Assessment is not as specific as, and does not match, the information withheld from the 2020 NICM.

25. It should be noted that the redacted version of the 2020 NICM lists 17 names on the second page. By comparison, the 2021 Assessment lists one additional name, for a total of 18 names. That is because the IC identified an additional name in the intervening year since the 2020 NICM was drafted. No names were redacted in the "Individuals Involved in the Operation" section of the 2020 NICM. I am unable to affirmatively describe the information underneath those particular redactions in this declaration and respectfully refer the Court to the accompanying classified declaration for a more detailed discussion of those particular redactions.

## VII. SEGREGABILITY

26. ODNI conducted a page-by-page and line-by-line review of the 2020 NICM and released all reasonably segregable non-exempt information. All of the remaining withheld information is protected by FOIA Exemptions 1 and/or 3. ODNI has determined that no additional information can be released without jeopardizing classified material and/or statutorily-protected information (other than the portion mark discussed above in footnote 5). As explained in this declaration and the accompanying classified declaration, releasing any additional information in the redacted 2020 NICM would reveal classified and/or statutorily-protected information that is not disclosed in the 2021 Assessment, and remains exempt from disclosure under FOIA Exemptions 1 and/or 3.

## VIII. CONCLUSION

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of May 2021.

Gregory M. Koch
Chief, Information Management Office