## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OPEN SOCIETY JUSTICE INITIATIVE,<br><br>                  Plaintiff,<br><br>     v.<br><br>CENTRAL INTELLIGENCE AGENCY,<br>DEPARTMENT OF DEFENSE, NATIONAL<br>SECURITY AGENCY, and OFFICE OF THE<br>DIRECTOR OF NATIONAL INTELLIGENCE,<br><br>                  Defendants. | 19 Civ. 00234 (PAE) |
| OPEN SOCIETY JUSTICE INITIATIVE,<br><br>                  Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF JUSTICE and DEPARTMENT OF<br>STATE,<br><br>                  Defendants. | 19 Civ. 01329 (PAE) |

**PLAINTIFF OPEN SOCIETY JUSTICE INITIATIVE'S MEMORANDUM OF LAW IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF ITS MOTION FOR PARTIAL RECONSIDERATION**

Catherine Amirfar
Ashika Singh
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY  10022
Tel: 212-909-6000
camirfar@debevoise.com
asingh@debevoise.com

Amrit Singh
James A. Goldston
OPEN SOCIETY JUSTICE INITIATIVE
224 West 57th Street
New York, New York 10019
Tel: (212) 548-0600
*Counsel for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 3

I.    Factual Background ............................................................................. 3

      A.    The 2021 ODNI Assessment ........................................... 5

      B.    The 2020 NICM ............................................................... 6

      C.    The 2018 CIA Report ...................................................... 7

II.    Procedural Background ....................................................................... 9

      A.    Original FOIA Request, the Court's December 8 Ruling, and the CIA *Vaughn* Index ........................................................................ 9

      B.    March 24 Status Conference ........................................... 11

STANDARD OF REVIEW ..................................................................................... 11

I.    Summary Judgment ........................................................................... 11

II.    Motion for Reconsideration............................................................... 12

ARGUMENT ............................................................................................................ 13

I.    The Release of the 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgments That Require the Release of Any Specific Matching Information................................................................................. 14

      A.    The 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgements That Waive the Government's Ability to Withhold the 2018 CIA Report in Full ................................ 15

      B.    The 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgements That Compel Disclosure of Information Otherwise Withheld under Defendants' "No Number, No List" Response.......... 20

II.    Defendants Have Failed to Satisfy Their Burden to Justify the Withholding of the 2018 CIA Report in Full and Any Other Information About All Other Responsive Documents Pursuant to Either Exemptions 1 or 3 ...................................... 22

      A.    Defendant CIA's Refusal to Release Any Additional Information Regarding the 2018 CIA Report Is Not Logical or Plausible Under Either Exemption 1 or Exemption 3 ............................................. 25

B.   Defendants' Maintenance of Their "No Number, No List" Response with Regard to All Other Responsive Information Is Not Logical or Plausible, Especially in Light of the Higher Standard Applicable to "No Number, No List" Responses ................................................................................ 31

III.   CONCLUSION ........................................................................................ 34

## TABLE OF AUTHORITIES

CASES

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013)................................................................33

*ACLU v. FBI*, No. 11cv7562, 2015 WL 1566775 (S.D.N.Y. Mar. 31, 2015) ...............................33

*ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD I*"), 628 F.3d 612 (D.C. Cir. 2011).................14, 15

*ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD II*"), 901 F.3d 125 (2d Cir. 2018) ........................23

*ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD III*"), 492 F. Supp. 3d 250  (S.D.N.Y. 2020) ................................................................3, 14, 22, 24, 25, 30, 32, 33

*ACLU v. U.S. Dep't of Justice*, 210 F. Supp. 3d 467 (S.D.N.Y. 2016) ........................................12

*Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274 (2d Cir. 2009)............................................12

*Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 601 F.3d 143 (2d Cir. 2010) ............12

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ..........................................23, 30

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807 (2d Cir. 1994)..................................................22, 23

*Church of Scientology, Inc. v. Turner*, 662 F.2d 784 (D.C. Cir. 1980) ........................................29

*Elec. Privacy Info. Ctr. v. ODNI*, 982 F. Supp. 2d 21 (D.D.C. 2013) ....................................19, 20

*FBI v. Abramson*, 456 U.S. 615 (1982) .........................................................................................30

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) .......................................................................18

*Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016).........................................................3, 14, 22, 25, 32

*Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824 (D.C. Cir. 1979) .........23, 29

*Halpern v. FBI*, 181 F.3d 279 (2d Cir. 1999) ...............................................................................30

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381 (D.C. Cir. 1979)....................23, 24

*Henry v. Miller*, No. 11 Civ. 1273 (PAE) (SLC), 2020 WL 2132625 (S.D.N.Y. May 5, 2020) ................................................................................................................13, 31

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .............................................................23

*Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81 (2d. Cir 1991)............................19, 21

*Judicial Watch, Inc. v. U.S. Dep't of Army*, 466 F. Supp. 2d 112 (D.D.C. 2006) ........................13

*Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937 (D.C. Cir. 2013) ...................................24

*Lowinger v. Morgan Stanley & Co.*, 43 F. Supp. 3d 369 (S.D.N.Y. 2014) ...........................13, 31

*Mays v. Drug Enf't Agency*, 234 F.3d 1324 (D.C. Cir. 2000) .......................................................20

*Miller v. Casey*, 730 F.2d 773 (D.C. Cir. 1984) ..........................................................................12

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978). ..........................................................2

*N.Y. Times v. CIA*, 965 F.3d 109 (2d Cir. 2020) ..........................................................................15

*N. Y. Times v. U.S. Dep't of Justice*, 806 F.3d 682 (2d Cir. 2015) .................................................18

*Osen LLC v. U. S. Cent. Command*, 969 F.3d 102 (2d. Cir. 2020) ...................................14, 15, 16

*Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240 (D.D.C. 2020) .........................................13

*Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100 (D.D.C. 2017) .........................................29

*Singh v. George Washington Univ.*, 383 F. Supp. 2d 99 (D.D.C. 2005) .......................................13

*Stahl v. U.S. Dep't of Justice*, No. 19-cv-4142 (BMC), 2021 WL 1163154 (E.D.N.Y.
    Mar. 26, 2021).........................................................................................................................20

*Sussman v. U.S. Dep't of Justice*, No. 03-cv-3618 (DRH) (ETB), 2006 WL 2850608
    (E.D.N.Y. Sept. 30, 2006)........................................................................................................20

*U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ..................12

*Valfells v. CIA*, 717 F. Supp. 2d 110 (D.D.C. 2010)......................................................................19

*Weissman v. CIA*, 565 F.2d 692 (D.C. Cir. 1977).................................................................21, 22

*Wilner v. Nat'l Sec. Agency*, 592 F.3d 60 (2d Cir. 2009) .................................................12, 23, 24

*Wilson v. CIA*, 586 F.3d 171 (2d. Cir. 2009) ..........................................................................2, 14

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ...............................................................................14

## STATUTES & RULES

5 U.S.C. § 552....................................................................................................1, 12, 23, 24, 30

50 U.S.C. § 3024(i)(1) ....................................................................................................................24

50 U.S.C. § 3027(d) .......................................................................................................................32

Local Civil Rule 6.3 ................................................................................1, 12, 13

Pub. L. No. 116-92, 133 Stat. 1198, §§ 1277, 5714 ...................................5, 6

Fed. R. Civ. P. 56(a), 59(e) and 60(b) ....................................................1, 12, 13

## OTHER AUTHORITIES

117th Cong. 54 (2021) (additional prehearing statement of Avril D. Haines, President
      Biden's nominee for Director of National Intelligence),
      https://www.intelligence.senate.gov/sites/default/files/documents/aphq-ahaines-
      011921.pdf. ............................................................................................................5

117th Cong. 59:20-60:05 (2021) (statement of Avril D. Haines, President Biden's
      nominee for Director of National Intelligence),
      https://www.intelligence.senate.gov/sites/default/files/hearings/t-ahaines-011921.pdf............5

David D. Kirkpatrick et al., *The Jamal Khashoggi Case: Suspects Had Ties to Saudi
      Crown Prince*, N.Y. TIMES (Oct. 16, 2018) ............................................28

David E. Sanger, *Biden Won't Penalize Saudi Crown Prince Over Khashoggi's Killing,
      Fearing Relations Breach*, N.Y. TIMES (Feb. 26, 2021)........................2

Executive Order 13526 .......................................................................23, 24

*How the Man Behind Khashoggi Murder Ran the Killing via Skype*, REUTERS (Oct. 23,
      2018 8:13 AM)..........................................................................................28

Interview by Robert Costa of Michael Pence, U.S. Vice President, Washington Post's
      Space Summit (Oct. 23, 2018)...................................................................4

*Jamal Khashoggi: Who's Who in Alleged Saudi 'Hit Squad,'* BBC NEWS (Oct. 19, 2018) ........28

Kate Sullivan et al., *Senate Dem on Armed Services Panel: Trump Lying about CIA
      report on Khashoggi*, CNN (Nov. 23, 2018) ...........................................9

Margherita Stancati & Summer Said, *Saudi Arabian Arrest Wave Shows Crown Prince's
      Bid to Control Change*, WALL ST. J. (June 5, 2018, 6:14 PM)................28

Mary Papenfuss, *Trump Lied When He Said CIA Didn't Link Saudi Prince to Kashoggi
      Killing: Senator Jack Reed*, HUFFPOST (Nov. 23, 2018, 9:36 PM)..........9

ODNI, Organizational Chart.......................................................................33

ODNI, Press Release (Feb. 26, 2021) .........................................................6

ODNI, "Who We Are"...................................................................................21

Rodney Dixon, *Opinion: The World Can No Longer Ignore Saudi Arabia's Human Rights Abuses*, GUARDIAN (Oct. 15, 2018 10:49 AM)..............................................28

