UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OPEN SOCIETY JUSTICE INITIATIVE,

        Plaintiff,

    v.

CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF DEFENSE, NATIONAL SECURITY AGENCY and OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,

        Defendants.

19 Civ. 234 (PAE)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND RECONSIDERATION AND REPLY IN FURTHER SUPPORT OF THE CENTRAL INTELLIGENCE AGENCY'S MOTION FOR SUMMARY JUDGMENT**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
*Counsel for Defendants*

Of Counsel:

PETER ARONOFF
NATASHA W. TELEANU
SARAH S. NORMAND
Assistant United States Attorneys

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT......................................................................................................................2

    I.        The Agencies' No Number, No List Responses Remain Valid..............................2

            A.        Applicable Legal Standards ........................................................................3

            B.        The ODNI Releases Do Not Undermine the Agencies' Rationale for Withholding the Number and Specific Nature of Records Relating to the Killing of Jamal Khashoggi ....................................................................4

            C.        CIA and ODNI Cannot Release Any Information Regarding the Intelligence Withheld Under the No Number, No List Responses..............7

    II.       The CIA Report Is Exempt From Disclosure in Its Entirety .................................10

            A.        The Contents of the CIA Report Have Not Been Officially Disclosed.....10

            B.        The CIA Report Contains No Reasonably Segregable, Non-Exempt Information ................................................................................................12

CONCLUSION............................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                                                                           **PAGE(S)**

*ACLU v. Dep't of State*,
    878 F. Supp. 2d 215 (D.D.C. 2012) .................................................................................. 11

*ACLU v. DoD*,
    492 F. Supp. 3d 250 (S.D.N.Y. 2020) ........................................................................ *passim*

*ACLU v. DoD*,
    901 F.3d 125 (2d Cir. 2018) ................................................................................... 3, 10, 15

*ACLU v. DOJ*,
    681 F.3d 61 (2d Cir. 2012) ..................................................................................... 3, 10, 15

*ACLU v. NSA*,
    925 F.3d 576 (2d Cir. 2019) ............................................................................................ 3, 4

*Bonner v. U.S. Dep't of State*,
    928 F.2d 1148 (D.C. Cir. 1991) .......................................................................................... 3

*Fitzgibbon v. CIA*,
    911 F.2d 755 (D.C. Cir. 1990) .......................................................................................... 14

*Florez v. CIA*,
    829 F.3d 178 (2d Cir. 2016) .......................................................................................... 4, 11

*Henry v. Miller*,
    No. 11 Civ. 1273 (PAE)(SLC), 2020 WL 2132625 (S.D.N.Y. May 5, 2020) .................... 3

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    43 F. Supp. 3d 369 (S.D.N.Y. 2014) .................................................................................. 3

*N.Y. Times v. CIA*,
    965 F.3d 109 (2d Cir. 2020) .......................................................................................... 5, 12

*OSJI v. CIA*,
    __ F. Supp. 3d __, 2020 WL 7231954 (S.D.N.Y. Dec. 8, 2020) ................................. 4, 11

*Osen LLC v. U.S. Cent. Command*,
    969 F.3d 102 (2d Cir. 2020) ....................................................................................... *passim*

*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) .................................................................................... 3, 10, 15

*Wilson v. CIA*,
    586 F.3d 171 (2d. Cir. 2009) ........................................................................... 10, 11, 12

Defendants the Central Intelligence Agency ("CIA") and the Office of Director of National Intelligence ("ODNI," and together with CIA, the "agencies") respectfully submit this memorandum of law in further support of the CIA's motion for summary judgment[1] and in opposition to plaintiff's cross-motions for summary judgment and for reconsideration.

## PRELIMINARY STATEMENT

Plaintiff offers no proper basis to reconsider this Court's December 8, 2020 decision sustaining the agencies' no number, no list responses to the Freedom of Information Act ("FOIA") request. ODNI's declassification and public release of the Director of National Intelligence's assessment of the Saudi government's role in the killing of Mr. Khashoggi (the "2021 Assessment") and the redacted memorandum prepared in February 2020 by the National Intelligence Council (the "2020 NICM," and together with the 2021 Assessment, the "ODNI releases") do not undermine the agencies' continued withholding of information that would reveal the number and nature of responsive records related to the Khashoggi killing. Although the ODNI releases revealed high-level conclusions about the Saudi government's role in the killing, the intelligence underlying those conclusions and the sources or methods used to gather that intelligence were intentionally not disclosed and remain properly classified and protected from disclosure by the National Security Act. To the extent any withheld record(s) may contain information that overlaps with or supports the conclusions in the ODNI releases, the agencies logically and plausibly explain that any such information arises in a materially different context and cannot be released without disclosing classified and statutorily protected information pertaining to intelligence sources and methods.

