UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OPEN SOCIETY JUSTICE INITIATIVE,

                              Plaintiff,

        -v-

CENTRAL INTELLIGENCE AGENCY, et al.,

                              Defendants.

19 Civ. 234 (PAE)
19 Civ. 1329 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This case involves Freedom of Information Act ("FOIA") requests by the Open Society Justice Initiative ("OSJI") to various federal agencies seeking information regarding the murder of Jamal Khashoggi, a U.S. resident, Saudi Arabian national, and *Washington Post* columnist who was killed within the Saudi consulate in Istanbul, Turkey on October 2, 2018. *See* Dkt. 1[1] ("Compl.") ¶ 9. Pending now are cross-motions for summary judgment by two defendants—the Central Intelligence Agency ("CIA") and the Office of the Director of National Intelligence ("ODNI")—and by OSJI under Federal Rule of Civil Procedure 56. OSJI also moves for partial reconsideration of the Court's December 8, 2020 Opinion. Dkt. 176 ("Dec. Op.").

For the reasons that follow, the Court grants defendants' motion for summary judgment and denies OSJI's motions.

---

[1] These consolidated cases include 19 Civ. 234 and 19 Civ. 1329. Unless otherwise specified, citations here to the docket refer to the docket in lead case 19 Civ. 234.

1

## I. Background[2]

### A. Factual Background

On October 2, 2018, Khashoggi entered the Saudi consulate in Istanbul. Dec. Op. at 2. He never left alive. On October 19, 2018, the Saudi Government acknowledged that Khashoggi had been killed inside the consulate. *Id.*

### B. Brief History of This Litigation

#### 1. Events Preceding the Government's Recent Disclosures Regarding The Khashoggi Killing

On December 4, 2018, OSJI filed the FOIA requests at issue. *See* Compl. ¶ 25. OSJI filed these with seven federal agencies, including the CIA and ODNI, requesting in each "all records relating to the killing of U.S. resident Jamal Khashoggi, including but not limited to the CIA's findings on and/or assessment of the circumstances under which he was killed and/or the identities of those responsible." *Id.*

On January 9, 2019, after no agency had released responsive records, OSJI filed this lawsuit against all seven agencies, seeking orders directing compliance with its FOIA requests. *See* Compl. On March 18, 2019, defendants answered. Dkt. 24. On April 23, 2019, the Court issued an order governing record production. Dkt. 30. By May 10, 2019, the CIA and ODNI

---

[2] The Court draws its account of the underlying facts—which focuses solely on the FOIA requests to the CIA and ODNI—from the parties' respective motions for summary judgment, the unclassified declaration of Gregory M. Koch, Chief of ODNI's Information Management Office, in support of the agencies' motion, Dkt. 216 ("Public Koch Decl."); the unclassified declaration of Vanna Blaine, the CIA's Information Review Officer for its Litigation Information Review Office, Dkt. 217 ("Public Blaine Decl."); the agencies' memorandum of law, Dkt. 215 ("Gov't Mem."), and classified filings in support of their motion; OSJI's brief in opposition to that motion and in support of its motions, Dkt. 221 ("OSJI Mem."); the agencies' memorandum of law in opposition to OSJI's motions and reply in support of their motion, Dkt. 230 ("Gov't Opp'n"); and OSJI's reply, Dkt. 237 ("OSJI Reply").

2

had completed searches for potentially responsive records. Dkts. 30, 43, 49. Between July 1 and August 7, 2019, the CIA produced 217 responsive documents, all from its press office. Dec. Op. at 4. By letter, the CIA notified OSJI that any other responsive records and descriptive information about such records were classified and covered by one or more FOIA exemptions. *Id.* Between June 28 and August 5, 2019, ODNI similarly produced 48 responsive documents, each from its press office. *Id.* ODNI sent a similar letter to OSJI stating that any remaining responsive records, and descriptive information about them, were covered by FOIA exemptions. *Id.* at 9–10.