*Saudi Clerics Detained In Apparent Bid to Silence Dissent*, REUTERS (Sept. 10, 2017, 6:36 PM) ............................................................................................................28

Shane Harris et al., *CIA Concludes Saudi Crown Prince Ordered Jamal Khashoggi's Assassination*, WASH. POST (Nov. 16, 2018)........................................................27

Warren P. Strobel, *CIA Intercepts Underpin Assessment Saudi Crown Prince Targeted Khashoggi*, WALL ST. J., Dec. 1, 2018, https://www.wsj.com/articles/cia-intercepts-underpin-assessment-saudi-crown-prince-targeted-khashoggi-1543640460 ...................17, 18

White House, *Remarks by President Trump in Thanksgiving Teleconference with Members of the Military* (Nov. 22, 2018) ....................................................8, 9, 17

*Worldwide Threat Assessment of the U.S. Intelligence Community, Hearing Before the S. Select Comm. on Intel.*, 116th Cong. (2019), https://www.intelligence.senate.gov/hearings/open-hearing-worldwide-threats#..............8, 16

Plaintiff, the Open Society Justice Initiative ("OSJI"), respectfully submits this memorandum of law in support of its cross-motion for summary judgment and in opposition to the motion for summary judgment by Defendants the Central Intelligence Agency ("CIA") and the Office of the Director of National Intelligence ("ODNI"), as well as in support of its motion for partial reconsideration of the Court's December 8, 2020 Opinion and Order (the "December 8 Order"), Case No. 1:19-cv-00234-PAE, ECF No. 176, pursuant to Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e) and 60(b), in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

The motions at hand represent the latest step in OSJI's ongoing efforts to maximize accountability for the murder of Mr. Jamal Khashoggi, a Saudi national, *Washington Post* columnist, and U.S. resident who was vocally critical of the Saudi Government and Saudi Crown Prince Mohammed bin Salman ("MBS").  On February 26, 2021, ODNI released a declassified intelligence assessment affirming that MBS approved the operation "to capture or kill" Mr. Khashoggi that resulted in his murder.[1]  The very same day, media reports confirmed that the Crown Prince would incur no penalty for this heinous act; while the Biden Administration levied additional sanctions on some lower level Saudi officials, the Crown Prince himself remained

---

[1]     Singh Decl., June 7, 2021, Case No. 1:19-cv-00234-PAE, Ex. 1 (OFFICE OF THE DIR. OF NAT'L. INTELLIGENCE (ODNI), ASSESSING THE SAUDI GOVERNMENT'S ROLE IN THE KILLING OF JAMAL KHASHOGGI (Feb. 11, 2021), https://www.dni.gov/files/ODNI/documents/assessments/Assessment-Saudi-Gov-Role-in-JK-Death-20210226v2.pdf [hereinafter 2021 ODNI Assessment]).

unscathed.[2]  To add insult to injury, Defendants continue to withhold critical information regarding the circumstances of the murder that they no longer have any basis to withhold as a result of the information ODNI declassified and released earlier this year.

The Government's continued refusal to disclose this information has stymied OSJI's efforts to promote accountability via transparency, in keeping with the "basic purpose of FOIA . . . to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Defendants must be held to account to honor both the letter and the spirit of FOIA by releasing the additional information relating to Mr. Khashoggi's murder that OSJI has requested and that it is required under FOIA to release, rather than continuing to withhold in full a 2018 CIA report on the murder and every single other piece of information about every single other record responsive to OSJI's request. It must do so *first*, because the information declassified earlier this year by ODNI qualifies as an official disclosure, as the Government itself concedes,[3] and therefore requires Defendants to release any other "specific," "matching" information in their possession.  *Wilson v. CIA*, 586 F.3d 171, 186 (2d. Cir. 2009).

*Second*, even if the "official acknowledgment" test is not met in full, the Government has failed to meet its burden to withhold all remaining responsive information under FOIA Exemptions 1 and 3.  The information declassified by ODNI constitutes new evidence that "shifts the factual groundwork" upon which the Court must evaluate Defendants' justifications

---

[2]    David E. Sanger, *Biden Won't Penalize Saudi Crown Prince Over Khashoggi's Killing, Fearing Relations Breach*, N.Y. TIMES (Feb. 26, 2021), https://www.nytimes.com/2021/02/26/us/politics/biden-mbs-khashoggi.html.

[3]    Mem. Law Supp. Consolidated Mot. CIA & ODNI Summ. J. at 22, May 10, 2021, Case No. 1:20-cv-06625-PAE, ECF No. 56 ("Gov't Mem.").

for their withholdings, precluding a grant of summary judgment to Defendants and warranting reconsideration of the Court's December 8 Order to the extent that it upheld the remainder of Defendants' "no number, no list" response.  *See Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016); *ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD III*"), 492 F. Supp. 3d 250, 267 (S.D.N.Y. 2020). At a minimum, the Court should order *in camera* review of the 2018 CIA report and a classified *Vaughn* index of the remaining responsive material, in order to assess whether any additional information may be segregated and disclosed.  OSJI therefore respectfully requests that the Court grant its motion for partial reconsideration of the December 8 Order and its cross-motion for summary judgment, and deny Defendants' motion.

## **BACKGROUND**

### I.    **Factual Background**

Mr. Khashoggi, a Saudi national, a *Washington Post* columnist, and a U.S. resident who was vocally critical of the Saudi Government and Crown Prince Mohammed bin Salman ("MBS"), disappeared on October 2, 2018 after entering the Saudi consulate in Istanbul.  On October 19, 2018, the Saudi Government finally admitted that Mr. Khashoggi had been killed by Saudi officials inside the consulate.

The U.S. Government has acknowledged a coordinated and intensive effort by the U.S. Intelligence Community ("IC") to investigate Mr. Khashoggi's murder.  Shortly after Mr. Khashoggi's death was confirmed in October 2018, Vice President Mike Pence said during an interview: "[T]he Director of the CIA is there, in Turkey now, reviewing the evidence…. President Trump has made it very clear that the full resources of our intelligence community, working with intelligence officials in Turkey, in our interactions with Saudi Arabia, and also

with other countries around the world is going to follow the facts, and then decisions will be made."[4]

Based on declassified documents and official acknowledgements by former President Trump and other administration officials, OSJI is aware of at least three written assessments produced by IC components with respect to the Saudi Government operation that killed Mr. Khashoggi.  In chronological order of their disclosure, the assessments are: (*1*) an ODNI assessment dated February 11, 2021 and disclosed with minor redactions on February 26, 2021 (the "2021 ODNI Assessment")[5]; (*2*) a National Intelligence Council Memorandum dated February 7, 2020 (the "2020 NICM")[6], which was released to OSJI in redacted form on March 19, 2021; and (*3*) a CIA report dated November 2018, the existence of which was confirmed by Defendant CIA in a *Vaughn* index in March 2021 (the "2018 CIA Report") but the contents of which the CIA is still withholding in their entirety.[7]  While these are three separate documents, official acknowledgments and other publicly available information suggest there is substantial overlap between all three—each of these documents contain information about the factual circumstances of Mr. Khashoggi's murder as well as conclusions about the responsibility that the Crown Prince and the Saudi Government bear for the murder.

---

[4]     Interview by Robert Costa of Michael Pence, U.S. Vice President, Washington Post's Space Summit (Oct. 23, 2018), available at  https://trumpwhitehouse.archives.gov/briefings-statements/interview-vice-president-pence-robert-costa-washington-posts-space-summit-transformers-space/.

[5]     Singh Decl., Ex. 1.

[6]     Singh Decl., Ex. 3 (OFFICE OF THE DIR. OF NAT'L. INTELLIGENCE (ODNI), MEMORANDUM – SAUDI ARABIA: CROWN PRINCE PROBABLY AUTHORIZED KHASHOGGI OPERATION 1 (Feb. 7, 2020) [hereinafter 2020 NICM]).

[7]     Singh Decl., Ex. 4 (CIA Vaughn Index regarding "2018 CIA Report" (March 10, 2021)).

A.      **The 2021 ODNI Assessment**

During her confirmation hearing in January 2021, incoming Director of National

Intelligence ("DNI") Avril D. Haines was asked whether she would commit to producing an

unclassified report regarding responsibility for Mr. Khashoggi's murder,[8] as Congress had

mandated under the 2020 National Defense Authorization Act ("2020 NDAA").[9]  DNI Haines

responded, "Yes, Senator.  I absolutely will follow the law."[10]  On February 26, 2021, ODNI

released the 2021 ODNI Assessment.  This assessment concludes that MBS approved the

operation to kill Mr. Khashoggi, finding that it is "highly unlikely that Saudi officials would

have carried out an operation of this nature without [MBS's] authorization."  Singh Decl., Ex. 1

at 2.  It provides the high-level rationale behind this conclusion and further provides a list of

---

[8]     *Open Hearing: On the Nomination of Avril D. Haines to Be Director of National Intelligence Before the S. Comm. on Intelligence*, 117th Cong. 59:20-60:05 (2021), https://www.intelligence.senate.gov/sites/default/files/hearings/t-ahaines-011921.pdf; *Additional Prehearing Questions for Avril D. Haines Upon Her Nomination to Be Director of National Intelligence Before the S. Comm. on Intelligence*, 117th Cong. 54 (2021), https://www.intelligence.senate.gov/sites/default/files/documents/aphq-ahaines-011921.pdf.