---

[1] Because plaintiff withdrew its challenge in No. 20 Civ. 6625 to ODNI's redactions to the 2020 National Intelligence Council memorandum, that case has now been dismissed, *see* ECF No. 63, and ODNI's summary judgment motion regarding those redactions is now moot.

Plaintiff fares no better in opposing the CIA's motion for summary judgment with respect to an assessment prepared by the CIA in November 2018 (the "CIA Report"). In its public and classified declarations, the CIA has logically and plausibly explained that the CIA Report is classified and statutorily protected, contains no reasonably segregable, non-exempt information, and therefore is protected from disclosure in its entirety under exemptions 1 and 3. Plaintiff fails to rebut the CIA's showing, and fails to show that any of the information in the CIA Report has been officially disclosed.

The Court should therefore grant the CIA's motion for summary judgment, deny plaintiff's cross-motions for summary judgment and for reconsideration, and dismiss the claims in No. 19 Civ. 234 against CIA and ODNI.

**ARGUMENT**

I. **The Agencies' No Number, No List Responses Remain Valid**

The ODNI releases do not undermine the agencies' rationale for their no number, no list responses to plaintiff's FOIA request. FOIA exemptions are ordinarily assessed based on the facts existing at the time the exemptions are asserted, and the Court already has upheld the agencies' assertions of exemptions 1 and 3 to protect the number of and details about the responsive records. But the agencies' no number, no list responses remain proper even considering the ODNI releases. CIA and ODNI are still unable to describe the volume or nature of any withheld record(s) because that information remains classified and statutorily protected. Nor can the agencies release any information from any withheld record(s) without disclosing classified and statutorily protected information pertaining to intelligence sources and methods. The agencies' justifications for their no number, no list responses remain logical and plausible. *See* ECF Nos. 112-115, 140-142; *see also* Unclassified Declaration of Gregory M. Koch, Chief, Information Management Office, Office of the Director of National Intelligence, dated June 25,

2020 ("Fourth Koch Decl."); Unclassified Supplemental Declaration of Vanna Blaine, Information Review Officer, Central Intelligence Agency, dated June 28, 2021 ("Third Suppl. Blaine Decl."). Accordingly, the agencies' judgments are owed substantial deference and should be upheld. *See ACLU v. DoD*, 901 F.3d 125, 134 (2d Cir. 2018); *ACLU v. DOJ*, 681 F.3d 61, 70-71 (2d Cir. 2012); *Wilner v. NSA*, 592 F.3d 60 76 (2d Cir. 2009).

### A. Applicable Legal Standards

The standard for reconsideration is high: the movant must show an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Henry v. Miller*, No. 11 Civ. 1273 (PAE)(SLC), 2020 WL 2132625, at *2 (S.D.N.Y. May 5, 2020) (quotation marks omitted); *accord In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014).

Plaintiff contends that the ODNI releases constitute "new evidence" warranting reconsideration. But FOIA exemptions are generally assessed based on the facts and circumstances at the time the exemption was asserted, not some later date. *See, e.g.*, *ACLU v. NSA*, 925 F.3d 576, 602 (2d Cir. 2019). The alternative—"[t]o require an agency to adjust or modify its FOIA responses based on post-response occurrences"—could "create an endless cycle of judicially mandated reprocessing." *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991). Indeed, the Second Circuit recently reaffirmed this general rule, instructing that "a court reviewing a FOIA decision must not order reprocessing simply to reassure itself that a correct decision remains current." *ACLU v. NSA*, 925 F.3d at 602.