On December 9, 2019, the CIA and ODNI filed a joint motion for summary judgment. *See* Dkts. 111–13. They argued that the responsive material they had withheld fell within FOIA Exemptions 1 and 3, and that portions were subject to Exemptions 5 and 6. *See* Dkt. 116. And, they argued, because further detail including the nature and volume of the withheld records was itself classified and protected from disclosure, the agencies could provide only a collective "no number, no list" response to the request for these records. *Id.* at 2.

On January 21, 2020, OSJI filed a cross-motion for summary judgment. *See* Dkts. 123–127. It argued that the agencies' "no number, no list" response was improper, in particular, because, it claimed, some information the agencies proposed to withhold was already a matter of public record, having been disclosed by U.S. government officials. Dkt. 124. OSJI asked the Court to order the CIA and ODNI to produce a *Vaughn* index that enumerated and described each withheld record. They specifically argued that such an index should list a tape recording of Khashoggi's killing, the CIA report assessing responsibility for the murder, and the conclusion of that report, all of which, OSJI claimed, government officials had already acknowledged. *Id.*; Dkt. 147.

3

On October 15, 2020, after a delay prompted by the COVID-19 public health crisis, the Court held argument. On December 8, 2020, the Court issued a decision granting in part and denying in part each side's motion for summary judgement. Dkt. 176 ("Dec. Op."). The Court ordered the CIA and ODNI to produce a limited *Vaughn* index, consisting of two items, the tape of Khashoggi's killing and the CIA's report on that killing, whose existence and possession, the Court found, the agencies to have officially acknowledged. *Id.*

On January 5, 2021, the CIA and ODNI moved for partial reconsideration of the portion of the ruling that directed them to list on a *Vaughn* index the tape of the Khashoggi killing. Dkt. 179. They argued that the Court had misapplied the law as to when official acknowledgments preclude either a *Glomar* or no number, no list response, and that producing a *Vaughn* index as to the tape would harm national security and reveal undisclosed information about intelligence sources and methods. *Id.* at 1–2. In support of the latter argument, the Government filed what it publicly termed "supplemental classified declarations providing additional detailed information as to why producing a *Vaughn* index confirming or denying whether or not CIA or ODNI has a tape of the killing would reveal undisclosed classified information about intelligence sources and methods, causing harm to national security, notwithstanding the public." *Id.* at 2; *see* Dkt. 181.

On February 25, 2021, after reviewing the new classified submissions, the Court scheduled an *ex parte* classified hearing. Dkt. 200. After the hearing, on March 9, 2021, the Court issued an order granting "the Government's motion for partial reconsideration insofar as the Government argued, on the basis of its newly filed classified submissions, that issuing a *Vaughn* index with respect to whether or not the agencies possess a tape 'could cause specific and identifiable harms to national security.'" Dkt. 202. The Court had put its reasoning in support of this conclusion on the record of the classified hearing. The Court accordingly relieved

4

the agencies of the obligation to file a *Vaughn* index with respect to the tape. *Id.*[3] On March 10, 2021, the CIA provided OSJI with a *Vaughn* index listing, as withheld in full, the "CIA assessment relating to the killing of Jamal Khashoggi" (the "CIA Report"). Dkt. 204.

### 2.  The Government's 2021 Public Disclosures

On February 11, 2021, ODNI declassified and publicly released a report entitled *Assessing the Saudi Government's Role in the Killing of Jamal Khashoggi* (the "2021 Assessment"). 20 Civ. 6625, Dkt. 63. Further, on March 19, 2021, ODNI released to OSJI a redacted version of the memorandum prepared by the National Intelligence Counsel in February 2020 (the "2020 NICM"). *Id.*

On March 24, 2021, the Court held a status conference, at which OSJI expressed its intent to challenge the CIA's withholding of the CIA Report in full and the ODNI's partial withholding of the 2020 NICM, and—in light of the Government's recent public disclosures—to move for reconsideration of the Court's December 8, 2020 Opinion and Order to the extent it had upheld the CIA and ODNI's "no number, no list" responses to OSJI's FOIA request. *See* Dkt. 207. On March 30, 2021, the Court issued an order scheduling the anticipated cross-motions for summary judgment as to the CIA's withholding of the CIA Report in full and ODNI's partial withholding of the 2020 NICM, and for OSJI's motion for partial reconsideration. Dkt. 204.