[9]     Section 1277 of the NDAA required the DNI to submit to appropriate congressional committees a report in unclassified form (which could include a classified annex) "consisting of: (1) a determination and presentation of evidence with respect to the advance knowledge and role of any current or former official of the Government of Saudi Arabia or any current or former senior Saudi political figure over the directing, ordering, or tampering of evidence in the killing of Washington Post columnist Jamal Khashoggi; and  (2) a list of foreign persons that the Director of National Intelligence has high confidence—(A) were responsible for, or complicit in, ordering, controlling, or otherwise directing an act or acts contributing to or causing the death of Jamal Khashoggi; (B) knowingly and materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, an activity described in subparagraph (A); or (C) impeded the impartial investigation of the killing of Jamal Khashoggi, including through the tampering of evidence relating to the investigation." Section 5714 of the NDAA required the DNI to submit to Congress a report, in unclassified form, on the death of Jamal Khashoggi, that included "identification of those who carried out, participated in, ordered, or were otherwise complicit in or responsible for the death of Jamal Khashoggi." National Defense Authorization Act for Fiscal Year 2020 (NDAA), Pub. L. No. 116-92, 133 Stat. 1198, §§ 1277, 5714.

[10]    *Open Hearing: On the Nomination of Avril D. Haines to Be Director of National Intelligence Before the S. Comm. on Intelligence*, 117th Cong. 59:20-60:05 (2021), https://www.intelligence.senate.gov/sites/default/files/hearings/t-ahaines-011921.pdf; *Additional Prehearing Questions for Avril D. Haines Upon Her Nomination to Be Director of National Intelligence Before the S. Comm. on Intelligence*, 117th Cong. 54 (2021), https://www.intelligence.senate.gov/sites/default/files/documents/aphq-ahaines-011921.pdf.

individuals who "participated in, ordered, or were otherwise complicit" in the operation.  Singh Decl., Ex. 1 at 3.

Notably, the 2021 ODNI Assessment is not the same document as the classified memorandum that Defendant ODNI initially produced to Congress in February 2020 pursuant to the same 2020 NDAA requirement, which was the subject of OSJI's 2020 FOIA request to ODNI.  *See* Compl. Inj. Relief, Aug. 19, 2020, Case No. 1:20-cv-06625, ECF No. 1.  Rather, it is a separate assessment that ODNI has stated was "declassified to the greatest extent possible" and subsequently released publicly on ODNI's website.[11]

### B.      The 2020 NICM

In enacting the 2020 NDAA in December 2019, Congress included two provisions requiring the DNI to provide to Congress unclassified reports on the circumstances surrounding the killing of Khashoggi and those responsible.[12]  According to ODNI, in February 2020, the National Intelligence Council ("NIC") prepared a memorandum, the 2020 NICM, which was apparently intended to comply with these requirements of the 2020 NDAA.  Mem. Law Supp. Consolidated Mot. CIA & ODNI Summ. J. at 5, May 10, 2021, Case No. 1:20-cv-06625-PAE, ECF No. 56 ("Gov't Mem.").  While the 2020 NICM was sent to Congressional leaders, ODNI maintained that it remained classified and statutorily protected from disclosure and that it would therefore need to be withheld in its entirety from the public.[13]

---

[11]     Press Release, ODNI (Feb. 26, 2021), https://www.dni.gov/index.php/newsroom/press-releases/press-releases-2021/item/2187-odni-releases-assessment-on-the-saudi-government-s-role-in-killing-of-jamal-khashoggi.

[12]     National Defense Authorization Act for Fiscal Year 2020, Pub. L. No. 116-92, 113 Stat. 1198, §§ 1277, 5714; *see supra* note 99.

[13]     *See, e.g.,* Mem. Supp. ODNI's Mot. Summ. J., Nov. 9, 2020, Case No. 1:20-cv-06625-PAE, ECF No. 18.

In light of the 2021 ODNI Assessment disclosure, however, ODNI reprocessed and provided to OSJI the 2020 NICM in redacted form on March 19, 2021.  The unredacted portions of the 2020 NICM are substantively similar to the 2021 ODNI Assessment.  The 2020 NICM concludes that the Crown Prince "probably authorized the operation" to kill Mr. Khashoggi, and further provides both the high-level rationale for that conclusion and a list of individuals who were involved in the killing.  Singh Decl., Ex. 3 at 1.  However, the 2020 NICM and the 2021 ODNI Assessment contain one discrepancy between the respective lists of named perpetrators.[14] The Government has also represented that the 2020 NICM contains additional information that is obscured by the redactions in the version provided to OSJI, which was intentionally excluded from the 2021 ODNI Assessment because it pertains to statutorily protected information.  *See* Singh Decl., Ex. 3; Gov't Mem. at 2.

### C.    The 2018 CIA Report

The third assessment—and a subject of OSJI's present challenge—is the 2018 CIA Report on Mr. Khashoggi's killing.  Defendant CIA acknowledged on March 10, 2021 in a Court-ordered *Vaughn* index that the agency was in possession of a three-page "CIA assessment relating to the killing of Jamal Khashoggi," dated November 2018, but indicated that the assessment was being withheld in full under FOIA Exemptions 1, 3, and 5.  Singh Decl., Ex. 4.

Contemporaneous official disclosures regarding the contents of the 2018 CIA Report, as well as public statements by Senators who had reviewed the Report, indicate that at least some of the Report's contents match the information and analysis contained within the 2021 ODNI Assessment and 2020 NICM.  During a January 29, 2019 Senate Select Committee on

---

[14]    One individual, Ahmed Zayed Asiri, is named in the redacted 2021 ODNI Assessment but does not appear in the 2020 NICM. *See* Singh Decl., Exs. 1, 3.

Intelligence hearing, then-CIA Director Gina Haspel provided additional details of the CIA's

investigation into Mr. Khashoggi's murder, stating, "During the fall months, we spent a

significant amount of time briefing and providing written products on our assessment of what

happened to Mr. Jamal Khashoggi."[15]  Director Haspel went on to affirm, "[A]s the Saudi regime

itself has acknowledged, 15 individuals traveled to Istanbul and he was murdered at their

consulate and it was a premeditated murder on 2 October."[16]  The 2020 NICM and 2021 ODNI

Assessment both reference a "15-member Saudi team" who arrived in Istanbul on 2 October

2018.  Further, during a November 2018 teleconference, President Trump confirmed that the

CIA had produced a report on the killing, and that the report discussed MBS and Saudi Arabia's

involvement.  After a reporter asked the President, "But the CIA, Mr. President, concluded with

confidence that MBS—," the parties dispute what the President said in response.  OSJI submits

that the President interrupted to say:

> "They didn't conclude.  No, no, Josh, they didn't conclude. …They did not come to a
> conclusion. They have feelings certain ways but they didn't—I have the report…The CIA
> doesn't say they did it.  They do point out certain things and in pointing out those things
> you can conclude that maybe [MBS] did and maybe he didn't.  . . . A lot of you said
> yesterday that they said he did it. Well they [in context, clearly a reference to the CIA]
> didn't say that.  They said he might have done it.  That's a big difference."[17]

---

[15]  *Open Hearing: Worldwide Threat Assessment of the U.S. Intelligence Committee Before the S. Comm. on
Intelligence*, 116th Cong. (2019), https://www.intelligence.senate.gov/hearings/open-hearing-worldwide-
threats#.

[16]  *Id.*

[17]  As the Court noted in its December 8 Order:

> One aspect of the transcription above – the words the President spoke at the point just
> before the second set of ellipses appears – is disputed by the parties.  OSJI contends that
> the statement at that point was: "[t]hey have feelings certain ways, but they didn't—**I
> have the report**." Pl. Mem. at 5 n.11 (emphasis added) (citing Kate Sullivan et al.,
> *Senate Dem on Armed Services Panel: Trump Lying about CIA report on Khashoggi*,
> CNN (Nov. 23, 2018), https://www.cnn.com/2018/11/23/politics/senate-dem-armed-
> services-cia-khashoggi/index.html).  The agencies counter that this is incorrect and that
> the President stated: "[t]hey have feelings certain ways, but they didn't **have the report**."
> Def. Opp'n at 20 (emphasis added) (citing *Remarks by President Trump in Thanksgiving*

Shortly afterward, Senator Jack Reed (D-RI), the ranking Democrat on the Senate Armed Services Committee, also discussed the contents of the 2018 CIA Report, stating: "The CIA concluded that the crown prince of Saudi Arabia was directly involved in the assassination of Khashoggi.  They did it, as has been reported to the press, with high confidence, which is the highest level of accuracy that they will vouch for.  It's based on facts.  It's based on analysis."[18] Both the 2020 NICM and the 2021 ODNI Assessment reach essentially that same conclusion, with the 2020 NICM stating that MBS "probably authorized" Mr. Khashoggi's murder and the 2021 ODNI Assessment concluding that it was "highly unlikely that Saudi officials would have carried out an operation of this nature without the Crown Prince's authorization."  Singh Decl., Ex. 3 at 1; Singh Decl., Ex. 1 at 2.

## II.      Procedural Background

### A.      Original FOIA Request, the Court's December 8 Ruling, and the CIA *Vaughn* Index

On December 4, 2018, OSJI submitted a procedurally and substantively proper FOIA request to seven federal agencies, including CIA and ODNI, seeking "all records relating to the killing of U.S. resident Jamal Khashoggi, including but not limited to the CIA's findings on

---

*Teleconference with Members of the Military*, White House (Nov. 22, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-thanksgiving-teleconference-members-military/).  The Court has listened to the tape and finds it inconclusive whether the President used the word "I" and if so, whether, as OSJI posits, he did so as the antecedent to the verb "have" or as the last word in a then-interrupted train of thought.  The Court's analysis does not turn on the resolution of this dispute.

December 8 Order at 22 n.4.  Indeed, resolution of this dispute is not germane to the purpose for which OSJI cites President Trump's statement in this context, which is that it clearly indicates that the 2018 CIA Report discusses the involvement of MBS in Mr. Khashoggi's murder.