Any record(s) possessed by CIA and ODNI when they responded to plaintiff's FOIA request, and details about them, were properly classified at the time the agencies issued their no number, no list responses. Fourth Koch Decl. ¶¶ 4-5; Third Suppl. Blaine Decl. ¶¶ 4-5; *see*

3

*generally* Public Gaviria Decl. (ECF No. 113); Shiner Public Decl. (ECF No. 112). The DNI's subsequent declassification and release of the 2021 Assessment and the redacted 2020 NICM do not constitute "new evidence" to be considered on reconsideration. Under the general rule, the ODNI releases are legally irrelevant to the question before the Court, which is whether the agencies' no number, no list responses were justified at the time they were asserted. *ACLU v. NSA*, 925 F.3d at 602. The Court has already held that they were. *OSJI v. CIA*, __ F. Supp. 3d __, 2020 WL 7231954, at *8 (S.D.N.Y. Dec. 8, 2020).

Even if the ODNI releases are considered, plaintiff still fails to show that they undermine the agencies' rationale for the no number, no list responses, or the Court's holding that those responses were justified. Plaintiff has not offered any evidentiary basis for reconsideration because the ODNI releases purposely did not disclose any information about the volume or specific nature of the CIA's or ODNI's intelligence records.

### B. The ODNI Releases Do Not Undermine the Agencies' Rationale for Withholding the Number and Specific Nature of Records Relating to the Killing of Jamal Khashoggi

Contrary to plaintiff's assertion, the ODNI releases do not "shift[] the factual groundwork" underlying the no number, no list responses and the Court's previous decision to uphold them. Pl.'s Br. at 22 (citing *Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016), and *ACLU v. DoD*, 492 F. Supp. 3d 250, 267-68 (S.D.N.Y. 2020)). Nothing in the ODNI releases reveals the volume or specific nature of the intelligence in the possession of CIA or ODNI. Indeed, plaintiff recognizes that the 2021 Assessment principally consists of a conclusion, the "high-level rationale" for that conclusion, and a list of individuals believed to be involved in the operation. *See* Pl.'s Br. at 5-6. Neither the 2021 Assessment nor the redacted 2020 NICM officially acknowledge the existence of any other specific records, much less the volume, dates, or other specific details about the intelligence possessed by the Intelligence Community ("IC")

concerning Mr. Khashoggi's killing. *Compare N.Y. Times v. CIA*, 965 F.3d 109, 116–117 (2d Cir. 2020) ("Even assuming *arguendo* that President Trump's statements revealed the general existence of the alleged covert program, a *Glomar* response is still appropriate if none of the relevant statements officially acknowledged the existence or nonexistence of specific records."), *with ACLU v. DoD*, 492 F. Supp. 3d at 267-68 (holding that the agencies' *Glomar* response was no longer logical and plausible in light of disclosure of DoD report that specifically referenced the updated presidential guidance plaintiffs sought in FOIA requests).

To the contrary, as the CIA and ODNI declarants attest, the withheld intelligence records, and details about them, remain properly classified and protected from disclosure by the National Security Act. *See* Fourth Koch Decl. ¶¶ 4-8; Third Suppl. Blaine Decl. ¶¶ 4-6, 9. For the same reasons previously articulated by CIA and ODNI, the agencies remain unable to identify the volume of intelligence that the CIA and ODNI possess about the killing, or any specific information about the responsive intelligence records in their possession—such as dates, document titles, senders, recipients, and subject matters—because that information would reveal the nature and sources and methods of the underlying intelligence. Fourth Koch Decl. ¶¶ 4-7; Third Suppl. Blaine Decl. ¶¶ 6, 11; *see generally* Public Gaviria Decl. (ECF No. 113); Shiner Public Decl. (ECF No. 112); Public Koch Decl. (ECF No. 140) and classified submissions (ECF Nos. 114, 115, 141, 142). Disclosure of such information would reveal, among other things, which IC elements were involved in the intelligence collection, reporting, and analysis at issue, which remains classified and statutorily protected. Fourth Koch Decl. ¶¶ 4-9; *see* Third Suppl. Blaine Decl. ¶ 4 ("[P]roviding Plaintiff with information relating to the nature and volume of CIA's responsive holdings would reveal the metes and bounds of the Agency's intelligence priorities and capabilities, as well as sensitive details about the CIA's intelligence methods and

5

activities (or lack thereof) with respect to the areas of the world and the underlying events at issue."); *see also* Shiner Public Decl. ¶ 16; Public Gaviria Decl. ¶¶ 29-30.