On May 10, 2021, the CIA and ODNI filed a motion for summary judgment, Dkt. 214, a memorandum of law in support, Dkt. 215 ("Gov't Mem."), unclassified declarations in support, Dkts. 216–17, and *ex parte* classified declarations in support, Dkt. 218. The Government argued

---

[3] The Court, however, denied "the Government's motion for partial reconsideration insofar as the Government argued that the Court had erred in finding that official statements as to the agencies' possession of the tape constituted an official acknowledgment, precluding the agencies from making a Glomar response." Dkt. 202.

5

that under FIOA Exemptions 1 and 3, ODNI had properly withheld in part the 2020 NICM and the CIA had properly withheld in full the CIA Report.

On June 7, 2021, after a review of ODNI's summary judgment motion and supporting papers, OSJI determined not to challenged ODNI's remaining withholdings from the 2020 NICM. The parties stipulated that ODNI's productions to OSJI fully resolved all claims that OSJI had arising out of its FOIA request. 20 Civ. 6625, Dkt. 63; OSJI Mem. at 11 n.19. As a result, the Court dismissed, on consent, the case pending at 20 Civ. 6625 (PAE).

On June 7, 2021 OSJI filed a cross-motion for summary judgment, Dkt. 220, a motion for partial reconsideration, Dkt. 225, a memorandum of law in support, Dkt. 226 ("OSJI Mem."), and supporting declarations, Dkts. 223–24, 227. OSJI there asks the Court to grant it summary judgment with respect to the withholding in full of the CIA Report. OSJI also argues that ODNI's release of a declassified intelligence assessment on February 26, 2021 about Khashoggi's murder warrants a partial reconsideration of the Court's decision to permit a limited "no number, no list" response. OSJI Mem. at 14. OSJI asks that, at a "minimum," the Court "conduct an *in camera* review of the 2018 CIA Report and order production of a classified *Vaughn* index of the remaining responsive documents," to enable a determination whether the newly released documents mandate additional disclosures. *Id.*

On June 28, 2021, the CIA and ODNI filed an opposition to OSJI's motions and a reply in further support of the CIA's summary judgment motion. Dkt. 230 ("Gov't Opp'n"). On July 19, 2021, OSJI filed a reply in support of its motions. Dkt. 237 ("OSJI Reply").

Accordingly, now pending are (1) cross-motions for summary judgment with respect to the full withholding of the 2018 CIA Report, and (2) OSJI's motion for reconsideration of the Court's earlier decision to the extent it permitted a limited "no number, no list" response.

6

## II. Applicable Legal Standards

### A. Standards Governing Motions to Reconsider

OSJI's motion for reconsideration is governed by Federal Rules of Civil Procedure 59(e) and 60(b), and S.D.N.Y. Local Civil Rule 6.3. District courts "ha[ve] broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). A motion to reconsider "is not a motion in which a movant may reargue those issues already considered when a party does not like the way the original motion was resolved." *Evolution Fast Food Gen. P'ship v. HVFG, LLC*, No. 15 Civ. 6624 (DAB), 2018 WL 1779377, at *2 (S.D.N.Y. Mar. 28, 2018) (quotations omitted). "The major grounds for justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *In re Pishevar*, No. 19 Misc. 503 (JGK) (SDA), 2020 WL 1862586, at *2 (S.D.N.Y. Apr. 14, 2020) (quoting *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011)).