[18]  Mary Papenfuss, *Trump Lied When He Said CIA Didn't Link Saudi Prince to Khashoggi Killing: Senator Jack Reed*, Huffpost (Nov. 23, 2018, 9:36 PM), https://www.huffpost.com/entry/senator-jack-reed-trump-saudi-arabia-mohammed-bin-salman-jamal-khashoggi-killing_n_5bf887dde4b03b230fa18d4e.

and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." *See* Compl. Inj. Relief ¶ 25, Jan. 9, 2019, Case No. 1:19-cv-00234, ECF No. 1. The CIA and ODNI eventually produced several hundred pages of non-substantive responses to media inquiries.  The agencies acknowledged they were in possession of additional records responsive to the request but otherwise issued a "no number, no list" response, asserting any and all other information regarding the remaining responsive records is classified or statutorily protected from disclosure under FOIA Exemptions 1 and 3.  *See* Decl. Antoinette B. Shiner ¶ 11, Dec. 9, 2019, Case No. 1:19-cv-00234-PAE, ECF No. 112; Decl. Patricia Gaviria ¶¶ 22-24, Dec. 9, 2019, Case No. 1:19-cv-00234-PAE, ECF No. 113.  The parties subsequently cross-moved for summary judgment regarding the agencies' "no number, no list" responses.  *See* Notice Mot. Summ. J., Dec. 9, 2019, Case No. 1:19-cv-00234-PAE, ECF No. 111; Notice Cross-Mot. Summ. J., Jan. 21, 2020, Case No. 1:19-cv-00234-PAE, ECF No. 123.

On December 8, 2020, in its Opinion and Order granting in part and denying in part the parties' cross-motions for summary judgment, the Court ordered the CIA and ODNI to produce a *Vaughn* index for two items:  (a) the tape of the killing of Jamal Khashoggi and (b) the CIA's report on the killing.  December 8 Order, at 29.  On January 5, 2021, the Government moved for partial reconsideration of the December 8 Order with respect to the tape of the killing, and on March 9 the Court granted the Government's motion.  Mem. Law Supp. Mot. Partial Recon., Jan. 5, 2021, Case No. 1:19-cv-00234-PAE, ECF No. 180; Order, Mar. 9, 2021, Case No. 1:19-cv-00234-PAE, ECF No. 202.  On February 9, the Court granted the Government's request to extend the February 8 deadline to produce the *Vaughn* index for the 2018 CIA Report until March 10 due to an "ongoing process of review" by the Administration.  Order, Feb. 9, 2021,

Case No. 1:19-cv-00234-PAE, ECF No. 196.  Finally, on March 10, the CIA provided OSJI with

a *Vaughn* index for the 2018 CIA Report. Singh Decl., Ex. 4.

### B.      March 24 Status Conference

On March 24, 2021, the parties held a status conference by phone with the Court.  The

conference focused on the implications of the newly released 2021 ODNI Assessment and 2020

NICM on Defendants' withholdings.  OSJI informed the Court that it would continue to

challenge the Government's withholding of the 2018 CIA Report in light of the disclosures.  In

addition, OSJI informed the Court that it planned to challenge Defendants' "no number, no list"

responses for the remaining responsive documents by filing a motion for partial reconsideration

of the Court's December 8 Order, based also on the recent disclosures.

On May 10, in accordance with the agreed upon consolidated briefing schedule,

Defendants filed their motion for summary judgment regarding the withheld 2018 CIA Report.[19]

Notice Mot. Summ. J., May 10, 2021, Case No. 1:19-cv-00234-PAE, ECF No. 214.

### **STANDARD OF REVIEW**

### I.      Summary Judgment

Summary judgment is proper when a "movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  In FOIA actions, the defending agency bears the burden of demonstrating that any

withheld documents fall within an exemption to FOIA, and "all doubts as to the applicability of

---

[19]     Defendant ODNI also filed a renewed motion for summary judgment in the separate action relating to OSJI's
2020 FOIA Request for the 2020 NICM, with regard to the redactions in the 2020 NICM.  OSJI subsequently
decided not to challenge the redactions in the 2020 NICM, and OSJI and Defendant ODNI filed a proposed
stipulation and order for dismissal of that action.  Proposed Stipulation & Order of Dismissal, June 7, 2021,
Case No. 1:20-cv-06625-PAE, ECF No. 62.

the exemption must be resolved in favor of disclosure." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009); *see also Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 283 (2d Cir. 2009). "[C]onsistent with the Act's goal of broad disclosure, [FOIA] exemptions have consistently been given a narrow compass." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Further, an agency cannot treat each record and any information about the record as an indivisible whole; even if parts of a record, or information regarding some responsive records, are exempt, an agency has an obligation under FOIA to "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II). Courts review the legality of any withholdings *de novo*. *Bloomberg, L.P. v. Bd. of Governors of Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

Summary judgment is only warranted when the agency (*i*) describes the justifications for withholding the information with reasonably specific detail; (*ii*) demonstrates that the information withheld logically falls within the claimed exemption; and (*iii*) is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith. *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (citations omitted). *Vaughn* submissions, which should list and describe any withheld documents or portions of documents and set out the agency's rationale for withholding them, are insufficient to support a grant of summary judgment if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping. *ACLU v. U.S. Dep't of Justice*, 210 F. Supp. 3d 467, 475 (S.D.N.Y. 2016) (internal citations and quotation marks omitted).

## II.    Motion for Reconsideration

Under Local Civil Rule 6.3 and Federal Rules of Civil Procedure 59(e) and 60(b), movants for reconsideration must show an "intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent manifest injustice."
*Henry v. Miller*, No. 11 Civ. 1273 (PAE) (SLC), 2020 WL 2132625, at *2 (S.D.N.Y. May 5,
2020) (quotation marks omitted); *accord Lowinger v. Morgan Stanley & Co.*, 43 F. Supp. 3d
369, 373 (S.D.N.Y. 2014).   In the FOIA context, courts have found reconsideration to be
warranted where the movant presented additional information constituting a "change in the
court's awareness of the circumstances" (even though it "may not constitute a change in the
actual facts of the case"), or where new information "might reasonably be expected to alter the
conclusion reached by the court."  *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 252
(D.D.C. 2020) (citing *Judicial Watch, Inc. v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 124
(D.D.C. 2006); *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).

## <u>ARGUMENT</u>

Plaintiff OSJI respectfully requests that the Court deny Defendants' motion for summary
judgment and grant Plaintiff's cross-motion for summary judgment with respect to the
withholding in full of the 2018 CIA Report, as well as reconsider its December 8 Order
upholding the remainder of Defendants' "no number, no list" response, for two reasons.  *First*,
the Government cannot claim as exempt information that it has officially acknowledged, and the
information released in the 2021 ODNI Assessment and 2020 NICM constitute official
acknowledgments.  *Second*, even if the information disclosed in the 2021 ODNI Assessment or
2020 NICM does not meet the standard for an "official acknowledgment" when compared to
information in the 2018 CIA Report or otherwise in Defendants' possession, it nevertheless
"shift[s] the factual groundwork" upon which the Court must assess the merits of Defendants'
FOIA responses, rendering it illogical and implausible that Defendants may validly withhold the
2018 CIA Report in full and all other information about all other responsive documents.  *ACLU*

13

*v. DOD III*, 492 F. Supp. 3d at 267 (internal citations omitted); *see also Florez*, 829 F.3d at186. The release of the 2021 ODNI Assessment and 2020 NICM as redacted thus constitute "new evidence" that might reasonably be expected to alter the Court's prior decision to uphold the remainder of Defendants' "no number, no list" response, warranting reconsideration.

At the minimum, the Court should conduct an *in camera* review of the 2018 CIA Report and order production of a classified *Vaughn* index of the remaining responsive documents to determine whether release of the 2021 ODNI Assessment and 2020 NICM mandate additional disclosures.

I.      **The Release of the 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgments that Require the Release of Any Specific Matching Information**

The 2021 ODNI Assessment and 2020 NICM constitute official acknowledgments, which have the effect of waiving the Defendants' ability to continue to withhold any specific information in their possession that matches the information disclosed in those documents.  "If the government has officially acknowledged information, a FOIA plaintiff may compel disclosure of that information even over an agency's otherwise valid exemption claim." *ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD I*"), 628 F.3d 612, 620 (D.C. Cir. 2011).  Classified information is deemed officially acknowledged if it "(1) is as specific as the information previously released, (2) matches the information previously disclosed, and (3) was made public through an official and documented disclosure." *Wilson v. CIA*, 586 F.3d at 186 (citing *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007)).  Information is only protected from additional disclosure if is "meaningfully different" from the previously disclosed information, such that its production would "cause harm" to national security. *Osen LLC v. U. S. Cent. Command*, 969 F.3d 102, 113 (2d. Cir. 2020).

In this case, it is undisputed that the 2021 ODNI Assessment and redacted 2021 NICM meet the third, "official" prong of the *Wilson* test with regard to both Defendants—the DNI has declassified and acknowledged certain information in the 2021 ODNI Assessment and 2020 NICM, which is "binding on all IC components, including the CIA." Gov't Mem. at 22-23. Thus, only the first two prongs of the *Wilson* test—requiring specificity and matching between requested and disclosed information—are at issue. For information to be "as specific as" information previously released, there cannot be "'substantive differences between the content of the [publicly] released government documents and withheld information.'" *Osen*, 969 F.3d at 110 (quoting *ACLU v. DOD I*, 628 F.3d at 620-21). Matching does not require "absolute identity," but rather that there is "enough of an overlap in subject matter between disclosed and withheld records to fairly say that the two records . . . present the same information about the same subject." *Osen*, 969 F.3d at 111-12 (citing *N.Y. Times v. CIA*, 965 F.3d 109, 116, 119 (2d Cir. 2020)). Matching, therefore, is a question of "what topics have already been produced to the public," while specificity concerns "the quality or kind of information about a particular topic that has been produced to the public." *Id.* at 110, 112.