As an example, whether the National Security Agency ("NSA") collected any signals intelligence about the killing is classified and statutorily protected; accordingly, NSA previously asserted a *Glomar* response to the FOIA request, which Plaintiff did not challenge. Fourth Koch Decl. ¶ 8; *see* ECF No. 104 (stipulation and order of dismissal of NSA). But if ODNI were to provide an accounting of the responsive records in its possession, that would reveal whether ODNI obtained any such intelligence from NSA about the killing. Fourth Koch Decl. ¶ 8. Public disclosure of NSA's ability or inability to collect specific communications, or the substance of the information that NSA collects, would provide targets with information about whether their communications are vulnerable to NSA collection. *Id.* Public disclosure of even a single collected communication has the potential to reveal the intelligence collection techniques that are applied against targets around the world. *Id.*

Nothing in the ODNI releases disclosed this information. To the contrary, as ODNI has explained, the 2021 Assessment was intentionally drafted to avoid disclosing intelligence sources or methods. Fourth Koch Decl. ¶ 9; Third Koch Decl. ¶ 10. ODNI similarly withheld information from the 2020 NICM that would reveal intelligence sources and methods, and plaintiff has elected not to challenge those withholdings. *See* Third Koch Decl. ¶¶ 7, 20-25; *see also supra* n.1. As ODNI explains, the 2021 Assessment and 2020 NICM do not contain any information about the specific intelligence sources and methods relied on for the statements or conclusions contained in the ODNI releases. *See* Fourth Koch Decl. ¶ 9. For example, the ODNI releases do not disclose: (1) whether and what type of intelligence was used in the creation of either document; (2) which government agencies, if any, were involved in their creation; (3) the origin

6

of the intelligence; (4) the time of its collection; or (5) any indication of the volume or nature of intelligence on the subject matter that was possessed or known to ODNI or the larger IC. *Id.*; *see also* Third Suppl. Blaine Decl. ¶ 7. Disclosure of a Vaughn index of the records that CIA or ODNI identified as responsive to the FOIA request would risk disclosure of these classified and statutorily protected facts. Fourth Koch Decl. ¶ 4; Third Suppl. Blaine Decl. ¶¶ 5-6, 7-10.

Likewise, the ODNI releases do not reveal anything about the nature or volume of CIA's classified intelligence holdings at or around the time of the incident, or the extent to which CIA did or did not gather specific intelligence in the aftermath of Khashoggi's death. Third Suppl. Blaine Decl. ¶ 8. Because the ODNI releases do not identify which IC agency or agencies gathered the underlying intelligence supporting the facts and conclusions in the 2021 Assessment and redacted 2020 NICM, CIA can neither confirm nor deny whether or to what extent it possesses specific intelligence information underlying the ODNI releases without harming national security by revealing CIA's particular intelligence interests, capabilities, or potential gaps in collection as related to the events at issue. *Id.* ¶ 10. Disclosing portions or descriptions of CIA's classified intelligence holdings related to the death of Mr. Khashoggi would in fact reveal significant intelligence information never previously disclosed or acknowledged by the CIA or ODNI. *Id.* ¶ 8.

### C. CIA and ODNI Cannot Release Any Information Regarding the Intelligence Withheld Under the No Number, No List Responses

Contrary to plaintiff's suggestion, the ODNI releases do not allow the agencies to "segregate" non-exempt information in, or provide information about the number or nature of, any withheld record(s). Although the conclusions in the 2021 Assessment and the 2020 NICM have been declassified, the intelligence record(s) from which those conclusions were derived have not been declassified. Fourth Koch Decl. ¶ 11; *see also* Third Suppl. Blaine Decl. ¶ 9. Even

7

if any withheld record(s) contained information that was similar to, or supported, the conclusions in the ODNI releases, it would be impossible for the agencies to segregate and release such information without disclosing information that remains protected by exemptions 1 and 3.