### B. Standards Governing Summary Judgment Motions

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 US. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may

7

not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### C. Summary Judgment Motions Under FOIA

FOIA governs public access to information held by the federal government. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quotations omitted). However, "Congress realized that legitimate governmental and private interests could be harmed by release of certain types of information, and therefore provided the specific exemptions under which disclosure could be refused." *Id.* (quotations omitted). "Recognizing past abuses, Congress sought to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *Id.* (quotation omitted).

"FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Id.* (quotations and

8

citations omitted). "The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009). Courts review the adequacy of the agency's justifications *de novo*. *Id.* Even where portions of a responsive record are properly exempt, the agency must "take reasonable steps necessary to segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii)(II); *see FBI v. Abramson*, 456 U.S. 615, 626 (1982).

Summary judgment is the usual means by which a court resolves a challenge to a government agency's FOIA response. *See, e.g., Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994); *Johnson v. CIA*, No. 17 Civ. 1928 (CM), 2018 WL 833940, at *2 (S.D.N.Y. Jan. 30, 2018). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wilner*, 592 F.3d at 73 (quotation omitted). An agency's affidavits in support of its nondisclosure are "accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (quotations omitted). However, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden." *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wilner*, 592 F.3d at 73 (citation omitted). Courts are to take a more "deferential posture in FOIA cases regarding the uniquely executive purview of national security" and accord "substantial weight" to agencies' declarations predicting harm to national security. *Id.* at 73, 76 (quotations omitted); *see also Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (where agency affidavits appear sufficient, "the court is not

to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency").

### 1. *Vaughn* Indexes, *Glomar* Responses, and "No Number, No List" Responses

"Once a FOIA request has been made for documents, the preparation of a *Vaughn* index is now an accepted method for the Government to identify responsive documents and discharge its obligation to assert any claimed FOIA exemptions to the various documents withheld." *N.Y. Times Co. v. U.S. Dep't of Justice* ("*N.Y. Times II*"), 758 F.3d 436, 438 (2d Cir.), *supplemented*, 762 F.3d 233 (2d Cir. 2014). "A *Vaughn* index typically lists the titles and descriptions of the responsive documents that the Government contends are exempt from disclosure." *Id.* at 438–39; *see Citizens for Resp. and Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) ("Agency affidavits sometimes take the form of a '*Vaughn* index,' but there is 'no fixed rule' establishing what such an affidavit must look like.") (citation omitted)). "[T]he index gives the court and the challenging party a measure of access without exposing the withheld information." *N.Y. Times II*, 758 F.3d at 439 (alteration in original) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006)). And "it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Id.* (quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

"[P]reparation of a *Vaughn* index is not required," however, if, in response to a FOIA request, an agency issues what is known as a *Glomar* response. *Id.* at 438 n.3. In a *Glomar* response, the agency "refus[es] to confirm or deny the existence of requested records because acknowledging even the existence of certain records would reveal information entitled to be protected." *Id.* But an agency "loses its ability to provide a *Glomar* response when the

10

existence or nonexistence of the particular records covered by the *Glomar* response has been officially and publicly disclosed." *Wilner*, 592 F.3d at 70. An official acknowledgement can occur directly or indirectly, the latter occurring when the "substance of an official statement and the context in which it is made permits the inescapable inference that the requested records in fact exist." *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 22 (D.D.C. 2018). A Court can simply infer from an agency's repeated public statements about a government program that the agency possesses at least some documents related to that program. *See Am. C.L. Union v. CIA* ("*ACLU v. CIA*"), 710 F.3d 422, 431 (D.C. Cir. 2013) (Garland, C.J.).