### A.   The 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgements that Waive the Government's Ability to Withhold the 2018 CIA Report in Full

There must necessarily be information in the 2018 CIA Report that is at least as specific as, and that matches, information contained in the 2021 ODNI Assessment or redacted 2020 NICM; the test for official acknowledgment is thus met for the 2018 CIA Report, at least in part. As to the first prong of the *Wilson* test, the documents are "equally specific" because they "tell the same stories"—here, the Government's "assessment of the Saudi government's role in the killing of Mr. Khashoggi"—based on the same underlying intelligence information. *Osen*, 969

F.3d at 111; Supp. Decl. Vanna Blaine ("Public Blaine Decl.") ¶ 15, May 10, 2021, Case No.

1:19-cv-00234-PAE, ECF No. 217.  The CIA's *Vaughn* index states that the 2018 CIA Report is

a 3-page "CIA assessment relating to the killing of Jamal Khashoggi."  *See* Singh Decl., Ex. 4.

The 2021 ODNI Assessment and 2020 NICM are likewise 2-3 page assessments of the Saudi

Government's role in the killing of Jamal Khashoggi.  *See* Singh Decl., Exs. 1, 3; *see also* Public

Blaine Decl. ¶ 15.  If the 2018 CIA Report also "contains a different level of specificity,

including discussion of specific intelligence sources and methods," as the Government has

averred, Public Blaine Decl. ¶ 15, that does not justify withholding the entirety of the 2018 CIA

Report; rather, those portions can be redacted and the remaining information segregated and

disclosed.  Given what has been disclosed publicly regarding the contents of the 2018 CIA

Report, it is simply implausible that there is <u>no</u> information discussed with a comparable level of

specificity to the 2021 ODNI Assessment or 2020 NICM—e.g., the naming of MBS, or reference

to the 15-member hit squad mentioned by former Director Haspel in her January 2019

testimony.[20]

As to the second prong of the *Wilson* test, the 2018 CIA Report "matches" the 2021

ODNI Assessment and the redacted 2020 NICM because it relates to the same topic already

produced to the public via those later reports: namely, an assessment of MBS's responsibility for

the murder of Mr. Khashoggi.  As the Government concedes, the 2018 CIA Report "overlap[s]"

and "addresses the same subject matter" as the 2021 ODNI Assessment and 2020 NICM.  Gov't

Mem. at 19, 22; Public Blaine Decl. at ¶ 15.  Indeed, in November 2018—the same month the

2018 CIA Report was published—then-President Trump himself confirmed the subject matter

addressed by the 2018 CIA Report, when he disclosed that the Report discussed MBS's alleged

---

[20]    Hearing: Worldwide Threat Assessment, *supra* note 155; *see also supra* Section I.C.

involvement in Mr. Khashoggi's killing [and even that the CIA concluded that MBS "might have done it."[21]].  It can only be that at least some information in the 2018 CIA Report "matches" information in the 2021 ODNI Assessment or 2020 NICM such that disclosure of that portion is mandated.

Furthermore, this match is corroborated by the numerous public reports of the 2018 CIA Report's contents.  *See supra* Section I.C.  For example, in November 2018, Senator Jack Reed publicly stated that the 2018 CIA Report concluded "with high confidence" that MBS was involved in the killing.[22]  *See also* OSJI's Mem. Law. Opp'n Summ. J. Mot. & Supp. OSJI's Cross-Mot. Summ. J. ("OSJI's Jan. 21 Mem.") at 6-7, Jan. 21, 2021, Case No. 1:19-cv-00234-PAE, ECF No. 124.  One month later, in December 2018, excerpts of the 2018 CIA Report concluding that MBS "probably ordered [Khashoggi's] death" were leaked.[23]  These excerpts also revealed that the Report concluded that "it is highly unlikely" that certain individuals in MBS's Royal Guard "carried out the operation without Muhammed bin Salman's authorization."[24]  *Compare* 2021 ODNI Assessment at 3 ("The team also included seven members of . . . the Saudi Royal Guard," who "would not have participated in the operation against Khashoggi without Muhammed bin Salman's approval.").

The Government's attempt to argue that there are "temporal" or contextual differences between the 2018 CIA Report and the later disclosures that preclude waiver, Gov't Mem. at 23-

---

[21]   Presidential Teleconference, *supra* note 177.

[22]   Mary Papenfuss, *supra* note 18.

[23]   Singh Decl., Ex. 8 (Warren P. Strobel, *CIA Intercepts Underpin Assessment Saudi Crown Prince Targeted Khashoggi*, WALL ST. J., Dec. 1, 2018, https://www.wsj.com/articles/cia-intercepts-underpin-assessment-saudi-crown-prince-targeted-khashoggi-1543640460).

[24]   *Id.*

24, is unavailing.  The Second Circuit has ordered disclosure of classified information produced at one point in time as a result of information that was officially acknowledged at another point in time; indeed, to argue that the Court may not do so is to cut the official acknowledgment doctrine off at the knees.  *See N. Y. Times*, 756 F.3d at 110-11, 118 (ordering disclosure of portions of a 2010 OLC-DOD memo containing legal analysis on targeted drone attacks due to official public statements on the legality of those attacks in 2010, 2012, and 2013).

Cases where courts have ruled context, including temporal differences, preclude waiver are readily distinguishable and generally involve a far greater time lag that resulted in a "different" factual context surrounding the disclosure.  *See, e.g., N. Y. Times v. U.S. Dep't of Justice*, 806 F.3d 682, 686 (2d Cir. 2015) (finding that a "substantial time interval" of eight years between the publication of the withheld document and similar disclosures created a "differ[ent] . . . context" that precluded a finding of official acknowledgement and waiver); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (finding that prior official disclosure of a particular CIA station's location in 1975 did not waive protection of the station's location eight years later due to potential "change[s] in the CIA's presence and activities").  Here, in contrast, only a little over two years separates production of the 2018 CIA Report and public release of the 2021 ODNI Assessment and 2020 NICM; the Government cannot point to any "different" context for the similar disclosures that would preclude waiver.  Indeed, the fact of the CIA investigation, and the subject matter of the 2018 CIA Report, was public knowledge at the time the Report was produced.[25]  Segregating and disclosing only the information in the 2018 CIA Report that has been officially acknowledged subsequently thus can do no incremental harm to U.S. national security.

---

[25]    *See supra* Section I.C.

In light of the foregoing, Defendants have failed to meet their burden to demonstrate that there is <u>no</u> officially acknowledged information in the 2018 CIA Report that is reasonably segregable from exempt information.  Agencies must provide a "detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Elec. Privacy Info. Ctr. v. ODNI*, 982 F. Supp. 2d 21, 31 (D.D.C. 2013) (citing *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010)).  OSJI does not, of course, have access to Defendant CIA's classified supplemental declaration, but it is difficult to credit Defendant's bare-bones assertion that the exempt and non-exempt portions of the 2018 CIA Report are so inextricably intertwined that not a single word of the Report can "reasonably be segregated or released" without jeopardizing national security.  Public Blaine Decl. ¶ 19.  The Government could simply decline to release all "discussion of specific intelligence sources and methods, and other differences," as it had done in redacting the 2020 NICM.  Public Blaine Decl. ¶ 15.

The Court should therefore compel disclosure of reasonably segregable, officially acknowledged, and otherwise non-exempt information contained in the 2018 CIA Report. *See N. Y. Times*, 756 F.3d at 119-24 (ordering the Government to segregate officially acknowledged information in portions of an OLC-DOD memorandum but exempting undisclosed information relating to intelligence gathering activities).  At a minimum, Defendant CIA should be required to produce the 2018 CIA Report for *in camera* review, so that the Court can determine whether the Report contains any officially acknowledged information that may be disclosed.  *See Hopkins v. U.S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 86 (2d. Cir 1991) (citations omitted) (holding that where "the record is vague or the agency claims [are] too sweeping," *in camera* review is appropriate).

B.    **The 2021 ODNI Assessment and Redacted 2020 NICM Constitute Official Acknowledgements that Compel Disclosure of Information Otherwise Withheld Under Defendants' "No Number, No List" Response**

The remaining universe of responsive documents, as to which the Court upheld Defendants' "no number, no list" response, must also contain reasonably segregable, non-exempt information as a result of the official disclosures in the 2021 ODNI Assessment and 2020 NICM. Release of those reports therefore constitutes "new evidence" warranting reconsideration of the Court's December 8 Order granting in part Defendants' motion for summary judgment.

Entire documents—much less, entire record sets, containing an unknown number of documents—are only exempt from disclosure when "the exempt and nonexempt information are inextricably intertwined," such that "excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Stahl v. U.S. Dep't of Justice*, No. 19-cv-4142 (BMC), 2021 WL 1163154, at *15 (E.D.N.Y. Mar. 26, 2021) (quoting *Mays v. Drug Enf't Agency*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)). The Government bears the burden of justifying nondisclosure and must provide a "detailed justification" for the non-segregability of the withheld documents. *Elec. Privacy Info. Ctr.*, 982 F. Supp. 2d at 31; *see also Sussman v. U.S. Dep't of Justice*, No. 03-cv-3618 (DRH) (ETB), 2006 WL 2850608, at *17 (E.D.N.Y. Sept. 30, 2006) (requiring the Government to provide a "relatively detailed description" of the withheld documents to justify nondisclosure of the entire record).