There is a significant difference in the nature and timeframe between the documents gathered in response to the FOIA request and the ODNI releases. The information disclosed in the ODNI releases reveals high-level conclusions of the IC regarding a particular topic—the Saudi government's responsibility for the Khashoggi killing—as of 2020 and 2021. In contrast, plaintiff's December 2018 FOIA request sought all records relating to the killing, and the agencies' searches were completed by May 2019. *See* ECF No. 1 (Compl.) ¶ 25; Shiner Public Decl. (ECF No. 112) ¶¶ 9-11; Public Gaviria Decl. (ECF No. 113) ¶¶ 16-24. As the CIA has explained with respect to the CIA Report, the timing difference here is material. Providing a Vaughn index of the agencies' holdings would provide information about what specific information, and through what sources, the IC was able to gather intelligence regarding the killing over time. *See* Fourth Koch Decl. ¶¶ 4, 9-10; Third Suppl. Blaine Decl. ¶¶ 6, 8-9. In the national security context, understanding the government's intelligence capabilities and collection capacity at a given point in time could allow foreign intelligence services and adversaries to exploit perceived weaknesses and harm the national security. *See, e.g.*, Shiner Public Decl. ¶¶ 16-17.

Moreover, disclosing the number of times certain information exists in either the CIA or ODNI's records could reasonably be expected to reveal information about the IC agencies' sources and methods used in acquiring this intelligence as well as the apportionment of IC resources, relationships with foreign entities, strengths and weaknesses in collection capacity, and/or resources available to the IC that allowed it to obtain the intelligence. Third Suppl. Blaine

Decl. ¶ 5; *see also* Fourth Koch Decl. ¶¶ 4-5, 7 & 6 ("[S]uch information could describe particular intelligence interests of the U.S. Government…. As the head of the IC, particular topics that are of interest to the DNI would be revealing of the DNI's and the U.S. Government's intelligence objectives. Such a revelation, through the disclosure of details about the withheld information, including the nature and volume of responsive information generally, could reasonably be expected to cause irreparable harm and impair the DNI and the IC's ability to carry out its core functions by revealing the subjects and areas of interest, and the depth of the IC's knowledge therein."). To illustrate, if CIA were to possess intelligence collection or analyses bearing on the information in the ODNI releases in the immediate aftermath of Mr. Khashoggi's death, such records would reveal significant, previously unacknowledged information about CIA's intelligence-gathering posture in the region, as well as its capabilities. Third Suppl. Blaine Decl. ¶ 9. A Vaughn index could reveal what gaps may have existed at different times or may continue to exist. *See* Fourth Koch Decl. ¶ 11 ("[I]t is not possible to segregate non-exempt information because producing redacted versions would reveal exempt information, including information about the volume of intelligence, intelligence sources and methods, and intelligence gaps."); Third Suppl. Blaine Decl. ¶¶ 10-11. The type of information in a Vaughn index in the context of plaintiff's request would be particularly revealing of CIA's intelligence-gathering sources and capabilities; adversaries would undoubtedly take great interest in understanding the extent to which the CIA was or was not able to gather information relating to Mr. Khashoggi's death in the immediate aftermath and thereafter. *Id.* ¶ 6. The disclosure of such information relating to CIA sources and methods could permit foreign intelligence services and other groups to disrupt CIA activities and/or exploit perceived weaknesses, thereby

9

compromising intelligence operations and impairing the national security of the United States. *Id.*

Thus, even if any record(s) withheld by CIA or ODNI contained information that was similar to, or supported, the conclusions in the ODNI releases, it would not match the information in the ODNI releases. *See Osen LLC v. U.S. Cent. Command*, 969 F.3d 102, 112 (2d Cir. 2020); *Wilson v. CIA*, 586 F.3d 171, 186 (2d. Cir. 2009). The material differences in the nature of any record(s), the timing of their creation, and the information that could be gleaned from releasing the volume of records on particular subjects would reveal far more about the IC's sources and methods than the high-level conclusions revealed in the 2021 Assessment and redacted 2020 NICM.

The limited and calibrated releases of the 2021 Assessment and the redacted 2020 NICM do not obviate the risks to national security if the details protected by the no number, no list response are disclosed. Fourth Koch Decl. ¶¶ 4-7; Third Suppl. Blaine Decl. ¶¶ 4-6. Plaintiff's efforts to minimize these harms are conclusory and unsupported. The agencies' justifications for their no number, no list responses remain logical and plausible, and therefore are entitled to substantial deference and should be upheld. *See ACLU v. DoD*, 901 F.3d at 134; *ACLU v. DOJ*, 681 F.3d at 69-71; *Wilner*, 592 F.3d at 76.