Where an official acknowledgment prevents an agency from providing a *Glomar* response, agencies in certain recent cases have declined to file a *Vaughn* index describing the withheld records. They have instead submitted "a 'no number, no list' response," in which the agency "acknowledge[s] that it ha[s] responsive documents, but declin[es] to further describe or even enumerate on the public record the number, types, dates, or other descriptive information about these responsive records." *Id.* at 433 (quotations omitted). Unlike a *Glomar* response, which "requires the agency to argue, and the court to accept, that the very fact of the existence or nonexistence of responsive records is protected from disclosure," a "no number, no list" response enables the agency to acknowledge that it possesses some documents, while arguing "that any description of those documents would effectively disclose validly exempt information." *Id.* However, "[a]n agency may [only] withhold information on the number of responsive documents and a description of their contents if those facts are protected from disclosure by a FOIA exemption." *N.Y. Times Co. v. U.S. Dep't of Justice* ("*N.Y. Times I*"), 756 F.3d 100, 122 (2d Cir.), *opinion amended on other grounds*, 758 F.3d 436 (2d Cir.), *supplemented on other grounds*, 762 F.3d 233 (2d Cir. 2014). And, "[s]uch a response would

only be justified in unusual circumstances, and only by a particularly persuasive affidavit." *Id.* (quoting *ACLU v. CIA*, 710 F.3d at 433).

### 2. FOIA Exemptions 1 and 3

Here, the Government bases its argument that a "no number, no list" response is justified on FOIA Exemptions 1 and 3. The Court has previously set out the standards governing these exemptions, Dec. Op. at 10–14, 25–26, and incorporates that discussion by reference, including its discussion of the Executive Order, E.O. 13,526, on which the agencies rely in invoking Exemption 1, and the provision of the National Security Act, § 3024, on which they rely invoking Exemption 3.

## III. Discussion

Three motions are pending: the cross-motions for summary judgment with respect to the full withholding of the 2018 CIA Report, and OSJI's motion for partial reconsideration of the Court's decision permitting a limited "no number, no list" response. For the reasons that follow, the Court grants summary judgment to the CIA, permitting the full withholding under Exemption 1 of the CIA Report, and correspondingly denies OSJI's summary judgment motion. As to OSJI's reconsideration motion, the Court assumes *arguendo* that reconsideration is warranted in light of the Government's intervening disclosures regarding Khashoggi's killing, but holds, on reconsideration, that the agencies' "no number no list" responses remain permitted.

### A. Exemption 1 Permits the Withholding of the 2018 CIA Report in Full

Exemption 1 permits an agency to withhold records where its classification is authorized in the interest of national defense or foreign policy and the records have been properly so classified pursuant to an executive order. 5 U.S.C. § 552(b)(1). The public affidavit by Vanna Blaine states that the CIA Report meets the requirements for classification pursuant to Executive

12

Order 13526, and that the withheld information falls within a category listed in Executive Order 13526 § 1.4—specifically, 1.4(c): "intelligence activities (including covert action), intelligence sources or methods." *See* Blaine Decl. ¶¶ 3, 6–9. Blaine attests that revealing "the intelligence information in the CIA Report reasonably could be expected to cause exceptionally grave damage to the national security," because it could "reveal details regarding the nature, volume, and timing of the intelligence information available to the CIA as of November 2018, less than two months after Mr. Khashoggi was killed." *Id.* ¶¶ 9–10; *see id.* (stating that disclosure would "reveal information about the extent of the CIA's clandestine intelligence capabilities, how quickly the Agency was able to mobilize those capabilities to collect or corroborate information, and potential gaps in the CIA's information and collection capabilities"). *Id.* Blaine adds that additional disclosure would reveal "the intelligence sources and methods used to collect that information and potential gaps" in U.S. collection capacity. *Id.* ¶ 11.

The CIA's classified filings, which the Court has carefully reviewed *in camera*, validate this representation. And OSJI has not supplied any reason to regard the presumption of good faith accorded to an agency's affidavits as having rebutted. *See Carney*, 19 F.3d at 812 (Agency affidavits in support of nondisclosure are "accorded a presumption of good faith.").