To the extent that specific information withheld under the Defendants' "no number, no list" response matches the officially acknowledged information released in the 2021 ODNI Assessment and redacted 2020 NICM, the Government is now obligated to segregate and release this information. To assert that this is a null set strains credulity. The 2021 ODNI Assessment and 2020 NICM were created by ODNI pursuant to Congressional requests to the DNI in her

20

capacity as head of the IC—the full resources of which, as explained by Vice President Pence in October 2018, were committed to investigating Mr. Khashoggi's murder in an effort led by then-CIA Director Haspel.[26]  The fruits of this investigation, which provided the basis for the conclusions in the 2021 ODNI Assessment and 2020 NICM, must necessarily be contained within the responsive records that Defendants are withholding.  Where official acknowledgements have "publicly identified" substantive content contained in those withheld records—here, including but not limited to, information on the involvement of MBS and the names of certain individuals the Government has "high confidence" were involved in Khashoggi's killing—the rationale for maintaining a "no number, no list" response "evaporates." *N. Y. Times*, 756 F.3d at 122-24; Singh Decl., Ex. 3 at 1, 2; Singh Decl., Ex. 1, at 2-4.

OSJI therefore respectfully requests that the Court grant partial reconsideration of its December 8 Order, and order Defendants to segregate and release all information officially acknowledged by the 2021 ODNI Assessment or 2020 NICM.  At a minimum, the Court should order production of a classified *Vaughn* index detailing Defendants' remaining responsive documents, in order to conduct an *in camera* assessment of whether the withheld documents may contain information that has been officially acknowledged and can be segregated and disclosed. *See Hopkins*, 929 F.2d at 84-86 (instructing the district court to conduct an *in camera* review for segregable factual information in HUD inspection reports due to the "vague" record and HUD's "sweeping" claims that "offered no details as to the contents of specific reports, but only asserted in a conclusory fashion that any factual observations contained in the reports are 'inextricably intertwined' with the reports' privileged opinions and recommendations"); *cf. Weissman v. CIA*, 565 F.2d 692, 698 (D.C. Cir. 1977) (declining to conduct an *in camera* inspection because the

---

[26]    See *supra* Section I.C; *See also* ODNI, "Who We Are," https://www.dni.gov/index.php/who-we-are.

CIA "came forward with newly discovered documents as located," "submitted affidavits summarizing each document," and "released some documents in their entirety").

**II.    Defendants Have Failed to Satisfy Their Burden to Justify the Withholding of the 2018 CIA Report in Full and Any Other Information About All Other Responsive Documents Pursuant to Either Exemption 1 or 3**

Even if the Court were to conclude that no information in the 2018 CIA Report, or otherwise withheld by Defendants, meets the official acknowledgment test with respect to the 2021 ODNI Assessment or 2020 NICM, Defendants have not met their burden to justify withholding the 2018 CIA Report in full and any other information about all other responsive documents pursuant to either Exemption 1 or 3.  The 2021 ODNI Assessment and 2020 NICM publicly release information that is highly relevant to Defendants' asserted rationale for invoking those exemptions, which is predicated on the harm to national security that would purportedly ensure from any additional disclosures.  The disclosure of the 2021 ODNI Assessment and 2020 NICM have therefore "shift[ed] the factual groundwork" upon which the Court must assess the merits of Defendants' FOIA response, making the continued withholding of all other responsive information untenable and mandating reconsideration of the Court's December 8 Order.[27]  *Florez*, 829 F.3d at 186; *see also ACLU v. DOD III*, 492 F. Supp. 3d at 267.

As Defendants acknowledge, the burden is on the agency to provide "'reasonably detailed explanations' for any asserted exemptions."  Gov't Mem. at 9 (quoting *Carney v. U.S.*

---

[27]    Defendants state that "the Court upheld the no number, no list response 'in the main' under exemptions 1 and 3."  Gov't Mem. at 3.  Defendants paint too broad a brush: this Court upheld the "no number, no list" response, except for two items, on the basis on Exemption 1.  *See* December 8 Order at 10-21.  The Court did not directly credit Defendants' argument invoking Exemption 3 in support of their blanket "no number, no list" response.  Likewise, the Court did not rule on the Defendants' claim to withhold portions of the record under Exemptions 3, 5, and 6, and instead only held that those exemptions did not apply to the two items for which the Court ordered disclosure of the *Vaughn* index.  *See* December 8 Order at 25-27.  Out of an abundance of caution, however, OSJI argues that Defendants' "no number, no list" response cannot be maintained under either Exemption 1 or 3.

*Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)); *see also Wilner,* 592 F.3d at 72-73.  A

"vague," "sweeping," "conclusory" affidavit does not suffice.  *Hayden v. Nat'l Sec.*

*Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see also Founding Church of*

*Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 830 (D.C. Cir. 1979) ("'[C]onclusory and

generalized allegations of exemptions' are unacceptable[.]" (citation omitted)).  Further, while

courts may accord "substantial weight" to agency affidavits in the national security context,

"deference is not equivalent to acquiescence."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20,

30 (D.C. Cir. 1998). "[C]oncerns of national security and foreign relations do not warrant

abdication of the judicial role" and "[d]eference to the executive's national security and military

judgments is appropriate only where [Courts] have sufficient information to evaluate whether

those judgments were logical and plausible."  *ACLU v. U.S. Dep't of Def.* ("*ACLU v. DOD II*"),

901 F.3d 125, 134 (2d Cir. 2018) (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34

(2010)).

To meet their burden under Exemption 1, Defendants must demonstrate that any

information withheld is "specifically authorized under criteria established by an Executive order

to be kept secret in the interest of national defense or foreign policy," and is "in fact properly

classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).[28]  In order for a record to be

properly classified, *first*, the information must pertain to one of the eight protected categories—

in this case, "intelligence activities (including covert action), intelligence sources or methods, or

---

[28]   Defendants rely on Section 1.1 of Executive Order 13526 ("E.O. 13526"), which stipulates: (1) an "original
classification authority" must classify the information; (2) the information must be "owned by, produced by or
for, or…under the control of the United States Government"; (3) the information must pertain to one or more
of eight protected categories of information listed in section 1.4 of the Executive Order, one of which is
"intelligence activities (including covert action), intelligence sources or methods, or cryptology," *id.* § 1.4(c);
and (4) an original classification authority must "determine[] that the unauthorized disclosure of the
information reasonably could be expected to result in damage to the national security" and be "able to identify
or describe the damage."  E.O. 13526 § 1.1(a)(1)-(4).

cryptology." *See Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013); *see also* E.O. 13526 § 1.4(c). *Second*, disclosure of the asserted classified information "must reasonably be expected to cause some degree of harm to national security . . . that is identifiable or describable." *Judicial Watch*, 715 F.3d at 941.

To invoke Exemption 3, Defendants must establish that (*1*) the statutes invoked are valid nondisclosure statutes and (*2*) the records in question fall within the withholding provision(s) of the nondisclosure statutes(s). *See* 5 U.S.C. § 552(b)(3); *Wilner*, 592 F.3d at 72. "The Agency must show specifically and clearly that the requested materials fall into the category of exemption." *Hayden*, 608 F.2d at 1390 (D.C. Cir. 1979). Here, Defendants invoke Section 102A(i)(1) of the National Security Act's protection of "intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1), as the applicable withholding statute for the 2018 CIA Report and the "no number, no list" response. *See* Gov't Mem. at 21-22 (invoking this provision for the 2018 CIA Report); Mem. Law Supp. Mot. Summ. J. at 17, Dec. 9, 2019, Case No. 1:19-cv-00234-PAE, ECF No. 116 (invoking this provision for the "no number, no list" response). However, "to properly apply the National Security Act, the agencies must show that it is 'logical and plausible' that non-disclosure would 'protect[] our intelligence sources and methods from foreign discovery.'" *ACLU v. DOD III*, 492 F. Supp. 3d at 261 (quoting *N.Y. Times*, 756 F.3d at 119).

As discussed in Sections II.A & II.B, the disclosures in the 2021 ODNI Assessment and 2020 NICM necessarily mean that Defendants cannot justify withholding in full all other information responsive to OSJI's FOIA request under either Exemption 1 or Exemption 3.

**A.      Defendant CIA's Refusal to Release Any Additional Information Regarding the 2018 CIA Report Is Not Logical or Plausible Under Either Exemption 1 or Exemption 3**

The disclosure of the 2021 ODNI Assessment and 2020 NICM, which relate to the same topic as the 2018 CIA Report, has "shift[ed] the factual groundwork" upon which the Court should assess the merits of the CIA's FOIA response.  *Florez*, 829 F.3d at 186.  The facts here are analogous to *Florez* and *ACLU v. DOD III*.  In *Florez*, the CIA answered the plaintiff's FOIA request for records relating to his father, Dr. Armando Florez, with a *Glomar* response, refusing to confirm the existence or non-existence of responsive records because to do so would confirm either the agency's interest or disinterest in Dr. Florez as an intelligence asset.  *Id*. at 181, 184.  The district court granted summary judgment to the CIA but, while plaintiff's appeal was pending, the FBI released several declassified documents relating to Dr. Florez.  *Id.* at 181.  The Second Circuit found the FBI disclosures relevant to assessing whether the CIA's justifications for its *Glomar* response remained "logical and plausible."  *Id.* at 184-85 (citation omitted).   The Second Circuit reasoned that because the FBI disclosures suggested that "multiple government departments and agencies were investigating, monitoring, and had an intelligence interest in Dr. Florez," that "now-public information may bear on the CIA's position that the mere acknowledgement that it does or does not have possession of documents that reference Dr. Florez would harm the national security, or otherwise disclose Agency methods, functions, or sources."  *Id.* at 185.

Relying on *Florez*, the court in *ACLU v. DOD III* held that, while not an official acknowledgment, a redacted report subsequently released by the Department of Defense ("DOD") "shifted [the factual] groundwork" in assessing DOD's own invocation of a FOIA exemption because it confirmed the existence of the information the requester was seeking.  492 F. Supp. 3d at 267.  Even though the agency invoked the FOIA exemption "logical[ly] and

25

plausibl[y]" when it first answered the requester's complaint, that was rendered "illogical and implausible by the release of the . . . report." *Id.* at 267-69.