## II. The CIA Report Is Exempt From Disclosure in Its Entirety

Plaintiff fails to rebut the CIA's logical and plausible showing that the CIA Report is classified and protected from disclosure by the National Security Act, contains no reasonably segregable non-exempt information, and is therefore protected by exemptions 1 and 3 in its entirety.

### A. The Contents of the CIA Report Have Not Been Officially Disclosed

As logically and plausibly established in the CIA's public and classified declarations, the CIA Report is classified and protected by the National Security Act in its entirety. Unable to overcome this showing by CIA, plaintiff argues that various statements by former President Trump, former CIA Director Haspel, Senator Reed, and purported leaks to the media, amount to official disclosures of the contents of the CIA Report. Pl.'s Br. at 7-8, 16-17. These arguments are unavailing.

This Court has already rejected plaintiff's argument that statements of former President Trump and former Director Haspel officially acknowledged the contents of the CIA Report. While the Court concluded that "Director Haspel's remarks and the President's statements supply an official acknowledgment that the CIA created a written product analyzing Khashoggi's killing," the Court held that the disclosures extended only to the subject matter of the written products and the agency that produced the report, and the official statements did not "go beyond these data points." *OSJI*, 2020 WL 7231954, at *11. In particular, the Court held that nothing the President said compelled the disclosure of the CIA Report's "actual findings" or "ultimate conclusion," *see id.* at *12. Plaintiff's reliance on the prior statements of Director Haspel and President Trump fares no better now.

Nor can statements by Senator Reed or supposed leaks to the media serve as official disclosures of the CIA or ODNI as to the purported contents of the CIA Report. Pl's Br. at 17. The Second Circuit has made clear that "the law will not infer official disclosure of information classified by the CIA from . . . release of information by . . . Congress." *Wilson*, 586 F.3d at 186-87; *accord Florez*, 829 F.3d at 195. Moreover, none of the cited statements by Senator Reed even refers to a November 2018 CIA Report, let alone purports to disclose its contents. Likewise, "press reports" cannot "officially disclose properly classified information." *Wilson*, 586 F.3d at

87; *see also ACLU v. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.D.C. 2012) (leaks are "no substitute for an official acknowledgment").

Thus, the only official disclosures at issue are contained within the 2021 Assessment and the redacted 2020 NICM. But as the CIA has logically and plausibly explained, the ODNI releases are not as specific as, and do not match, the information in the CIA Report, which discusses specific intelligence available to the agency as of November 2018 and the particular sources and methods from which that intelligence was derived. *See* Suppl. Blaine Decl. ¶¶ 10, 14-15 & Classified Suppl. Blaine Decl.; *see also Osen*, 969 F.3d at 112; *Wilson*, 586 F.3d at 186.

### B. The CIA Report Contains No Reasonably Segregable, Non-Exempt Information

The CIA is unable to release any portion of the CIA Report because doing so would reveal classified and statutorily protected information pertaining to intelligence sources and methods. *See* Gov't Br. at 19-25. Plaintiff's argument to the contrary is entirely speculative and unsupported.

As an initial matter, plaintiff relies on conjecture and inferences to conclude that "[t]here must necessarily be information in the 2018 CIA Report that is at least as specific as, and that matches" the 2021 Assessment and the redacted 2020 NICM. *See* Pl.'s Br. at 15-16. But conjecture and inference do not constitute official acknowledgment. Instead, an official acknowledgment must "remove all doubt" about the information acknowledged. *See N.Y. Times v. CIA*, 965 F.3d at 118 (holding that a set of statements by various government officials did not create an official acknowledgment because "even packaged together, [they] do not remove *all* doubt" that a program existed, and rejecting the requester's invitation "to draw inferences" from the statements).

Indeed, plaintiff's inferences are contradicted by the record. Plaintiff assumes that all three documents are "equally specific." Pl.'s Br. at 15. But as discussed in the CIA's unclassified

declaration (and further detailed in the classified declaration), the CIA Report contains "a different level of specificity, including discussion of specific intelligence sources and methods," as well as "other differences." Suppl. Blaine Decl. ¶ 15.[2] Although the CIA cannot describe the precise scope of or topics addressed in the CIA Report without revealing exempt information, *see* Suppl. Blaine Decl. ¶ 15 n.2, the 2021 Assessment and redacted 2020 NICM do not identify the sources and methods of the information contained in each document, whereas such information is contained in the CIA Report, *see id.* ¶ 15. Thus, the fact that the CIA Report addresses "the same subject matter" as the ODNI releases, *see* Suppl. Blaine Decl. ¶ 15, does not "shift the factual groundwork," Pl.'s Br. at 25-26, or render the CIA's withholding illogical or implausible.