Accordingly, that exemption protects the 2018 CIA Report from compulsory revelation, unless it can be found that an official acknowledgment has disclosed that report in a manner specific enough to waive the agency's right to invoke Exemption 1. The Second Circuit instructs that information required must be disclosed based on an official acknowledgment only where it "(1) [is] *as specific as* the information previously released," and (2) "*match[es]* the information previously disclosed[.]"). *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009) (emphasis added). OSJI argues that these requirements are met because the 2018 CIA Report, 2021 ODNI

13

Assessment, and redacted 2020 NCIM are all 2–3 page long "assessment[s] relating to the killing of Jamal Khashoggi." OSJI Mem. at 16. OSJI asserts that "[t]here must necessarily be information in the 2018 CIA Report that is at least as specific as, and that matches, information contained in the 2021 ODNI Assessment or redacted 2020 NICM." *Id.* at 15; *id.* (positing that "the documents are equally specific because they tell the same stories—here, the Government's assessment of the Saudi government's role in the killing of Mr. Khashoggi—based on the same underlying intelligence information" (quotations omitted)).

To test that premise, OSJI asked the Court to review the CIA Report *in camera* to determine whether the exception applies. *See* OSJI Reply at 16 ("At a minimum, Defendant CIA should be required to produce the 2018 CIA Report for *in camera* review, so that the Court can determine whether any portions are reasonably segregable."). The Court has done so. The Court's determination is that the materials in the CIA Report do not meet either *Wilson*'s "as specific as" nor its "matching" requirement. *See* Blaine Decl. ¶ 15 (explaining that although the CIA Report "addresses the same subject matter" as the ODNI documents, "the CIA Report contains a different level of specificity, including discussion of specific intelligence sources and methods, and other differences"); *see also Osen LLC v. U.S. Cent. Command*, 969 F.3d 102, 110 (2020) ("Generally, for information to be as specific as that which was previously disclosed, there cannot be any substantive differences between the content of the publicly released government documents and the withheld information." (cleaned up)); *id.* at 112 ("[E]ven a substantial overlap between the requested information and previously disclosed information is not enough to establish waiver." (quotations omitted)). The Court's line-by-line review of the CIA Report further confirms that there is no reasonably segregable, non-exempt information in the Report. The Report thus remains properly withheld under FOIA Exemption 1.

14

Because defendants need only supply one legitimate basis for withholding a record, the Court has no occasion to consider the Government's alternative argument under Exemption 3. *See Wilner*, 592 F.3d at 72; *see Larson,* 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other."). The Court thus grants the Government's motion for summary judgment, and denies OSJI's, as to the 2018 CIA Report.

### B. The Government's "No Number, No List" Response Remains Permitted

OSJI moves for reconsideration of the Court's ruling permitting the defendants to submit a limited "no number, no list" response.

#### 1. Pertinent Background

In response to OSJI's FOIA requests for all records relating to the Khashoggi killing, the CIA and ODNI, although "acknowledg[ing] the existence of one or more additional records responsive to the request," issued a "no number, no list" response pursuant to FOIA Exemptions 1 and 3. Dec. Op. at 14. They stated that they "[could] not describe the[se records] on the public record—including by providing details such as the volume of records, their dates, titles or subject matter—without revealing exempt information," *id.* at 10 (quoting Dkt. 116). OSJI then moved for summary judgment to require the agencies to submit a *Vaughn* index. OSJI focused on what it claimed were official disclosures of two responsive records: the 2018 CIA Report discussed above, and what OSJI termed the "tape" of Khashoggi's killing. *Id.*

In its December 8, 2020 decision, the Court held that, with two limited exceptions, the Government was permitted to withhold the records under Exemption 1, for records duly classified pursuant to an executive order in the interest of national defense or foreign policy. *Id.* at 16. The agencies had attested persuasively in their publicly filed declarations that the withheld

15

responsive records fell into two categories of information protected under §1.1(4) of E.O. 13,526: (1) "intelligence activities (including covert action), intelligence sources or methods, or cryptology" and (2) "foreign relations or foreign activities of the United States, including confidential sources." *Id.* at 11. On its *in camera* review of the agencies' classified filings, the Court found these to validate the representations in the agencies' publicly filed declarations. The Court therefore upheld, "in the main," the agencies' "no number, no list" responses. *Id.* at 16–17 (citing *Am. C.L. Union v. Dep't of Justice*, 681 F.3d 61, 70 (2d Cir. 2012) (deference is due "to executive affidavits predicting harm to the national security," a context in which it is "unwise to undertake searching judicial review[.]" (quotation omitted)).