Similarly, here, information disclosed in the 2021 ODNI Assessment and 2020 NICM is highly relevant in assessing the CIA's justification for continuing to withhold the 2018 CIA Report in full. As detailed in Section I above, according to acknowledgments by Government officials and other publicly available information, the 2018 CIA Report contains information relating to the people involved in Mr. Khashoggi's murder, as do the 2021 ODNI Assessment and 2020 NICM. Given the release of comparable information in the 2021 ODNI Assessment and 2020 NICM, it is not "logical or plausible" that there is *no* information in the 2018 CIA Report that may be segregated and released without wreaking "exceptionally grave damage to the national security." Public Blaine Decl. ¶ 9.

Defendants argue that the disclosure of information in the 2018 CIA Report could reveal the "nature, volume, and timing of the intelligence information available to the CIA as of November 2018," including "the extent of the CIA's clandestine intelligence capabilities" and how quickly it was able to mobilize them. *See* Gov't Mem. at 20-21; Public Blaine Decl. ¶ 10. However, the key facts as disclosed in the 2021 ODNI Assessment and 2020 NICM were either also publicly disclosed in 2018 by the President, or already a matter of widespread public knowledge *at that time*.

*First*, the 2021 ODNI Assessment and 2020 NICM conclude that MBS was "probably" involved in Mr. Khashoggi's murder or that it was "highly unlikely" that he was not involved. *See* Singh Decl., Ex. 1 at 2, 3; Singh Decl., Ex. 3 at 1. In November 2018, then-President Trump had already revealed that the 2018 CIA Report also referenced MBS's involvement during the press conference discussed above, stating—while discussing the 2018 CIA Report—that "they

[in context, clearly a reference to the CIA] said he [in context, clearly a reference to MBS] might have done it." *See supra* at 8. Likewise, comments by members of Congress who were familiar with the CIA's assessment in November and early December 2018 also publicly discussed its conclusions regarding MBS's involvement—specifically, that the CIA concluded "with high confidence" that MBS was involved. *See supra* at 9; *see also* OSJI's Jan. 21 Mem. at 6-7.[29] Thus, to the extent the 2018 CIA Report, at the very least, states MBS's name and the fact of his involvement, those facts are now subject to disclosure.

*Second*, the 2021 ODNI Assessment and 2020 NICM base their conclusions on facts that were *widely* publicly known as of November 2018 or even earlier, including (*1*) MBS's control of decision-making in Saudi Arabia; (*2*) the direct involvement of a key advisor (Saud al Qahtani) and members of MBS's protective detail; and (*3*) MBS's general support for the use of violent measures to silence dissidents abroad. *See* Singh Decl., Exs. 1, 3. Points 1 and 3 have been widely known for years.[30] With regard to Point 2, as the 2020 NICM itself states, the

---

[29]  The article cited in OSJI's Mem. Law. Opp'n Summ. J. Mot. & Supp. OSJI's Cross-Mot. Summ. J. ("OSJI's Jan. 21. Mem.") at 7 n.7, Jan. 21, 2021, Case No. 1:19-cv-00234-PAE, ECF No. 124, is now available at https://www.cnn.com/2018/12/13/politics/corker-saudi-crown-prince-khashoggi. *See also* Singh Decl., Ex. 9 (Shane Harris et al., *CIA Concludes Saudi Crown Prince Ordered Jamal Khashoggi's Assassination*, WASH. POST (Nov. 16, 2018), https://www.washingtonpost.com/world/national-security/cia-concludes-saudi-crown-prince-ordered-jamal-khashoggis-assassination/2018/11/16/98c89fe6-e9b2-11e8-a939-9469f1166f9d_story.html) (reporting that "[t]he CIA has concluded that Saudi Crown Prince Mohammed bin Salman ordered the assassination of journalist Jamal Khashoggi in Istanbul last month" and that "officials have said they have high confidence" in the CIA's assessment)).

[30]  Singh Decl., Ex. 8 ("[S]ince 2015 Prince Salman 'has ordered Qahtani and CSMARC to target his opponents domestically and abroad, sometimes violently.'"); Rodney Dixon, *Opinion: The World Can No Longer Ignore Saudi Arabia's Human Rights Abuses*, GUARDIAN (Oct. 15, 2018 10:49 AM), https://www.theguardian.com/commentisfree/2018/oct/15/saudi-arabia-human-rights-jamal-khashoggi-disappearance) ("The thoroughness of the Saudi regime in silencing opponents has significantly increased since Crown Prince Mohammed bin Salman came to power in 2017."); Margherita Stancati & Summer Said, *Saudi Arabian Arrest Wave Shows Crown Prince's Bid to Control Change*, WALL ST. J. (June 5, 2018, 6:14 PM), https://www.wsj.com/articles/saudi-arabian-arrest-wave-shows-crown-princes-bid-to-control-change-1528191000 ("[Crown Prince Mohammed bin Salman] is also overseeing one of the most ruthless crackdowns on perceived dissenters that Saudi Arabia has experienced in decades."); *Saudi Clerics Detained In Apparent Bid to Silence Dissent*, REUTERS (Sept. 10, 2017, 6:36 PM), https://www.reuters.com/article/us-saudi-security-

names of the Saudi hit squad were published in the Turkish press in October 2018[31] and multiple

media sources, via open source information, were able to link a number of them to MBS's

personal detail.[32]  Thus, to the extent that the 2018 CIA Report contains comparable information,

disclosing such information would not "reveal specific intelligence information available to the

CIA at the time of the report" or indicate anything particular about the CIA's clandestine

intelligence capabilities, Gov't Mem. at 21, but rather disclose facts that were widely known at

the time in 2018 and were publicly confirmed by the U.S. Government in the 2021 ODNI

Assessment and 2020 NICM.

Defendant's public affidavit arguing otherwise is vague, sweeping, and conclusory.  It

cites the statutory requirements without describing how the withheld material relates to them.  It

does not provide sufficient information to be "reasonably specific," as required.  For example,

with regard to Exemption 1, the Public Blaine Declaration states, "[t]he [CIA] Report meets all

of the current requirements for classification set forth in E.O. 13526," then simply repeats the

---

arrests/saudi-clerics-detained-in-apparent-bid-to-silence-dissent-idUSKCN1BL129) ("Crown Prince
Mohammed bin Salman . . . already dominates economic, diplomatic and domestic policy").

[31]   *Jamal Khashoggi: Who's Who in Alleged Saudi 'Hit Squad*,' BBC NEWS (Oct. 19, 2018),
https://www.bbc.com/news/world-middle-east-45906396) ("Turkish media have named 15 Saudi nationals
who Turkish officials suspect were involved in the disappearance of Jamal Khashoggi, . . . who was last seen
entering the Saudi consulate in the city of Istanbul on 2 October.").

[32]   *See, e.g.*, *How the Man Behind Khashoggi Murder Ran the Killing via Skype*, REUTERS (Oct. 23, 2018 8:13
AM), https://www.reuters.com/article/us-saudi-khashoggi-adviser-insight/how-the-man-behind-khashoggi-
murder-ran-the-killing-via-skype-idUSKCN1MW2HA) (detailing how "Saud al-Qahtani, a top aide for Saudi
Crown Prince Mohammed bin Salman" helped carry out the Khashoggi murder); *Jamal Khashoggi: Who's
Who in Alleged Saudi 'Hit Squad*,' BBC NEWS (Oct. 19, 2018), https://www.bbc.com/news/world-middle-
east-45906396) (noting, for example, that the suspects involved in Mr. Khashoggi's murder included
"Abdulaziz Mohammed M Alhawsawi" who is "a member of the security team that travels with Crown Prince
Mohammed bin Salman"; "Mohammed Saad H Alzahrani" who is "a member of the Royal Guard" that "also
appears to have been photographed and filmed standing next to Crown Prince Mohammed bin Salman"; and
"Saif Saad Q Alqahtani" who was "working in the service of Crown Prince Mohammed bin Salman"); David
D. Kirkpatrick et al., *The Jamal Khashoggi Case: Suspects Had Ties to Saudi Crown Prince*, N.Y. TIMES (Oct.
16, 2018), https://www.nytimes.com/2018/10/16/world/middleeast/khashoggi-saudi-prince.html) (noting that a
number of the suspects in Mr. Khashoggi's murder  were linked to "the Saudi crown prince's security detail").

requirements and asserts in a conclusory fashion that the Report meets those requirements,

focusing particularly on the assertion that release of the Report would reveal intelligence sources

and methods.  *See* ¶¶ 6-15.  As for Exemption 3, ¶ 17 of the Public Blaine Declaration again

reiterates the applicable statutes.  Paragraph 18 again concludes, without specific details that

would allow OSJI to test the conclusion, that "disclosure would identify intelligence sources and

methods."[33]  Such descriptions are insufficient under Exemptions 1 or 3 because they are "too

broad and conclusory to allow the Court to perform the type of 'searching de novo review'

required by the governing precedent."  *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 123

(D.D.C. 2017) (quoting *Church of Scientology, Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir.

1980)) (holding that the government's declaration was "too broad and conclusory" where it

attested that "intelligence sources and methods would be revealed," "disclosure of this

information presents a bona fide opportunity for individuals to develop and implement

countermeasures," and "the Intelligence Community . . . use . . . various sources to obtain

intelligence related information . . . through a myriad of available methods of intelligence

gathering, not all of which are known to the public").