To the extent plaintiff criticizes the level of detail in the CIA's public declaration, the agency respectfully refers the Court to the CIA's classified declaration for additional detail. *See* Pl.'s Br. at 28-30. The CIA's public and classified declarations establish that the CIA's withholding of the CIA Report in full is logical and plausible, and plaintiff's arguments to the contrary fail to demonstrate otherwise.

In short, there have been no official disclosures regarding the contents of the CIA Report, and "widespread public knowledge" of the high-level conclusions contained in the 2021 Assessment and redacted 2020 NICM, Pl.'s Br. at 26, does not waive the CIA's justifications for withholding the CIA Report in full. Because of the differences in the nature and specificity of the records, and the time of their creation, even if the CIA Report contained information that

---

[2] Plaintiff appears to suggest that the similar lengths of the CIA Report, the 2021 Assessment, and the 2020 NICM—all of which are two or three pages—demonstrate that these documents contain similar levels of specificity. *See* Pl.'s Br. at 16. However, plaintiff provides no explanation for why this must be so and, in any event, this claim is dispelled by the CIA's declarations. *See, e.g.*, Suppl. Blaine Decl. ¶ 15.

13

overlaps with information in the ODNI releases, that information would not match. *See Osen*, 969 F.3d at 112. And the agencies have attested that any such information could not be released without revealing classified and statutorily protected information pertaining to sources and methods. Suppl. Blaine Decl. ¶¶ 14-15, 19; Fourth Koch Decl. ¶¶ 10-11.

Plaintiff attempts to diminish the national security harms from disclosure by arguing that too little time has elapsed between the November 2018 CIA Report and the ODNI releases to constitute a meaningful difference in context. *See* Pl.'s Br. at 17-18. But plaintiff offers no legal or factual basis to draw such a bright line rule. Instead, the inquiry is fact-specific. Here, the CIA has logically and plausibly explained why the passage of time creates a material difference in context. The CIA has identified specific and concrete examples of why disclosure of the nature, volume, and timing of the intelligence information available to the agency as of November 2018 would reveal the extent of the CIA's information and collection capabilities and cause exceptionally grave harm to national security. *See* Suppl. Blaine Decl. ¶ 10. If the CIA were to release a "snapshot" of what the agency knew in November 2018—as compared to what ODNI has assessed, and disclosed, as of 2020 and 2021—it would reveal "how quickly the Agency was able to mobilize [its clandestine intelligence] capabilities to collect or corroborate information, and potential gaps in the CIA's information and collection capabilities." *Id.*; *see also Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("[T]he fact that information resides in the public domain does not eliminate the possibility that further disclosures can cause harm to intelligence sources, methods, and operations."). It is entirely logical and plausible that disclosing what the CIA may or may not have known only weeks after the killing is meaningfully different from disclosing what the IC eventually came to learn more than a year later—and that disclosure of the immediate snapshot could disclose information about intelligence sources and methods.

14

The Court should therefore accord substantial deference to the CIA's judgment that the CIA Report must be withheld in its entirety to protect intelligence sources and methods from unauthorized disclosure. *See ACLU v. DoD*, 901 F.3d at 134; *ACLU v. DOJ*, 681 F.3d at 70-71; *Wilner*, 592 F.3d at 76.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the agencies' public and classified declarations, the CIA's motion for summary judgment should be granted, plaintiff's cross-motions for summary judgment and for reconsideration should be denied, and the claims against the CIA and ODNI in these actions should be dismissed.

Dated: June 28, 2021
       New York, New York

Respectfully submitted,

AUDREY STRAUSS
United States Attorney
Southern District of New York

By:   */s/ Natasha W. Teleanu*
PETER ARONOFF
NATASHA W. TELEANU
SARAH S. NORMAND
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Telephone: (212) 637-2697/2528/2709
Facsimile: (212) 637-2717
E-mail: peter.aronoff@usdoj.gov
       natasha.teleanu@usdoj.gov
       sarah.normand@usdoj.gov