However, the Court found that OSJI was correct that the 2018 CIA Report and the tape of the killing had been disclosed by an official acknowledgement, and therefore initially ordered the agencies to produce a *Vaughn* index for tape and the CIA Report. *Id.* at 17, 23. On March 9, 2021, however, the Court granted the Government's motion for partial reconsideration—as to the tape only—and relieved the agencies of the obligation to file a *Vaughn* index with respect to that item. Dkt. 202. After the release of the 2021 Assessment and the redacted 2020 NICM, the agencies, prompted by OSJI, "considered the implications of the ODNI Releases on the continued withholding of the 2018 CIA Report and the remainder of their withholdings." However, the agencies concluded, "neither of the ODNI releases changes the 'no number, no list' response of either the CIA or the ODNI." OSJI Reply at 4 (quoting Dkt. 207).

OSJI now moves to have the Court reconsider its December 8 Opinion to the extent it upheld the balance of the Government's "no number, no list" response—*i.e.*, that such a response remains warranted for the agency's responsive materials, if any, other than the tape and the 2018 Report. OSJI does not claim that these releases identify any specific withheld document.

16

Instead, it argues that these major disclosures regarding the Khashoggi killing "upend the factual context in which the Court evaluated that representation." OSJI Mem. at 31. It thus argues that "[t]o the extent that specific information withheld under the Defendants' 'no number, no list' response matches the officially acknowledged information released in the 2021 ODNI Assessment and redacted 2020 NICM, the Government is now obligated to segregate and release this information." *Id.* at 20.

### 2. Analysis

"As a general rule, a FOIA decision is evaluated as of the time it was made and not at the time of a court's review." *N.Y. Times I*, 756 F.3d at 111 n.8 (citing *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1152 (D.C. Cir. 1991)). Notwithstanding that rule, courts have sometimes considered whether an agency's post-response disclosures justify reassessment. *See, e.g., Florez v. CIA*, 829 F.3d 178, 183 (2d Cir. 2016) (finding new disclosures "relevant to the issues on appeal" and remanding to "allow the District Court to weigh the significance of the [new] documents in the first instance"); *N.Y. Times I*, 756 F.3d at 111 ("Although we are not required to consider such evidence, the circumstances of this case support taking judicial notice of the statements here[, because] [t]he Government's post-request disclosures go[] to the heart of the contested issue, . . . [and] are inconsistent with some of its prior claims[.]" (quotations omitted)); *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 602 (2d Cir. 2019) (explaining that, in *N.Y. Times*, the Circuit had found reassessment warranted because the post-request disclosures at issue were "not just potentially relevant, but clearly dispositive of the Government's secrecy claims"); *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 252 (D.D.C. 2020). The Court here similarly assumes *arguendo* that, given the Government's extensive disclosures in recent months with respect to the Khashoggi killing, reconsideration is warranted here.

Nonetheless, on reconsideration, the Court's conclusion—that the no-number, no-list responses are permitted—is unchanged.

OSJI argues that given the recent disclosures, "it is not 'logical or plausible' that *no* other CIA or ODNI documents contain information that has been impacted by the disclosures in the 2021 ODNI Assessment and 2020 NICM and therefore can be released without harm to U.S. national security." OSJI Mem. at 32. It asserts that it can no longer credibly be found—as the Court found earlier—that a public *Vaughn* index listing withheld records "would give advantage to foreign intelligence services and other groups[,] . . . enable adversaries to circumvent U.S. intelligence activities, and generally enhance its intelligence or counterintelligence activities at the expense of the U.S. national security." *Id.* (quoting Dec. Op. at 17).