　　　　Furthermore, the Public Blaine Declaration states, "[i]n general terms," that "where a

source is an individual, the CIA promises to protect the identities of its sources and their

---

[33]    This is similar to other instances where the court deemed the government's explanation for an exemption insufficient.  For example, the court in *Wash. Post Co. v. Special Inspector Gen. for Afghanistan Reconstruction* held that a declaration stating that "frank discussions of foreign relations, including assessment of foreign government officials and policies, if revealed, could damage or impair foreign relations and national security"  and that "[t]hese assessments could negatively affect the foreign policy environment, not only in Afghanistan, but also in other countries mentioned and in other countries that consider themselves similarly placed" did not "provide enough detail to permit the Court to assess the propriety of any individual decision or explain how disclosing any particular record would harm national security" under Exemption 1.  486 F. Supp. 3d 141, 158 (D.D.C. 2020).  Similarly, the *Founding Church* court held that "[b]arren assertions that an exempting statute has been met"—such as a statement that "compliance with [the FOIA requester's] demand would reveal 'certain functions and activities . . . protected from mandatory disclosure by [the applicable statute],' and would 'jeopardize national security functions the agency was established to perform'"—"cannot suffice to establish that fact" to satisfy Exemption 3.  610 F.2d at 831.

relationships with the CIA" and that "[w]here a source is a foreign government or other foreign entity, disclosure . . . without authorization from the foreign government or entity would constitute a serious breach of trust," at ¶¶ 12-13, but does not state that such individual or foreign entity sources are featured in the 2018 CIA Report.  Like in *Halpern v. FBI*, this "read[s] more like a policy justification" for the relevant executive order "while barely pretending to apply the terms of that section to the specific facts of the documents at hand."  181 F.3d 279, 293 (2d Cir. 1999).

Not having drawn a connection between the withholding in full of the 2018 CIA Report and the protection of intelligence sources and methods, the CIA has failed to "educate the Court on the connection between those concepts within the context of this case," *ACLU v. DOD III*, 492 F. Supp. 3 at 262; *see also Campbell*, 164 F.3d at 31 (requiring FBI to file a new declaration because its declaration failed "to draw any connection between the documents at issue and the general standards that govern the national security exemption").  It beggars belief that every single word in the 2018 CIA Report could tend to reveal an intelligence source or method.  The Government has offered no evidence or explanation for how that could possibly be the case, only an "*ipse dixit*" statement that it is so, which is plainly insufficient.  *See ACLU v. DOD III*, 492 F. Supp. 3 at 262.

*Finally*, even if the Court rules that the CIA has shown that a portion of the 2018 CIA Report is exempt from disclosure, the CIA must produce reasonably segregable portions of the record.  5 U.S.C. § 552(b); *FBI v. Abramson*, 456 U.S. 615, 626 (1982) (holding that FOIA "requires agencies and courts to differentiate among the contents of a document rather than to treat it as an indivisible 'record' for FOIA purposes").  Again, the CIA simply states that there are "no non-exempt portions of the Report [that] can reasonably be segregated or released."  *See*

Public Blaine Decl. ¶ 19.  This conclusory assertion is insufficient to meet Defendant's burden

under FOIA; at a minimum, the Court should conduct an *in camera* review of the Report, to

determine whether release of the 2021 ODNI Assessment and the 2020 NICM indicates that any

portions of the 2018 CIA Report may now be segregated and released without causing any

foreseeable harm to national security.

> **B.     Defendants' Maintenance of Their "No Number, No List" Response with Regard to All Other Responsive Information Is Not Logical or Plausible, Especially in Light of the Higher Standard Applicable to "No Number, No List" Responses**

The 2021 ODNI Assessment and 2020 NICM constitute "new evidence" warranting

reconsideration of the Court's December 8 Order upholding the remainder of the agencies' "no

number, no list" response.  *Henry v. Miller*, 2020 WL 2132625, at *2 (quotation marks omitted);

*accord Lowinger*, 43 F. Supp. 3d at 373.  In reaching that decision, the Court credited

Defendants' representation that revealing any additional information about the withheld records

"would give advantage to foreign intelligence services and other groups by giving them insight

into what the United States' intelligence capabilities and interests are, or are not, which could

enable adversaries to circumvent U.S. intelligence activities, and generally enhance its

intelligence or counterintelligence activities at the expense of the U.S. national security."

December 8 Order at 17.  The disclosures in the 2021 ODNI Assessment and 2020 NICM

entirely upend the factual context in which the Court evaluated that representation, necessitating

partial reconsideration of the Court's Order.

*First*, the 2021 ODNI Assessment and 2020 NICM publicly released substantive

information responsive to the OSJI's FOIA request, making it no longer logical or plausible that

Defendants' broad "no number, no list" response is justified.  Pursuant to FOIA, OSJI requested

the CIA and ODNI to release "all records relating to the killing of U.S. resident Jamal

Khashoggi, including but not limited to the CIA's findings on and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." Compl. Inj. Relief ¶ 25, Jan. 9, 2019, Case No. 1:19-cv-00234, ECF No. 1. The 2021 ODNI Assessment and redacted 2020 NICM contain a number of pieces of information responsive to this request, including the assessment of the involvement of MBS (Singh Decl., Ex. 1 at 2-3; Singh Decl., Ex. 3 at 1), the basis for that assessment (Singh Decl., Ex. 1 at 2-3), and the names of certain individuals deemed to be involved with "high confidence" (Singh Decl., Ex. 1 at 3-4; Singh Decl., Ex. 3 at 2).

Given these extensive disclosures, it is not "logical or plausible" that *no* other CIA or ODNI documents contain information that has been impacted by the disclosures in the 2021 ODNI Assessment and 2020 NICM and therefore can be released without harm to U.S. national security. Similar to the facts in *Florez* and *ACLU v. DOD III*, as discussed *supra* at 25-26, there are multiple passages in the 2021 ODNI Assessment and 2020 NICM that are highly relevant to the subject of plaintiff's FOIA request. The information contained in those passages must necessarily come from other information within Defendants' possession and control. The 2021 ODNI Assessment was released by ODNI, one of the Defendants, and the redacted 2020 NICM was created by the NIC, which acts "under the direction of the Director of National Intelligence," 50 U.S.C. § 3027(d).[34] Much like the DOD report subsequently released in *ACLU v. DOD III*, the 2021 ODNI Assessment and 2020 NICM are documents of "unchallenged credibility." 492 F. Supp. 3d at 267. Thus, to continue to maintain that Defendants can release *no* other piece of information regarding their remaining responsive documents because that would harm national

---

[34] *See also ODNI Organizational Chart*, https://www.dni.gov/files/ODNI/documents/ODNI_Org_Chart_Final_For_Web_2020_1.pdf) (showing the NIC as part of the ODNI organizational chart).

security or disclose intelligence sources and methods, even if such information was segregated from exempt information, "would be to give in to 'a fiction of deniability that no reasonable person would regard as plausible.'" *Id.* at 268 (S.D.N.Y. 2020) (quoting *ACLU v. CIA*, 710 F.3d 422, 431 (D.C. Cir. 2013)).

*Second*, this especially holds true given the high bar for maintaining a "no number, no list" response. A "no number, no list" response can only be "justified in *unusual* circumstances, and only by a *particularly persuasive* affidavit." *ACLU v. CIA*, 710 F.3d at 433 (emphasis added); *ACLU v. FBI*, No. 11cv7562, 2015 WL 1566775, *2 (S.D.N.Y. Mar. 31, 2015) (same). This high bar is highlighted by the fact that the Second Circuit has not upheld a grant of summary judgment on this basis, as well as by other cases refusing to grant summary judgment to uphold a "no number, no list" response in full. *See N.Y. Times*, 756 F.3d at 103, 122-23 (refusing to grant summary judgment for the agencies' "no number, no list" response and ordering DOD and CIA to produce *Vaughn* indices to the Court for review); *ACLU v. FBI*, 2015 WL 1566775, at *3 (only upholding partial "no number, no list" response after *in camera* review of classified brief, two supporting declarations, and responsive records). *See also ACLU v. CIA*, 710 F.3d at 433 (rejecting CIA's claim that "no number, no list" argument was a "well-established" notion). Defendants' conclusory affidavits are not "particularly persuasive," especially in light of the release of the 2021 ODNI Assessment and 2020 NICM. *See* OSJI's Jan. 21 Mem. at 19-22. Thus, even though this Court held that Defendants "logical[ly] or plausibl[y]" invoked FOIA Exemption 1 in upholding the remainder of Defendants' "no number, no list" request, December 8 Order at 17, we ask this Court to now reconsider that decision based on new evidence and hold that the invocation of the FOIA exemption was rendered "illogical and implausible by the release of the . . . report[s]." *ACLU v. DOD III*, 492 F. Supp. 3d at 267-69.

33

*       *       *

OSJI therefore respectfully asks that the Court (*1*) enter summary judgment and require Defendants to disclose all non-exempt, reasonably segregable portions of the 2018 CIA Report and (*2*) reconsider its Order otherwise upholding Defendants' "no number, no list" response and require any additional non-exempt, reasonably segregable responsive information to be released. At a minimum, OSJI requests that the Court conduct an *in camera* review of the 2018 CIA Report and a classified *Vaughn* index detailing Defendants' remaining responsive documents to confirm whether there is any other non-exempt, reasonably segregable information that should be disclosed to OSJI.

### III.    CONCLUSION

For the foregoing reasons, OSJI's cross-motion for summary judgment and motion for partial reconsideration should be granted, and Defendants' motion denied.

Date:   New York, NY                                        Respectfully submitted,
      June 7, 2021

                                           /s/ Catherine Amirfar
                                           Catherine Amirfar
                                           Ashika Singh
                                           DEBEVOISE & PLIMPTON LLP
                                           919 Third Avenue
                                           New York, NY  10022
                                           Tel: 212-909-6000
                                           camirfar@debevoise.com
                                           asingh@debevoise.com

                                           Amrit Singh
                                           James A. Goldston
                                           OPEN SOCIETY JUSTICE INITIATIVE
                                           224 West 57th Street
                                           New York, New York 10019
                                           Tel: (212) 548-0600

                                           *Counsel for Plaintiff*