The Court reaches the opposite conclusion. The Court has reconsidered "whether a no number, no list response" (as opposed to a *Vaughn* index identifying the withheld documents) remains justified. The Court considered both the unclassified and classified filings the Government has made as to why, notwithstanding the recent disclosures, Exemptions 1 and 3 still apply and justify a "no number, no list" response. The Court is persuaded by the reasoning in those filings.

Among other points, the Court notes that, as the Government aptly points out, nothing in the recent disclosures "reveals the volume or specific nature of the intelligence in the possession of CIA or ODNI," precisely because the recent disclosures were "intentionally drafted to avoid disclosing intelligence sources." Gov't Opp'n at 4, 6. The Government is similarly correct to note that, although the ODNI's public release articulates "high-level conclusions about the Saudi government's role in the killing, the intelligence underlying those conclusions and the sources or methods used to gather that intelligence were intentionally not disclosed." *Id.* at 1. "Neither the

18

2021 Assessment nor the redacted 2020 NICM officially acknowledge the existence of any other specific records, much less the volume, dates, or other specific details about the intelligence possessed." *Id.* at 4.

The Court is also persuaded, for the reasons the agencies give, that they "remain unable to identify the volume of intelligence that the CIA and ODNI possess about the killing, or any specific information about the responsive intelligence records in their possession—such as dates, document titles, senders, recipients, and subject matters—because that information would reveal the nature and sources and methods of the underlying intelligence." *Id.* at 5. And the Court is persuaded that, if any withheld record contains overlapping information with records that have been disclosed, "any such information . . . cannot be released without disclosing classified and statutorily protected information pertaining to intelligence sources and methods." *Id.* at 1; *see N.Y. Times I*, 756 F.3d at 122 (stating that a "no number, no list" response can only be "justified in unusual circumstances, and only by a particularly persuasive affidavit" (quotations omitted)).

The Court is therefore unconvinced by OSJI's claim that the agencies' responses "strain[] credulity." OSJI Mem. at 20. On the contrary, the Court found the agencies' submissions persuasive, rigorous, and sufficiently detailed. The Court has not been given good reason to find rebutted the presumption of good faith accorded to an agency's affidavits. *See Carney*, 19 F.3d at 812. On its careful review of the agencies' classified and unclassified filings, the Court finds that the withheld intelligence records, and the details about them, remain properly classified and protected from disclosure by FOIA Exemptions 1 and 3, notwithstanding the disclosure of the 2021 Assessment and partial disclosure of the 2020 NCIM.[4]

---

[4] To the extent that OSJI asks that the Government, *see* OSJI Mem. at 20, as a means to test whether issuance of a *Vaughn* index would indeed present such harms, be ordered to preprocess

## CONCLUSION

For the foregoing reasons, the Court (1) grants the Government's motion for summary judgment, (2) denies OSJI's cross-motion for summary judgment, and (3) denies OSJI's motion for reconsideration. The Clerk of Court is respectfully requested to terminate the motions pending at dockets 214, 220, 225, 239.

The Court directs counsel, within two weeks of this ruling, to submit a joint letter identifying any open issues—and if so, proposing next steps—in this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: September 13, 2021
     New York, New York

---

responsive material, the Court finds that course unjustified. *See Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d at 602 ("[R]eaffirm[ing] the general rule, and further hold that a court reviewing a FOIA decision must not order reprocessing simply to reassure itself that a correct decision remains current."); *id.* ("[O]ur Court has only departed from the general rule—that an agency's FOIA decision is evaluated as of the time it was made—when doing so is in the clear interest of judicial economy and would not burden the agency with prudential reprocessing."); *Florez*, 829 F.3d at 188 ("[T]o require an agency to adjust or modify its FOIA response based on post-response occurrences could create an endless cycle of judicially mandated reprocessing each time some circumstance changes." (quotations omitted)).